3.    (a)    RESPONSIBILITIES AND DUTIES:    Loan Officer hereby accepts the following responsibilities and duties:

a.    To perform to the best of his/her ability all duties assigned to him her by Smart and to carry out all Smart's policies and directives as described herein or as otherwise communicated to Loan Officer from time to time.

b.    To perform to the best of his/her ability said duties in compliance with the Act, Regulations and all other applicable laws.

c.    To fully comply with all state and federal laws, rules and regulations regarding the origination and processing of mortgage Loans.

d.    To not become involved in any personal or business matter which may adversely affect or reflect upon Smart.

e.    To attend all meetings, including Company policy and education meetings when required by Smart.

f.    To _not_ engage in any form of fraud or other illegal activity regarding the origination and processing of Loans, including Loan Officer's agreement not to mislead prospective customers or otherwise induce customers to commit fraud in the loan origination process.

g.    To immediately lock in loan rates and terms at the customer directions.

h.    To comply with all licensure and certification requirements mandated by applicable state or federal laws, at the expense of Loan Officer.

i.    Loan Officer agrees and understands and agrees and understands that he or she is employed as an outside sales employee (see Schedule B).

j.    "Counseling Services"

   i. Educating the Borrower in the home buying and financing process, advising the Borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product.

   ii.    Collecting financial information (tax returns, bank statement, etc.) and other related documents that are part of the application process.

   iii.    Maintaining regular contact with the Borrower, Realtors, and Lenders between application and closing to apprise all parties of the status of the application and to gather any additional information as needed.

k.    To perform all of the above duties on a professional basis and to interact with all Smart staff with professionalism and courtesy.

4.    TERMS OF AGREEMENT: This agreement shall remain in effect on a continuous basis from the date of this Agreement, unless terminated in accordance with the termination provisions hereinafter set forth.

5.    TERMINATION: This Agreement may be terminated: (1) without cause by thirty (30) days prior written notice by either party; (ii) immediately with cause upon a material breach of any term of this Agreement by either of the parties upon notice to the other party; (iii)

immediately upon Loan Officer's violation of any provisions of the Act or other laws or regulations. Upon such termination, Smart shall continue to process all mortgage loan applications taken by the Loan Officer for Smart through the date of such termination. Cause shall exist to immediately terminate this Agreement upon the Loan Officer's breach of the provisions of Paragraph Nine (9) hereof or any other breach of the terms hereof or of the policies of Smart, any of which breach(s) shall be considered a material breach of this Agreement. Loan Officer acknowledges that all customers, borrowers, Mortgage Loans originated, and all documentation generated in the name of Smart are the sole and exclusive property of Smart, and Loan Officer agrees not to make any claim for any ownership interest in either the customers, Mortgage Loans, leads purchased or generated by Smart, customer loan files and/or the related documentation that he or she produced while employed by Smart. Loan Officer agrees that he/she shall not remove or withdraw any mortgage loan application(s) submitted by Smart to a mortgage banker/broker, and resubmit said loan(s) to another mortgage banker/broker, without the prior written consent of Smart.

6.    (b)    DESCRIPTION OF FINANCIAL SERVICES: Loan Officer will provide the following services:

a.    Loan Officer agrees and understands that his or her duties include various services for Smart, such as collecting and analyzing information and data regarding all customer's income, assets, investments, or debts; determining and assessing which mortgage loan products best meet the customer's needs and financial considerations; advising the customer about the advantages and disadvantages of various mortgage loan products that the customer may qualify for; and marketing, servicing and promoting mortgage loan products made available through Smart from time to time;

b.    Provide customary assistance in connection with the processing of Mortgage Loan applications for Smart;

c.    Send Mortgage Loan applications for underwriting approval only to investors with whom Smart has entered into Correspondent Agreements (the "Investors");

d.    Arrange and attend, if necessary the closing of said Mortgage Loans; and collect all monies due and owing to Smart, made payable only to Smart, and for deposit only by Smart, as a result of each completed Mortgage Loan transaction.

e.    Educating the Borrower in the home buying and financing process, advising the Borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product.

f.    Assisting the Borrower in understanding and clearing credit problems.

7.    DEPOSIT OF FUNDS: All funds or drafts received by Loan Officer during his employment at Smart, such as application deposits, appraisal fees, credit reporting fees, title charges, etc., shall be made payable only to Smart and shall immediately be delivered to Smart, to be deposited into Smart's "Operations Account" with documentation as to the source, use and disposition of said funds. To the extent reasonably feasible, the documentation submitted to Smart with each draft or check shall identify in writing the name of Smart's borrower(s). Loan

X AN

Officer acknowledges that he/she shall be responsible for the collection of all fees in connection with mortgage Loans originated by Loan Officer, and, if not so collected by Loan Officer from Borrower at the time of Loan closing, then Smart shall have the right to set off and deduct from any amounts due Loan Officer hereunder any amounts not paid, including but not limited to the above, and any shortages created by improperly processing said mortgage Loans; unpaid amounts due Smart; bounced Borrower(s) checks; any and all legal fees and costs relating to such matters; lender premium repayments for loans originated in violation of a lender's correspondent agreement with Smart and other items due Smart or third parties relating to Loan Officer, his or her Borrower(s) or otherwise.

All commission or other checks generated by closed Mortgage Loan transactions must be made payable to "**Smart Mortgage Centers, Inc.**", delivered to the Home Office, for deposit only by Smart into its "Operating Account", for allocation and payment by Smart. If Loan Officer deposits any above-described commission or other check(s) into an account that is controlled by Loan Officer or another person, and not by Smart, then such Loan Officer action shall constitute an immediate breach and termination of this Agreement, shall subject the Loan Officer to forfeiture of any and all amounts due Loan Officer hereunder, to immediate payment to Smart of any outstanding bills and invoices generated by Loan Officer; possible criminal investigation and civil action and fines.

8.      COMPENSATION MATTERS: Smart agrees to make payments to Loan Officer in accordance with Schedule A attached hereto and incorporated by reference into this Agreement. Loan Officer agrees to make payments to Smart in accordance with the terms hereof. Loan Officer represents and warrants to Smart that if Loan officer is not entitled to a paycheck for any pay period that he did not render any services to Smart during that period. Smart reserves the right to change the pay structure, see Schedule A, by giving the Loan Officer written notice of thirty (30) days.

9.      EXCLUSIVITY: Loan Officer agrees that he/she shall not be affiliated with or otherwise perform any licensable services for: (i) any other licensee under the Act; or (ii) any other entity exempt from licensure under the Act; or (iii) any other entity that is required to become licensed under the Act but is not so licensed while this Agreement is in effect. Any breach of the provisions of this Paragraph Nine (9) shall be considered a material breach of this Agreement and shall be grounds for immediate termination of this Agreement.

10.     ADVERTISING: All advertising proposed for use by Loan Officer must be pre-approved by Smart prior to its use. Advertising shall be deemed to include, but not limited to, advertisements in newspapers, magazines, other periodicals, radio spots, television commercials, computer bulletin boards and the Internet (a/k/a The World Wide Web), mailing pieces, business cards, etc. Smart shall approve or reject said advertising in a timely manner. All such advertising shall be on behalf of Smart and shall comply with applicable provisions of the Act and the Regulations. Advertising may include the name of the Loan Officer as an employee of Smart.

X GN

11.     MUTUAL OBLIGATIONS OF LOAN OFFICER AND SMART:     (i) Except for matters relating to mortgage loan originations for Smart consumers, Loan Officer does not have the authority to bind Smart contractually without the prior written consent of Smart; (ii) Loan Officer must utilize appraisers, credit reporting companies, title insurance companies and flood certification companies and other vendors approved by Smart or its correspondent lenders; and (iii) Loan Officer must submit to Smart's Processing Department all new mortgage loan applications on a daily basis within 24 hours of receipt.

12.     HOLDBACK AND PAYMENT OF FUNDS UPON TERMINATION: In the event this Agreement is terminated in accordance with the terms hereof, Smart shall have the right to withhold payment of any and all amounts due to Loan Officer for a period not to exceed sixty (60) days to ensure that all outstanding bills owed to Smart, to third-party vendors of Smart or otherwise; have been paid in full. If it is discovered that any obligation of the Loan Officer has not been paid which directly relates to a Mortgage Loan being processed or obligations owed to Smart, then, in that event, Smart shall pay such obligation on behalf of the Loan Officer: (i) first, from the funds withheld from Loan Officer, and (ii) in the event that such funds are insufficient, then, at Smart's election, from Smart with reimbursement by Loan Officer to Smart. Loan Officer agrees and understands that he or she shall not be entitled to the compensation set forth on Schedule A (Pay Plan) in the event of Loan Officer's voluntary termination of employment; and Loan Officer agrees that he or she not be entitled to any further compensation from Smart if Loan Officer's employment is terminated for cause because Loan Officer engaged in any type or form of fraud in the loan settlement process; or otherwise breached the terms of this Agreement. In the event of an employee fine due to not following State and or Federal audit procedures: Money owed will be held until each late transaction withheld is cleared by State and or Federal Regulator's.  In some cases this can be every audit period (3 – 5 years).  In the event this agreement is terminated during this time fines will not be reimbursed.

13.     DELIVERY OF DOCUMENTATION:  Loan Officer agrees that upon entering into a Loan Brokerage Agreement (as defined in the Act) with a Borrower on behalf of Smart, Loan Officer shall immediately supply Smart with the originally signed copy of such agreement(s). Loan Officer further agrees that all pertinent data for each Mortgage Loan file produced for Smart shall be delivered to the Home Office of Smart within 24 hours of Loan Officer's receipt of same.  Smart shall maintain said files in or under the control of the Home Office and these files may be made available for review by Loan Officer during regular business hours. Upon termination, it is the responsibility of the Loan Officer to deliver the keys to the Home Office by close of business that day. If not done, Loan Officer will be charged for the locks to be changed.

14.     COMMISSIONER'S EXAMINATIONS: Loan Officer acknowledges that Smart may be examined by the IDFPR, Office of Banks and Real Estate under the Act, FHA and/or Smart's independent auditors. Loan Officer agrees to cooperate fully with any and all such examinations and audits.

X GN

15.     INDEMNIFICATION: Loan Officer acknowledges that he/she is an agent of Smart, and accordingly, Smart may be accountable for certain acts or omissions of the Loan Officer occurring within the scope of the Loan Officer's authority under this Agreement. Smart may be liable to Borrowers of Smart, Investors and to certain third party vendors used by Loan Officer as a result of mortgage origination activities of Loan Officer. It is acknowledged by Loan Officer that Smart may be responsible for the acts of Loan Officer that are performed within the course of his/her duties and responsibilities, and Loan Officer hereby indemnifies, holds harmless and shall defend Smart and its officers, directors, shareholders, employees, agents and attorneys from any and all claims or demands of any kind regarding Loan Officer's alleged breach of the terms of this Agreement; any claims by any third party alleging a breach of covenants not to compete or otherwise; or any other matter. Loan Officer shall pay all legal fees, court costs, fines, penalties or other charges (e.g. filing fees, expert witness fees, etc.) relating to any litigation or other proceeding initiated by either a Borrower(s), lender, investor or any regulatory agency regarding Smart and/or Loan Officer, as shall be determined in the sole discretion of Smart.

        In addition to any other remedies that the Lender may have, Loan Officer shall indemnify and hold Lender, its stockholders, affiliates and their respective officers, directors, employees and agents, harmless from and against, and shall reimburse it or them for, any losses, damages, deficiencies, claims, causes, of action or expenses of any nature (including reasonable attorney's fees) incurred at any time arising out of, in connection with or resulting from:

    (a) Any misrepresentation made by Loan Officer, or in any schedule, exhibit, report, statement or certificate furnished by Loan Officer pursuant to this Agreement;
    (b) The non-fulfillment or non-performance of any covenant, condition or action required of Loan Officer pursuant to this Agreement; or
    (c) Any fraud in the preparation or delivery of any mortgage loan application file, known to Loan Officer or Broker, representative or agent of Broker.
    (d) Loan Officer understands Smart has agreements with all Lenders that could have early payoff requirements. Loan Officer agrees not to solicit a Borrower for financing if a customer's loan was last financed with Smart and has a specified period of time that a Lender will ask for a yield spread premium to be refunded. Loan Officer agrees if this situation occurs that the Loan Officer will bring it to the attention of an Officer of Smart. If Loan Officer does finance a customer that Loan Officer will be responsible and liable to reimburse Smart for all costs and can be subject to termination.

16.     CONFIDENTIALITY: Loan Officer recognizes that Smart has and will have information such as customer names, customer lists, leads, customer files, mortgage loan documentation, and other confidential information regarding Smart's business operations ("Information"). Loan Officer agrees that Loan Officer will not, at any time nor in any manner, either directly or indirectly, use any "Information" for Loan Officer's own benefit, or divulge, disclose, or communicate in any manner any "Information" to any third party, without the prior written consent of Smart. Loan Officer will protect the "Information" and treat it as strictly



confidential. A violation of this paragraph shall be a material violation of this Agreement and shall entitle Smart to seek injunctive relief as well as damages.

Loan Officer agrees and acknowledges that he or she shall not do business with any customer of Smart, including those Smart customers that were produced by Loan Officer during the term of the agreement for a period of one (1) year from the date of Loan Officer's termination of employment with Smart. Loan Officer agrees to advise Smart within twenty-four (24) hours of the time of such customer contact in writing if he or she is contacted by a Smart customer, seeking to procure a mortgage loan within the one (1) year period following the Loan Officer's termination of employment with Smart. Loan Officer will take no further action to complete a loan for the Smart customer without the prior written consent of Smart.

If it appears that Loan Officer has disclosed or has threatened to disclose "Information" in violation of this Agreement, Smart shall be entitled to an injunction to restrain Loan Officer from disclosing, in whole or in part, such "Information", or from providing any services to any party to whom such "Information" has been disclosed or may be disclosed. Smart shall not be prohibited by this provision from pursuing any and all other remedies, including a claim for other losses and damages from Loan Officer.

This provision shall remain in full force and effect for a period of one (1) year after the termination of this Agreement.

17.     RETURN OF RECORDS AND PROPERTY: Upon termination of the Loan Officer's employment with Smart, Loan Officer, within twenty-four (24) hours, shall immediately deliver all customer names, customer files, records, notes, door keys, data (i.e. computer processing data) in his/her possession, or under Loan Officer's control that are Smart's property or relate to Smart's business.

18.     EARLY LOAN PAYOFFS: Loan Officer agrees that agreements are in place with Lenders, and if a loan pays off early with a Lender, even if that Loan Officer is not part of the pay-off, that the Loan Officer's commission will be collected and sent back to the Lender. Loan Officer agrees to check with Smart Mortgage Centers, Inc. on the policy for each Lender before soliciting the loan for refinancing or putting a customer in a loan knowing that the customer will pay off the loan in a specified period of time.

19.     MISCELLANEOUS:
        (a)     AMENDMENT: Neither this Agreement nor any term hereof may be amended, waived, discharged orally, but only by instrument in writing signed by each of the parties.
        (b)     HEADINGS: The headings in this Agreement are for convenience or reference only and shall not define or limit the provisions hereof.
        (c)     APPLICABLE LAW: This Agreement shall be construed in accordance with and governed by the Laws of the State of Illinois.

                                                        X GN

(d)  COUNTERPARTS: This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute but one instrument.

(e)  JURISDICTION OF COURTS: Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit court of Dupage, Will or Cook County, Illinois.

(f)  PARTIES IN INTEREST: All of the terms, covenants, and conditions herein contained shall inure to the benefit of and the binding upon the parties hereto, their heirs, successors and assigns.

(g)  NOTICES: Notices under this Agreement shall be in writing and be personally delivered or sent by certified or registered mail, return receipt requested, to the parties at their addresses specified below or at such address designated in writing to all pursuant to this paragraph.

(h)  SMART reserves the right to revise commissions, processing fees, insurance fees and other matters upon fifteen (15) days prior written notice to Loan Officer.

(i)  DISPUTES: Loan Officer agrees that any disputes of the Loan Officer arising under this Agreement shall be handled through arbitration at the election of Smart. Loan Officer agrees that no litigation, suit or other proceeding shall be filed against Smart until such arbitration is concluded in all respects.

(j)  EMPLOYEE CONTACT: Loan Officer shall not solicit, hire or otherwise induce any employee or consultant of Smart to terminate its employment or consulting relationship with Smart.  Loan Officer understands and agrees that it is difficult to compute the damages that Smart may incur if Loan Officer solicits, hires or otherwise induces an employee to terminate his or her employment with Smart.  Loan Officer agrees that this liquidated damages clause is reasonable and does not constitute a penalty. Loan Officer agrees that any violation of this provision shall subject Loan Officer to liquidated damages of $50,000 payable to Smart for each person who leaves Smart to either work for or become employed by the terminated Loan Officer or an entity associated with employs the terminated Loan Officer.  Loan Officer agrees that the liquidated damages of $50,000 are not a penalty and reasonably approximate the cost to recruit, train, and reimburse Smart Mortgage Centers, Inc. for the loss of each person's services to Smart.

(k)  INTRODUCTORY PERIOD: Your first sixty (60) days of employment at Smart is considered an Introductory Period, and during that period you will not accrue benefits available from the company, unless otherwise required by law, or unless otherwise provided in the applicable benefit plan document.  This Introductory Period will be a time for getting to know your fellow employees, your manager/supervisor and the tasks involved in your job position, as well as becoming familiar with Smart's business.

This Introductory Period is a try-out time for both of you, as an employee, and Smart, as an employer.  During this Introductory Period, Smart will evaluate your suitability for employment, and you can evaluate Smart as well.  At any time during this

X GU

first sixty (60) days, you may resign without any detriment to your record. If during this period, your work habits, attitude, attendance or performance do not measure up to our standards, we may discharge you. If you take approved time off during the Introductory Period, the Introductory Period may be extended by that length of time.

At the end of the Introductory Period, your manager/supervisor may discuss your job performance with you. During the course of the discussion, you are encouraged to give your comments and ideas as well. Please understand that completion of the Introductory Period does not assure continued employment for any specified period of time.

(l)      COMPANY VENDORS:   If Loan Officer's employment with Smart shall terminate for any reason, then Loan Officer agrees not to contract or use the services of any vendor who provides services to Smart through the use of access code, account number, identifying number, password, user ID, or other code used by Smart, without the prior written consent of an authorized officer of Smart.

(m)      SECURITY/SURVEILLANCE:   All public area's in Suite 207 and Suite 201 are under video surveillance 24 hours/7 days per week.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Loan Officer/Processor

Name

Address

City/State/Zip

Loan Officer's Signature

Loan Officer's Social Security Number

Smart Mortgage Centers, Inc..

4003 Plainfield/Naperville Rd., Suite 207
Naperville, Illinois 60564
By:

Its:     President



Loan Originator: Brian Noe – A Team

Schedule A – Plan A1

Based on 2.25 Lender Comp Plans.  If lender comp is different BPS payout will be adjusted accordingly.

As of 1/1/2018 Smart Mortgage Centers will no longer pay over 100 BPS on company generated leads until certain requirements are met.

Volume = 0 – 1,000,000

Company Leads – 100 BPS under 1,000,000 in Volume

Self-Generated – 130 BPS

Volume = 1,000,001 - Plus

Company Leads – 130 BPS

Self-Generated – 130 BPS

This is the pay plan that I'm accepting as of DATE: __O(__ / __O(__ / __∂O(8__

Brian Noe NMLS #228140 – Signature _____

Richard Birk - President/Witness – Signature _____

Employee Retention Agreement Disclaimer: Smart Mortgage Centers reserves the right to change the pay structure by giving you written notice of 30 days.

**SCHEDULE B**

<u>Outside Sales Employee Rider to Smart Mortgage Centers, Inc. Loan Officer Retention Agreement</u>

Notwithstanding anything in the Loan Officer Retention Agreement to the contrary, it is the intention of Smart Mortgage Centers, Inc. and Loan Officer under the Loan Officer Retention Agreement, ("Employee") that Employee's job duties and responsibilities, as set form in this Loan Officer Retention Agreement and Rider, qualify employee for the minimum wage and overtime pay exemption for outside sales employees set forth in section (a)(1) of the Fair Labor Standards Act ("FLSA"), and regulations promulgated there under. Employee understands and agrees that Employee's job duties and responsibilities are such that Employee will be exempt from the minimum wage and overtime pay requirements of the FLSA and therefore, Employee shall be treated by Employer as exempt from the minimum wage and overtime pay requirements of the FLSA and Illinois minimum wage and overtime laws.

Employee's job duties and responsibilities as a Loan Officer for Employer shall consist of the duties outlined in the Loan Officer Retention Agreement including this Rider some but not all of which are described as follows:

1. Employee's primary duty shall be the selling of mortgage loan products offered by Employer;
2. Employee shall meet with prospective borrowers, in person, to sell the mortgage loan products offered by Employer;
3. Employee shall be responsible for originating Employee's own sales by contacting prospective borrowers and by developing and maintaining referral sources;
4. Employee is expected to, and shall, spend a significant amount of time away from Employer's place of business in performing Employee's primary duty of selling the mortgage loan products offered by Employer;
5. Employee is expected to, and shall, meet with prospective borrowers at locations other than Employer's place of business, such as at the prospective borrower's home or other location away from Employer's place of business;
6. Employee's contact with prospective borrowers by telephone, mail or e-mail shall be adjunct to in-person contact with the prospective borrowers;
7. Employee shall obtain credit information and other necessary information and documentation from prospective borrowers for the loan application process;

x GN

8. Employee shall make in-person calls on real estate agents and brokers, financial advisor, and other potential referral sources to develop borrower leads;

9. Employee may also engage in marketing and promotional activities in support of Employee's own sales;

10. Employee shall have considerable flexibility in setting employee's own working hours and scheduling the tasks Employee performs during the work day;

11. Employee is expected to, and shall, customarily and regularly be engaged away from Employer's place of business;

12. Employee may spend some time in Employer's office taking loan applications, attending meetings, completing paperwork, preparing marketing and sales materials in support of Employee's own outside sales efforts; and

13. Additional tasks that may be performed at Employer's place of business may include checking and updating databases of loan products for sale and referral sources; calling, writing, or e-mailing borrowers or prospective borrowers with whom Employee has been dealing during Employee's outside sales activities; talking to borrowers or prospective borrowers in the office about their particular loan transaction; calling, writing, or e-mailing prospective borrowers or prospective referral sources with whom Employee may not have had prior contact; and preparing loan applications and other forms of loans initiated or negotiated by Employee during Employee's outside sales activities. Employer's place of business shall mean and include any office of Employer, as well as any fixed site, whether home or office, used by Employee as headquarters or for electronic or telephonic solicitation of sales, regardless of whether Employer is the owner or tenant of the property.

In performing the job duties and responsibilities set forth in this paragraph Loan Officer Retention Agreement and Rider, Employee shall abide by and fully comply with (i) any and all rules, policies, procedures and orders which Employer or Lender's Employer deals with may from time to time adopt or give; and (ii) all applicable federal, state, and local laws, statuses, regulation, rules and ordinances, as currently in effect or hereafter amended, including, but not limited to, the Truth and Lending Act ("TILA") and Regulation "Z" promulgated there under, the Real Estate Settlement Procedures Act ("RESPA") and Regulation "X" promulgated there under, and the Illinois Residential Mortgage License Act of 1987 ( the "Act") and all rules and/or regulations promulgated there under governing Employee's activities as a Loan Officer.

In Agreement herewith the parties have set their hand on the date next to their signature.

Smart Mortgage Centers, Inc.:

_____   President
NAME                       TITLE

Employee:

_____

## LOAN OFFICER RETENTION AGREEMENT

This Loan Officer Retention Agreement (the "Agreement") establishing an employment relationship between Smart Mortgage Centers, Inc., an Illinois Corporation ("Smart") and ___Eileen Pruitt___ (the "Loan Officer"), is dated as of this ___6th___ day of ___May___, 2019.

WHEREAS, Smart is a licensee pursuant to the Illinois Residential Mortgage License Act of 1987 (the "Act") operating from its corporate offices at 4003 Plainfield/Naperville Rd., Suite 207, Naperville, Illinois 60564 (the "Home Office"). With remote offices located in Florida and Colorado.

WHEREAS, Loan Officer has represented to Smart that he or she has experience and knowledge in the origination of residential mortgages;

WHEREAS, Smart seeks to employ Loan Officer for the purpose of assisting Smart in the performance of activities by the Act, including the origination of residential mortgage loans ("Loans"); and

WHEREAS, Loan Officer is willing to become an employee of Smart for the purpose of assisting Smart in the origination of residential mortgage loans;

NOW, THEREFORE, in consideration of the mutual covenants, herein contained, the sufficiency of which is acknowledged, it is agreed as follows:

1.  APPLICATIONS: Loan Officer shall take all Mortgage Loan applications in the name of Smart and on behalf of Smart, including all mandatory application and disclosure forms required by Smart, the Act, or pursuant to other regulatory, legal or lender requirements. Loan Officer acknowledges and understands that the customers, customer leads, customer files, customer names and customer mortgage applications and the related customer files and documents that he or she produces for Smart during his or her employment with Smart belong to and are the sole and exclusive property of Smart Mortgage Centers, Inc. and these items are not the property of the Loan Officer. Initial here: _ep_

2.  REPRESENTATIONS: (i) Loan Officer represents that he/she has read and has full knowledge of the Act, the other state and federal regulations affecting the residential mortgage industry ("Regulations") and agrees to operate fully within their purview, including but not limited to assisting only Smart in the performance of mortgage loan origination activities regulated by the Act and the Regulations; (ii) Loan Officer represents that he or she shall not enter into contracts (which relate in any way to this Agreement) with any person or entity without prior written consent of Smart; and (iii) Loan Officer shall act exclusively as a Loan Officer for Smart and shall not be affiliated with any other mortgage banker, broker or other lender, without the prior written consent of Smart.

Exhibit C

3.    (a)    RESPONSIBILITIES AND DUTIES:    Loan Officer hereby accepts the following responsibilities and duties:

    a.    To perform to the best of his/her ability all duties assigned to him/her by Smart and to carry out all Smart's policies and directives as described herein or as otherwise communicated to Loan Officer from time to time.

    b.    To perform to the best of his/her ability said duties in compliance with the Act, Regulations and all other applicable laws.

    c.    To fully comply with all state and federal laws, rules and regulations regarding the origination and processing of mortgage Loans.

    d.    To not become involved in any personal or business matter which may adversely affect or reflect upon Smart.

    e.    To attend all meetings, including Company policy and education meetings when required by Smart.

    f.    To not engage in any form of fraud or other illegal activity regarding the origination and processing of Loans, including Loan Officer's agreement not to mislead prospective customers or otherwise induce customers to commit fraud in the loan origination process.

    g.    To immediately lock in loan rates and terms at the customer directions.

    h.    To comply with all licensure and certification requirements mandated by applicable state or federal laws, at the expense of Loan Officer.

    i.    Loan Officer agrees and understands and agrees and understands that he or she is employed as an outside sales employee (see Schedule B).

    j.    "Counseling Services"

        i. Educating the Borrower in the home buying and financing process, advising the Borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product.

        ii.    Collecting financial information (tax returns, bank statement, etc.) and other related documents that are part of the application process.

        iii.    Maintaining regular contact with the Borrower, Realtors, and Lenders between application and closing to apprise all parties of the status of the application and to gather any additional information as needed.

    k.    To perform all of the above duties on a professional basis and to interact with all Smart staff with professionalism and courtesy.

4.    TERMS OF AGREEMENT: This agreement shall remain in effect on a continuous basis from the date of this Agreement, unless terminated in accordance with the termination provisions hereinafter set forth.

5.    TERMINATION: This Agreement may be terminated: (1) without cause by thirty (30) days prior written notice by either party; (ii) immediately with cause upon a material breach of

any term of this Agreement by either of the parties upon notice to the other party; (iii) immediately upon Loan Officer's violation of any provisions of the Act or other laws or regulations.   Upon such termination, Smart shall continue to process all mortgage loan applications taken by the Loan Officer for Smart through the date of such termination. Cause shall exist to immediately terminate this Agreement upon the Loan Officer's breach of the provisions of Paragraph Nine (9) hereof or any other breach of the terms hereof or of the policies of Smart, any of which breach(s) shall be considered a material breach of this Agreement. Loan Officer acknowledges that all customers, borrowers, Mortgage Loans originated, and all documentation generated in the name of Smart are the sole and exclusive property of Smart, and Loan Officer agrees not to make any claim for any ownership interest in either the customers, Mortgage Loans, leads purchased or generated by Smart, customer loan files and/or the related documentation that he or she produced while employed by Smart. Loan Officer agrees that he/she shall not remove or withdraw any mortgage loan application(s) submitted by Smart to a mortgage banker/broker and resubmit said loan(s) to another mortgage banker/broker, without the prior written consent of Smart.

6.    (b)    DESCRIPTION OF FINANCIAL SERVICES: Loan Officer will provide the
            Following services:
      a.    Loan Officer agrees and understands that his or her duties include various services
            for Smart, such as collecting and analyzing information and data regarding all
            customer's income, assets, investments, or debts; determining and assessing
            which mortgage loan products best meet the customer's needs and financial
            considerations; advising the customer about the advantages and disadvantages of
            various mortgage loan products that the customer may qualify for; and marketing,
            servicing and promoting mortgage loan products made available through Smart
            from time to time;
      b.    Provide customary assistance in connection with the processing of Mortgage Loan
            applications for Smart;
      c.    Send Mortgage Loan applications for underwriting approval only to investors
            with whom Smart has entered into Correspondent Agreements (the "Investors");
      d.    Arrange and attend, if necessary, the closing of said Mortgage Loans; and collect
            all monies due and owing to Smart, made payable only to Smart, and for deposit
            only by Smart, as a result of each completed Mortgage Loan transaction.
      e.    Educating the Borrower in the home buying and financing process, advising the
            Borrower about the different types of loan products available, and demonstrating
            how closing costs and monthly payments would vary under each product.
      f.    Assisting the Borrower in understanding and clearing credit problems.

7.    DEPOSIT OF FUNDS: All funds or drafts received by Loan Officer during his
employment at Smart, such as application deposits, appraisal fees, credit reporting fees, title
charges, etc., shall be made payable only to Smart and shall immediately be delivered to Smart,
to be deposited into Smart's "Operations Account" with documentation as to the source, use and
disposition of said funds.  To the extent reasonably feasible, the documentation submitted to

Smart with each draft or check shall identify in writing the name of Smart's borrower(s). Loan Officer acknowledges that he/she shall be responsible for the collection of all fees in connection with mortgage Loans originated by Loan Officer, and, if not so collected by Loan Officer from Borrower at the time of Loan closing, then Smart shall have the right to set off and deduct from any amounts due Loan Officer hereunder any amounts not paid, including but not limited to the above, and any shortages created by improperly processing said mortgage Loans; unpaid amounts due Smart; bounced Borrower(s) checks; any and all legal fees and costs relating to such matters; lender premium repayments for loans originated in violation of a lender's correspondent agreement with Smart and other items due Smart or third parties relating to Loan Officer, his or her Borrower(s) or otherwise.

All commission or other checks generated by closed Mortgage Loan transactions must be made payable to "**Smart Mortgage Centers, Inc.**", delivered to the Home Office, for deposit only by Smart into its "Operating Account", for allocation and payment by Smart. If Loan Officer deposits any above-described commission or other check(s) into an account that is controlled by Loan Officer or another person, and not by Smart, then such Loan Officer action shall constitute an immediate breach and termination of this Agreement, shall subject the Loan Officer to forfeiture of any and all amounts due Loan Officer hereunder, to immediate payment to Smart of any outstanding bills and invoices generated by Loan Officer; possible criminal investigation and civil action and fines.

8.      **COMPENSATION MATTERS:** Smart agrees to make payments to Loan Officer in accordance with Schedule A attached hereto and incorporated by reference into this Agreement. Loan Officer agrees to make payments to Smart in accordance with the terms hereof. Loan Officer represents and warrants to Smart that if Loan officer is not entitled to a paycheck for any pay period that he did not render any services to Smart during that period.

9.      **EXCLUSIVITY:** Loan Officer agrees that he/she shall not be affiliated with or otherwise perform any licensable services for: (i) any other licensee under the Act; or (ii) any other entity exempt from licensure under the Act; or (iii) any other entity that is required to become licensed under the Act but is not so licensed while this Agreement is in effect. Any breach of the provisions of this Paragraph Nine (9) shall be considered a material breach of this Agreement and shall be grounds for immediate termination of this Agreement.

10.     **ADVERTISING:** All advertising proposed for use by Loan Officer must be pre-approved by Smart prior to its use. Advertising shall be deemed to include, but not limited to, advertisements in newspapers, magazines, other periodicals, radio spots, television commercials, computer bulletin boards and the Internet (a/k/a The World Wide Web), mailing pieces, business cards, etc. Smart shall approve or reject said advertising in a timely manner. All such advertising shall be on behalf of Smart and shall comply with applicable provisions of the Act and the Regulations. Advertising may include the name of the Loan Officer as an employee of Smart.

11.    **MUTUAL OBLIGATIONS OF LOAN OFFICER AND SMART:**  (i) Except for matters relating to mortgage loan originations for Smart consumers, Loan Officer does not have the authority to bind Smart contractually without the prior written consent of Smart; (ii) Loan Officer must utilize appraisers, credit reporting companies, title insurance companies and flood certification companies and other vendors approved by Smart or its correspondent lenders; and (iii) Loan Officer must submit to Smart's Processing Department all new mortgage loan applications on a daily basis within 24 hours of receipt.

12.    **HOLDBACK AND PAYMENT OF FUNDS UPON TERMINATION:** In the event this Agreement is terminated in accordance with the terms hereof, Smart shall have the right to withhold payment of any and all amounts due to Loan Officer for a period not to exceed sixty (60) days to ensure that all outstanding bills owed to Smart, to third-party vendors of Smart or otherwise; have been paid in full. If it is discovered that any obligation of the Loan Officer has not been paid which directly relates to a Mortgage Loan being processed or obligations owed to Smart, then, in that event, Smart shall pay such obligation on behalf of the Loan Officer: (i) first, from the funds withheld from Loan Officer, and (ii) in the event that such funds are insufficient, then, at Smart's election, from Smart with reimbursement by Loan Officer to Smart. Loan Officer agrees and understands that he or she shall not be entitled to the compensation set forth on Schedule A (Pay Plan) in the event of Loan Officer's voluntary termination of employment; and Loan Officer agrees that he or she not be entitled to any further compensation from Smart if Loan Officer's employment is terminated for cause because Loan Officer engaged in any type or form of fraud in the loan settlement process; or otherwise breached the terms of this Agreement. In the event of an employee fine due to not following State and or Federal audit procedures: Money owed will be held until each late transaction withheld is cleared by State and or Federal Regulator's. In some cases this can be every audit period (3 – 5 years). In the event this agreement is terminated during this time fines will not be reimbursed.

13.    **DELIVERY OF DOCUMENTATION:** Loan Officer agrees that upon entering into a Loan Brokerage Agreement (as defined in the Act) with a Borrower on behalf of Smart, Loan Officer shall immediately supply Smart with the originally signed copy of such agreement(s). Loan Officer further agrees that all pertinent data for each Mortgage Loan file produced for Smart shall be delivered to the Home Office of Smart within 24 hours of Loan Officer's receipt of same. Smart shall maintain said files in or under the control of the Home Office and these files may be made available for review by Loan Officer during regular business hours. Upon termination, it is the responsibility of the Loan Officer to deliver the keys to the Home Office by close of business that day. If not done, Loan Officer will be charged for the locks to be changed.

14.    **COMMISSIONER'S EXAMINATIONS:** Loan Officer acknowledges that Smart may be examined by the IDFPR, Office of Banks and Real Estate under the Act, FHA and/or Smart's independent auditors. Loan Officer agrees to cooperate fully with any and all such examinations and audits.

15. **INDEMNIFICATION:** Loan Officer acknowledges that he/she is an agent of Smart, and accordingly, Smart may be accountable for certain acts or omissions of the Loan Officer occurring within the scope of the Loan Officer's authority under this Agreement. Smart may be liable to Borrowers of Smart, Investors and to certain third party vendors used by Loan Officer as a result of mortgage origination activities of Loan Officer. It is acknowledged by Loan Officer that Smart may be responsible for the acts of Loan Officer that are performed within the course of his/her duties and responsibilities, and Loan Officer hereby indemnifies, holds harmless and shall defend Smart and its officers, directors, shareholders, employees, agents and attorneys from any and all claims or demands of any kind regarding Loan Officer's alleged breach of the terms of this Agreement; any claims by any third party alleging a breach of covenants not to compete or otherwise; or any other matter. Loan Officer shall pay all legal fees, court costs, fines, penalties or other charges (e.g. filing fees, expert witness fees, etc.) relating to any litigation or other proceeding initiated by either a Borrower(s), lender, investor or any regulatory agency regarding Smart and/or Loan Officer, as shall be determined in the sole discretion of Smart.

In addition to any other remedies that the Lender may have, Loan Officer shall indemnify and hold Lender, its stockholders, affiliates and their respective officers, directors, employees and agents, harmless from and against, and shall reimburse it or them for, any losses, damages, deficiencies, claims, causes, of action or expenses of any nature (including reasonable attorney's fees) incurred at any time arising out of, in connection with or resulting from:

(a) Any misrepresentation made by Loan Officer, or in any schedule, exhibit, report, statement or certificate furnished by Loan Officer pursuant to this Agreement;
(b) The non-fulfillment or non-performance of any covenant, condition or action required of Loan Officer pursuant to this Agreement; or
(c) Any fraud in the preparation or delivery of any mortgage loan application file, known to Loan Officer or Broker, representative or agent of Broker.
(d) Loan Officer understands Smart has agreements with all Lenders that could have early payoff requirements. Loan Officer agrees not to solicit a Borrower for financing if a customer's loan was last financed with Smart and has a specified period of time that a Lender will ask for a yield spread premium to be refunded. Loan Officer agrees if this situation occurs that the Loan Officer will bring it to the attention of an Officer of Smart. If Loan Officer does finance a customer that Loan Officer will be responsible and liable to reimburse Smart for all costs and can be subject to termination.

16. **CONFIDENTIALITY:** Loan Officer recognizes that Smart has and will have information such as customer names, customer lists, leads, customer files, mortgage loan documentation, and other confidential information regarding Smart's business operations ("Information"). Loan Officer agrees that Loan Officer will not, at any time nor in any manner, either directly or indirectly, use any "Information" for Loan Officer's own benefit, or divulge, disclose, or communicate in any manner any "Information" to any third party, without the prior written consent of Smart. Loan Officer will protect the "Information" and treat it as strictly

confidential. A violation of this paragraph shall be a material violation of this Agreement and shall entitle Smart to seek injunctive relief as well as damages.

Loan Officer agrees and acknowledges that he or she shall not do business with any customer of Smart, including those Smart customers that were produced by Loan Officer during the term of the agreement for a period of one (1) year from the date of Loan Officer's termination of employment with Smart. Loan Officer agrees to advise Smart within twenty-four (24) hours of the time of such customer contact in writing if he or she is contacted by a Smart customer, seeking to procure a mortgage loan within the one (1) year period following the Loan Officer's termination of employment with Smart. Loan Officer will take no further action to complete a loan for the Smart customer without the prior written consent of Smart.

If it appears that Loan Officer has disclosed or has threatened to disclose "Information" in violation of this Agreement, Smart shall be entitled to an injunction to restrain Loan Officer from disclosing, in whole or in part, such "Information", or from providing any services to any party to whom such "Information" has been disclosed or may be disclosed. Smart shall not be prohibited by this provision from pursuing any and all other remedies, including a claim for other losses and damages from Loan Officer.

This provision shall remain in full force and effect for a period of one (1) year after the termination of this Agreement.

17.     **RETURN OF RECORDS AND PROPERTY:** Upon termination of the Loan Officer's employment with Smart, Loan Officer, within twenty-four (24) hours, shall immediately deliver all laptops, customer names, customer files, records, notes, door keys, data (i.e. computer processing data) in his/her possession, or under Loan Officer's control that are Smart's property or relate to Smart's business.

18.     **EARLY LOAN PAYOFFS:** Loan Officer agrees that agreements are in place with Lenders, and if a loan pays off early with a Lender, even if that Loan Officer is not part of the pay-off, that the Loan Officer's commission will be collected and sent back to the Lender. Loan Officer agrees to check with Smart Mortgage Centers, Inc. on the policy for each Lender before soliciting the loan for refinancing or putting a customer in a loan knowing that the customer will pay off the loan in a specified period of time.

19.     **MISCELLANEOUS:**
        (a)     **AMENDMENT:** Neither this Agreement nor any term hereof may be amended, waived, discharged orally, but only by instrument in writing signed by each of the parties.
        (b)     **HEADINGS:** The headings in this Agreement are for convenience or reference only and shall not define or limit the provisions hereof.
        (c)     **APPLICABLE LAW:** This Agreement shall be construed in accordance with and governed by the Laws of the State of Illinois.

(d)    COUNTERPARTS: This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute but one instrument.

(e)    JURISDICTION OF COURTS: Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit court of Dupage, Will or Cook County, Illinois.

(f)    PARTIES IN INTEREST: All of the terms, covenants, and conditions herein contained shall inure to the benefit of and the binding upon the parties hereto, their heirs, successors and assigns.

(g)    NOTICES: Notices under this Agreement shall be in writing and be personally delivered or sent by certified or registered mail, return receipt requested, to the parties at their addresses specified below or at such address designated in writing to all pursuant to this paragraph.

(h)    SMART reserves the right to revise commissions, processing fees, insurance fees and other matters upon fifteen (15) days prior written notice to Loan Officer.

(i)    DISPUTES: Loan Officer agrees that any disputes of the Loan Officer arising under this Agreement shall be handled through arbitration at the election of Smart. Loan Officer agrees that no litigation, suit or other proceeding shall be filed against Smart until such arbitration is concluded in all respects.

(j)    EMPLOYEE CONTACT: Loan Officer shall not solicit, hire or otherwise induce any employee or consultant of Smart to terminate its employment or consulting relationship with Smart. Loan Officer understands and agrees that it is difficult to compute the damages that Smart may incur if Loan Officer solicits, hires or otherwise induces an employee to terminate his or her employment with Smart. Loan Officer agrees that this liquidated damage clause is reasonable and does not constitute a penalty. Loan Officer agrees that any violation of this provision shall subject Loan Officer to liquidated damages of $50,000 payable to Smart for each person who leaves Smart to either work for or become employed by the terminated Loan Officer or an entity associated with employs the terminated Loan Officer. Loan Officer agrees that the liquidated damages of $50,000 are not a penalty and reasonably approximate the cost to recruit, train, and reimburse Smart Mortgage Centers, Inc. for the loss of each person's services to Smart.

(k)    INTRODUCTORY PERIOD: Your first sixty (60) days of employment at Smart is considered an Introductory Period, and during that period you will not accrue benefits available from the company, unless otherwise required by law, or unless otherwise provided in the applicable benefit plan document. This Introductory Period will be a time for getting to know your fellow employees, your manager/supervisor and the tasks involved in your job position, as well as becoming familiar with Smart's business.

This Introductory Period is a try-out time for both of you, as an employee, and Smart, as an employer. During this Introductory Period, Smart will evaluate your suitability for employment, and you can evaluate Smart as well. At any time during this

first sixty (60) days, you may resign without any detriment to your record. If during this period, your work habits, attitude, attendance or performance do not measure up to our standards, we may discharge you. If you take approved time off during the Introductory Period, the Introductory Period may be extended by that length of time.

At the end of the Introductory Period, your manager/supervisor may discuss your job performance with you. During the course of the discussion, you are encouraged to give your comments and ideas as well. Please understand that completion of the Introductory Period does not assure continued employment for any specified period of time.

(l)    COMPANY VENDORS: If Loan Officer's employment with Smart shall terminate for any reason, then Loan Officer agrees not to contract or use the services of any vendor who provides services to Smart through the use of access code, account number, identifying number, password, user ID, or other code used by Smart, without the prior written consent of an authorized officer of Smart.

(m)    SECURITY/SURVEILLANCE: All public areas are under video surveillance 24 hours/7 days per week. Including computer and VPN usage – VPN should only be used for work purposes.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Loan Officer/Processor                          Smart Mortgage Centers, Inc..

                                                4003 Plainfield/Naperville Rd., Suite 207
Eileen Pruitt                                   Naperville, Illinois 60564

_____                     By:
Name

2818 Bauer Road                                 _____

_____                     Its:    President
Address
                                                5-6-2019
North Aurora, IL 60542

_____
City/State/Zip

_____
Loan Officer's Signature

▓▓▓▓▓▓▓▓▓▓▓▓
_____
Loan Officer's Social Security Number



SMART MORTGAGE CENTERS

Compensation Plan Schedule A – Eileen Pruitt NMLS 217979

Lender Contracts 2.375

Based on Loan Amount

Company Generated Leads – 100 Bps

Company Generated Redo's – 100 Bps

Referrals from Company Generated Leads – 130 Bps

Lender Contracts 2.375

Based on Loan Amount

Self-Generated Business – 130 Bps

Lender Contracts 2.00 (Grant Programs) Regardless of Self Gen or Company Gen

Pay Out 100 Bps

Reverse Mortgage & Commercial Mortgage

50% of Check Amount – Regardless of Self Gen or Company Gen

Home Equity Lines (lender contract 150 Bps)

Pay Out 75 Bps

Loan Originator NMLS __217979__      Loan Originator Name __Eileen Pruitt__

Loan Originator Signature _____      Start Date _05_ / _06_ / _2019_

Manager Signature _____      Date _5_ / _6_ / _19_

**SCHEDULE B**

Outside Sales Employee Rider to Smart Mortgage Centers, Inc. Loan Officer Retention Agreement

Notwithstanding anything in the Loan Officer Retention Agreement to the contrary, it is the intention of Smart Mortgage Centers, Inc. and Loan Officer under the Loan Officer Retention Agreement, ("Employee") that Employee's job duties and responsibilities, as set form in this Loan Officer Retention Agreement and Rider, qualify employee for the minimum wage and overtime pay exemption for outside sales employees set forth in section (a)(1) of the Fair Labor Standards Act ("FLSA"), and regulations promulgated there under. Employee understands and agrees that Employee's job duties and responsibilities are such that Employee will be exempt from the minimum wage and overtime pay requirements of the FLSA and therefore, Employee shall be treated by Employer as exempt from the minimum wage and overtime pay requirements of the FLSA and Illinois minimum wage and overtime laws.

Employee's job duties and responsibilities as a Loan Officer for Employer shall consist of the duties outlined in the Loan Officer Retention Agreement including this Rider some but not all of which are described as follows:

1. Employee's primary duty shall be the selling of mortgage loan products offered by Employer;
2. Employee shall meet with prospective borrowers, in person, to sell the mortgage loan products offered by Employer;
3. Employee shall be responsible for originating Employee's own sales by contacting prospective borrowers and by developing and maintaining referral sources;
4. Employee is expected to, and shall, spend a significant amount of time away from Employer's place of business in performing Employee's primary duty of selling the mortgage loan products offered by Employer;
5. Employee is expected to, and shall, meet with prospective borrowers at locations other than Employer's place of business, such as at the prospective borrower's home or other location away from Employer's place of business;
6. Employee's contact with prospective borrowers by telephone, mail or e-mail shall be adjunct to in-person contact with the prospective borrowers;
7. Employee shall obtain credit information and other necessary information and documentation from prospective borrowers for the loan application process;
8. Employee shall make in-person calls on real estate agents and brokers, financial advisor, and other potential referral sources to develop borrower leads;
9. Employee may also engage in marketing and promotional activities in support of Employee's own sales;

10. Employee shall have considerable flexibility in setting employee's own working hours and scheduling the tasks Employee performs during the work day;

11. Employee is expected to, and shall, customarily and regularly be engaged away from Employer's place of business;

12. Employee may spend some time in Employer's office taking loan applications, attending meetings, completing paperwork, preparing marketing and sales materials in support of Employee's own outside sales efforts; and

13. Additional tasks that may be performed at Employer's place of business may include checking and updating databases of loan products for sale and referral sources; calling, writing, or e-mailing borrowers or prospective borrowers with whom Employee has been dealing during Employee's outside sales activities; talking to borrowers or prospective borrowers in the office about their particular loan transaction; calling, writing, or e-mailing prospective borrowers or prospective referral sources with whom Employee may not have had prior contact; and preparing loan applications and other forms of loans initiated or negotiated by Employee during Employee's outside sales activities. Employer's place of business shall mean and include any office of Employer, as well as any fixed site, whether home or office, used by Employee as headquarters or for electronic or telephonic solicitation of sales, regardless of whether Employer is the owner or tenant of the property.

In performing the job duties and responsibilities set forth in this paragraph Loan Officer Retention Agreement and Rider, Employee shall abide by and fully comply with (i) any and all rules, policies, procedures and orders which Employer or Lender's Employer deals with may from time to time adopt or give; and (ii) all applicable federal, state, and local laws, statuses, regulation, rules and ordinances, as currently in effect or hereafter amended, including, but not limited to, the Truth and Lending Act ("TILA") and Regulation "Z" promulgated there under, the Real Estate Settlement Procedures Act ("RESPA") and Regulation "X" promulgated there under, and the Illinois Residential Mortgage License Act of 1987 ( the "Act") and all rules and/or regulations promulgated there under governing Employee's activities as a Loan Officer.

In Agreement herewith the parties have set their hand on the date next to their signature.

Smart Mortgage Centers, Inc.:                                          Employee:


_____ President                    _____
NAME                        TITLE

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SMART MORTGAGE CENTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 7248 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BRIAN NOE, NEXA MORTGAGE, LLC, | ) | |
| SECURED MORTGAGE PROCESSING, LLC, and | ) | |
| EILEEN PRUITT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Smart Mortgage Centers, Inc. brings this suit against two individuals (Brian Noe and

Eileen Pruitt) and two companies (NEXA Mortgage, LLC and Secured Mortgage Processing,

LLC) under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1832-1833, 1835-

1836, 1838-1839, and the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030,

alleging that Defendants unlawfully obtained and used its proprietary trade information.

Doc. 13. The court ordered Smart Mortgage to show cause why the suit should not be stayed

under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976),

pending resolution of a state court suit involving the same facts and parties. Doc. 11. Having

considered Smart Mortgage's response, Doc. 14, the court will stay the case.

### Background

**A.    The State Court Suit**

In February 2020, Smart Mortgage filed suit against Defendants in the Circuit Court of

Will County, Illinois. *Smart Mortg. Ctrs., Inc. v. Noe*, No. 20 CH 292 (Ill. Cir. Ct. Will Cnty.,

Ill.) (*Smart Mortg. I*); Doc. 24-4 (third amended complaint in *Smart Mortgage I*). The gravamen

of the suit is that Noe and Pruitt misappropriated proprietary information at the end of their

1

employment with Smart Mortgage and used it to solicit customers in their subsequent

employment with NEXA. Docs. 24-1, 24-4. Smart Mortgage asserts in that suit state law claims

for contractual breach, tortious interference, and misappropriation of trade secrets. Doc. 24-1 at

¶¶ 29-86. Smart Mortgage moved for a temporary restraining order, *id.* at ¶¶ 24-28, and the state

court granted the motion in part in March 2020, ordering Noe, Pruitt, and NEXA to return

information taken from Smart Mortgage's database, Doc. 24-3. The suit remains pending in

state court, where Smart Mortgage is up to its fifth amended complaint and significant discovery

has taken place. Doc. 24 at 4, 12; *see Smart Mortg. I* (docket entries of May 11, 2021).

### B.    This Suit

The parties held a settlement conference in the state court suit on December 9, 2020.

Doc. 24 at 2. On December 8—the day before—Smart Mortgage filed this suit, alleging a single

federal claim under the DTSA against Noe and NEXA. Doc. 1. In February 2021, this court

ordered Smart Mortgage to "show cause in writing why this case should not be stayed pursuant

to the *Colorado River* doctrine in light of the pending proceedings in" state court. Doc. 11. Ten

days later, Smart Mortgage filed an amended complaint in this suit, adding a CFAA claim and

adding Pruitt and Mortgage Processing as defendants. Doc. 13. The parties in this suit are thus

the same as those in the state court suit, and the facts alleged in the amended complaint here are

essentially identical to those alleged in state court. Doc. 24 at 5.

### Discussion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in

federal court when a concurrent state court case is underway, but only under exceptional

circumstances and if it would promote 'wise judicial administration.'" *Freed v. JPMorgan

Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colo. River*, 424 U.S. at 818);

*see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir.

2

1992). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (alteration in original) (quoting *Colo. River*, 424 U.S. at 813, 817). In deciding whether to abstain, the court's task is "not to find some substantial reason for the exercise of federal jurisdiction ... ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis and internal quotation marks omitted).

The *Colorado River* analysis has two steps. First, the court asks "whether the state and federal court actions are parallel." *Freed*, 756 F.3d at 1018. If the proceedings are not parallel, *Colorado River* abstention must be denied. *See ibid*. If the proceedings are parallel, the court must weigh ten nonexclusive factors to determine whether abstention is proper. *See ibid*.

## I.     This Suit and the State Court Suit Are Parallel

"[F]or *Colorado River* purposes ... [p]recisely formal symmetry" between the state and federal suits is "unnecessary" to find parallelism. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011); *see also Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("Interstate is correct in its assertion that differences [between the two suits] exist. However, the requirement is of parallel suits, not identical suits."). Rather, suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (internal quotation marks omitted). Thus, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal

3

case." *AAR Int'l, Inc. v. Nimelias Enters.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (same). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (alteration in original) (internal quotation marks omitted).

The parallelism test is satisfied here. There is complete overlap between the two suits as to the parties and factual allegations. The only difference is that the claims in the state court suit arise under state law while the claims in this suit arise under federal law. But the gravamen of both suits is the same: Smart Mortgage alleges that Noe and Pruitt misappropriated its proprietary client information and are unlawfully using that information to compete against it while employed at NEXA, and it seeks damages (to account for past misuse) and an injunction (to prevent future misuse). In other words: "The factual allegations and legal analyses in the cases largely overlap, and the issues will be resolved largely by referencing the same facts and evidence. Therefore, the issues in the two cases, while not identical, are substantially the same." *Freed*, 756 F.3d at 1020.

Smart Mortgage's only argument against parallelism is that its CFAA claim here has no counterpart in the state court suit. Doc. 14 at 4-5. In particular, it points out that the CFAA claim focuses on Noe's and Pruitt's alleged "hacking of their computers, deletion of their hard drives, and … illegal transfer of [Smart Mortgage's] client data," while the state court claims are focus on the validity and breach of Noe's and Pruitt's retention agreements with Smart Mortgage. *Ibid.* Given this, Smart Mortgage argues, "it is not substantially likely that the state litigation will dispose of all claims presented in the federal case." *Id.* at 5.

4

Smart Mortgage's conclusion does not follow from its premises. Although the elements of its CFAA claim might differ from the elements of its other claims, Smart Mortgage points to no *relief* it seeks only under the CFAA or that would be available only under that statute. The CFAA claim here seeks compensatory damages and injunctive relief, Doc. 13 at pp. 19-20, the same relief sought in state court, and both suits rest on the same array of factual allegations. *See Oliver v. Fort Wayne Educ. Ass'n*, 820 F.2d 913, 916 (7th Cir. 1987) ("[T]he plaintiffs are seeking the same relief in both suits. To avoid such duplicative litigation, abstention is appropriate."). And given the close similarity between the two suits, if the state court reaches a final judgment on the merits, that judgment likely would have preclusive effect on the federal claims that Smart Mortgage brings here. *See Huon*, 657 F.3d at 647 ("Illinois imposes three requirements for *res judicata* to apply: '(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies.' *River Park* adopted a transactional approach to the second of these elements, under which 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.'") (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889, 891 (Ill. 1998)). The two suits are thus parallel under *Colorado River*. *See AAR Int'l*, 250 F.3d at 518 ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (citation omitted).

## II.     The *Colorado River* Factors Support Abstention

The second step in the *Colorado River* analysis requires examining and balancing these ten nonexclusive factors:

(1) whether the state has assumed jurisdiction over property;

(2) the inconvenience of the federal forum;

5

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of state-court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colo. River*, 424 U.S. at 818-19. The court addresses each factor in turn. *See Freed*, 756 F.3d at 1022 (noting that *Colorado River* abstention requires adherence to "rigorous standards," which the district court met by "carefully address[ing] each of the ten factors and provid[ing] sufficient explanations for its findings").

    1. *Whether the state court has assumed jurisdiction over property.* Defendants argue that this factor favors abstention, suggesting that the state court, when it issued a temporary restraining order requiring them to return customer lists and database materials to Smart Mortgage, assumed jurisdiction over those materials. Doc. 24 at 9. Not so. The state court suit is *in personam*, not *in rem. See Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (recognizing that, if "the judgment sought is … for the recovery of money or for an injunction compelling or restraining action by the defendant," then it is "strictly in personam"). And the first *Colorado River* factor applies only in *in rem* suits. *See Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("[T]he state court … never assumed jurisdiction over any *res* or property. … This was strictly an *in personam* action. Moreover, the

6

cases relied upon by the Court in *Colorado River* for the *res* exception all dealt with the disposition of property, such as a trust."); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 180 F. Supp. 2d 1235, 1241 (D. Kan. 2001) ("[T]he [state court] actions are based on *in personam* jurisdiction, not *in rem* jurisdiction, and thus neither court has assumed jurisdiction within the meaning of the *Colorado River* doctrine."). This factor therefore has no bearing here. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 478 (7th Cir. 2020) ("This case is not about property, and so Factor 1 can be ignored.").

2. *The inconvenience of the federal forum.* This factor concerns the "relative inconvenience of the competing fora to the parties." *AAR Int'l*, 250 F.3d at 522-23 (emphasis omitted). The margins are slight here, as Smart Mortgage, Noe, and Pruitt are all based in the Northern District of Illinois. Doc. 13 at ¶¶ 1-3. (NEXA and Secured Mortgage are alleged to be Arizona LLCs, *id.* at ¶¶ 4-5, but the complaint does not identify the location of their principal places of business.) Smart Mortgage's principal place of business is in Naperville, Doc. 13 at ¶ 1, about 16 miles from the Will County Courthouse in Joliet and about 39 miles from the Dirksen Federal Building in downtown Chicago (all estimates per Google Maps). Noe lives in Plainfield, Doc. 24 at 10, which puts him roughly 12 miles from the Joliet courthouse and 38 miles from downtown Chicago. Pruitt lives in North Aurora, *ibid.*, which is roughly equidistant from both courthouses. All told, this factor tips slightly in favor of abstention.

3. *The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (internal quotation marks omitted). "Dual proceedings could involve … a grand waste of efforts by both the court and parties in litigating the same issues … in two forums at once." *Ibid.* (internal

7

quotation marks omitted). It may be true that the discovery necessary for the CFAA claim here
will differ slightly from the discovery necessary for the other claims. But the CFAA claim still
involves the same parties and similar facts as the other claims, so litigating the CFAA claim in
federal court would be far less efficient. And the other claim in the federal suit, a DTSA trade
secret claim, closely parallels the claim in the state court suit under the Illinois Trade Secrets
Act, 765 ILCS 1065/1 *et seq*. Doc. 24-4 at ¶¶ 150-171. Proceeding simultaneously in both state
and federal court thus would ensure "duplicative and wasteful litigation with the potential of
inconsistent resolutions of" the question whether Noe and Pruitt acted wrongfully toward Smart
Mortgage. *Caminiti & Iatarola*, 962 F.2d at 701; *see also DePuy Synthes Sales*, 953 F.3d at 478
("[F]unctionally identical suits in two places creates a high risk of inconsistent results and
wasteful duplication."). This factor strongly favors abstention.

  4. *The order in which jurisdiction was obtained by the concurrent forums*. Smart
Mortgage filed its state court suit in February 2020, almost a year before it filed this suit. This
factor favors abstention. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th
Cir. 1985) (holding that this factor favored abstention where the state case was filed five months
before the federal case).

  5. *The source of governing law, state or federal*. Both counts asserted in this suit arise
under federal law, which is a "major consideration weighing against" abstention. *Cone Mem'l
Hosp.*, 460 U.S. at 26. But the DTSA claim depends in large part on whether Noe's and Pruitt's
postemployment restrictive covenants can be enforced, which poses a question of state law—and
one at the heart of the state court suit. Doc. 14 at 6; Doc. 24 at 3, 11-12; Doc. 24-4 at ¶¶ 61, 69-
93. The presence of the DTSA claim is therefore neutral. *See DePuy Synthes Sales*, 953 F.3d at
478 (holding that this factor "is at best a neutral factor" where the plaintiff's federal claim

required resolution of a logically anterior question of state contract law). The presence of the CFAA claim would tilt this factor slightly against abstention but for the fact (discussed below) that the claim was belatedly inserted by Smart Mortgage into the federal suit, likely for the sole purpose of staving off abstention. With that point in mind, this factor is neutral.

6. *The adequacy of state court action to protect the federal plaintiff's rights.* There is no reason to think that the state court is an inadequate forum for the vindication of Smart Mortgage's rights. *See DePuy Synthes Sales*, 953 F.3d at 479 ("The state courts are co-equal partners with the federal courts when it comes to protecting federal rights."). Smart Mortgage's actions as a litigant confirm as much, as it chose to assert the bulk of its claims in state court. Moreover, Smart Mortgage does not point to any relief it seeks in federal court that would not be available in state court under its state law claims. In any event, by abstaining under *Colorado River*, this court is "not *dismiss[ing]* [Smart Mortgage's] federal claims, but rather *stay[ing]* them pending the resolution of the state court proceeding." *Freed*, 756 F.3d at 1023. If at the conclusion of the state court proceedings Smart Mortgage believes that the state courts "inadequate[ly]" protected its rights, it will have a chance, when the stay is lifted, to argue here that the state court judgment should not be accorded preclusive effect. *Ibid.* This factor favors abstention.

7. *The relative progress of state and federal proceedings.* This factor requires consideration of which case "appear[s] to be closer to a resolution." *Caminiti & Iatarola*, 962 F.2d at 702. Significant progress has been made in state court—several dispositive motions, several amendments to the complaint, a temporary restraining order, subpoenas, a settlement conference, and a motion for an entry of default against Secured Mortgage. Doc. 24 at 7. Here in federal court, little has happened beyond the briefing on the *Colorado River* issue and an

9

amended complaint which, as discussed below, seems to have been filed by Smart Mortgage as a
tactic to avoid a stay. This factor favors abstention.

8. *The presence or absence of concurrent jurisdiction.* Smart Mortgage concedes that
"[t]he Will County Circuit Court would most likely have concurrent jurisdiction over [its] federal
claims." Doc. 14 at 8. This factor favors abstention. *See DePuy Synthes Sales*, 953 F.3d at 479
(holding that the state court's concurrent jurisdiction over the plaintiff's federal claims weighs in
favor of abstention).

9. *The availability of removal.* This factor "intends to prevent a federal court from
hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756
F.3d at 1023. The state court case cannot be removed to federal court because it involves only
state law claims among nondiverse parties. Doc. 13 at ¶¶ 1-3. This factor therefore favors
abstention.

10. *The vexatious or contrived nature of the federal claims.* This factor strongly favors
abstention. Smart Mortgage's conduct as relates to this suit has been suspicious, to put it mildly.
First, Smart Mortgage filed this suit the day before a settlement conference in the state court suit,
which strongly suggests that its primary motivation was to gain leverage in the state court
negotiations. *See DePuy Synthes Sales*, 953 F.3d at 479 (in affirming the district court's decision
to abstain, observing that the plaintiff's "decision to open a second front" in federal court "was at
best opportunistic and at worst manipulative"). That is an improper use of the federal judicial
system.

Next, there is no reason why Smart Mortgage could not have asserted its federal claims in
the state court suit. When pressed on this point at argument, counsel could say only that Smart
Mortgage lacked confidence in the state court's ability to properly interpret and apply the DTSA,

10

a statute of relatively recent vintage. Doc. 25. That unpersuasive excuse offends both the
capable Illinois state courts and longstanding principles of judicial federalism. *See Tafflin v.
Levitt*, 493 U.S. 455, 458 (1990) ("Under th[e] system of dual sovereignty, we have consistently
held that state courts have inherent authority, and are thus presumptively competent, to
adjudicate claims arising under the laws of the United States."); *DePuy Synthes Sales*, 953 F.3d
at 479 ("The state courts are co-equal partners with the federal courts when it comes to
protecting federal rights.").

Finally, the CFAA claim in this suit—which has no analog in the state court suit and
upon which Smart Mortgage bases its argument that a stay would be improper, Doc. 14 at 4-5—
was asserted only *after* the court raised the suggestion of *Colorado River* abstention, Docs. 11,
13. Again, Smart Mortgage's timing strongly suggests that injecting the CFAA claim into this
case was just another tactic—this one to forestall abstention and a stay—rather than a good-faith
assertion of a federal right.

\* \* \*

In sum, each *Colorado River* factor either favors abstention or is neutral, providing the
"exceptional circumstances" necessary to abstain. *Tyrer v. City of South Beloit*, 456 F.3d 744,
757 (7th Cir. 2006). This is reassuring, as this suit is the quintessential paradigm for abstention:
Smart Mortgage filed a totally unnecessary suit in federal court despite an ongoing state court
case involving the same parties and the same facts, in which it could have asserted exactly the
same claims and in which it was already seeking the same relief. What is more, Smart
Mortgage's patently transparent timing—both the filing of this suit on the eve of the settlement
conference in the state court suit, and the addition of the CFAA claim after this court raised the
*Colorado River* issue—shows that it is using this suit to gain leverage in the state court suit. If

11

*Colorado River* abstention were not appropriate here, it is hard to imagine where it would be. Smart Mortgage would be well advised to dismiss this suit in short order, lest it exacerbate its existing exposure to possible sanctions.

The only remaining question is whether this suit should be dismissed or stayed. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Montaño v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending further proceedings in the state court suit.

## Conclusion

The case is stayed under the *Colorado River* doctrine pending resolution of the state court suit, *Smart Mortgage Centers, Inc. v. Noe*, No. 20 CH 292 (Ill. Cir. Ct. Will Cnty., Ill.). When the state court litigation (including any appeals) concludes, or at any appropriate juncture before then, any party may move to lift the stay and proceed in a manner consistent with the state court's rulings and applicable preclusion principles. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of … preclusion.").

June 4, 2021

_____
United States District Judge

12

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SMART MORTGAGE CENTERS, INC.,

Plaintiff,

vs.

Case no. 20-cv-07248

BRIAN NOE, EILEEN PRUITT, NEXA
MORTGAGE, LLC, and SECURED
MORTGAGE PROCESSING, LLC

Defendants,

## PLAINTIFF'S NOTICE OF DISMISSAL OF COMPLAINT

Plaintiff Smart Mortgage Centers, Inc., pursuant to Rule 41(a)(1) of the Federal Rules of Civil
Procedure, hereby dismisses all causes of action in the complaint against all Defendants.

In light of the Court's June 4, 2021 ruling, the Plaintiff requested leave to add the two counts in
the pending action to the state action in Will County. The Will County Court has allowed the
Plaintiff to amend its Complaint.

The Defendants have not filed an answer to the complaint nor a motion for summary judgment as
to these claims or any other pleading related to these claims. Dismissal under Rule 41(a)(1) is
therefore appropriate.

For the Plaintiff, Smart Mortgage Centers, Inc.

s/Wilton A. Person

_____

Wilton Antoine Person

ARDC # 6290441
Wilton A. Person
Attorney for the Plaintiff Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
(815) 254-2467
wperson@personlaw.com

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Smart Mortgage Centers, Inc.,          )
                                        )
            Plaintiff,                  )
                                        )   Case No. 21-cv-3606
       v.                               )
                                        )   Judge Joan B. Gottschall
Brian Noe, et al.,                      )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

This suit stems from the departure of two of plaintiff Smart Mortgage Centers, Inc.'s

("Smart Mortgage"), loan officers, defendants Brian Noe ("Noe") and Eileen Pruitt ("Pruitt"), to

work for one of Smart Mortgage's alleged competitors, defendant NEXA Mortgage, LLC

("NEXA"). *See* Sixth Am. Compl. ("SAC") ¶¶ 11, 17–199, ECF No. 1-1. In February 2020,

Smart Mortgage filed suit in state court against Noe; Pruitt; NEXA; and, later, against Secured

Mortgage Processors, LLC ("Secured Mortgage"), alleging that Noe and Pruitt downloaded

proprietary and confidential information from Smart Mortgage's customer database and violated

non-competition and non-solicitation clauses in various employment contracts. *See id. at* ¶¶ 17–

220. In December 2020, Smart Mortgage filed a parallel case in this federal court, but it

voluntarily dismissed the case without prejudice in June 2021 after the court entered a stay under

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because a

parallel lawsuit was then pending in state court (not for long, as it turned out). Smart Mortgage

filed its sixth amended complaint in state court to add the two federal law claims it had pleaded

in federal court. *See* ECF No. 1-7 at PageID Nos. 1265–66; ECF No. 1-1. Defendants removed

the case to this court based on the presence of claims arising under federal law in the sixth

amended complaint. Notice of Removal ¶ 5 (citing 28 U.S.C. § 1331). Smart Mortgage has

filed a motion to remand for lack of subject matter jurisdiction, ECF No. 29, and defendants have

filed two separate motions to dismiss the sixth amended complaint for failure to state a claim,

ECF Nos. 20 and 24. For the following reasons, the court determines that the case was properly

removed, dismisses Smart Mortgage's federal law claims, and exercises its discretion to

relinquish supplemental jurisdiction over plaintiff's state law claims, *see* 28 U.S.C. § 1367(c)(3).

## I. Factual and Procedural Background

According to the sixth amended complaint, defendant Secured Mortgage provides

services to mortgage brokers, including NEXA, via an online software platform. *See* SAC ¶¶ 3,

16, 200–207. Smart Mortgage alleges that Michael Kortas, who is affiliated with NEXA, serves

as an "undisclosed principal" of Secured Mortgage. SAC ¶ 216.

Smart Mortgage's sixth amended complaint has 15 counts. Counts I–XIII assert state law

claims of breach of contract, tortious interference with perspective economic advantage,

conversion, unjust enrichment, respondeat superior, breach of fiduciary duty, and

misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 Ill. Comp.

Stat § 1065/1 *et seq*. *See id.* at 28–47. Count XIV alleges a claim under the civil enforcement

provisions of the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq*.

*Id.* at 47–56. In count XV, Smart Mortgage pleads a claim under the Computer Fraud and Abuse

Act ("CFAA"), 18 U.S.C. § 1030. *Id.* at 56–58. The court sometimes refers to Smart Mortgage's

DTSA and CFAA claims as its federal law claims.

### A. State Court Litigation

Smart Mortgage initially filed suit in the Circuit Court of Will County, Illinois, on

February 20, 2020. *See* Orig. compl. at PageID No. 239, No. 20-CH-292 (Will Cnty. Cir. Ct.,

Ill.) (ECF No. 1-5) ("Will County case"). It alleged a subset of the state law claims pleaded in

2

the SAC. *See id.* at PageID Nos. 241–49. In March 2020, the state court granted in part Smart

Mortgage's motion for a temporary restraining order and ordered Noe, Pruitt, and NEXA to

return certain information taken from Smart Mortgage's database.[1] *See* ECF No. 1-5 at PageID

No. 350 (Mar. 4, 2022).

Smart Mortgage amended its complaint six times over the next year and a half. The first

five amended complaints pleaded state law claims only (see below of a discussion of the sixth

amended complaint). Each time Smart Mortgage amended its complaint, defendants moved to

dismiss it.[2] And each time, plaintiff responded by seeking and obtaining leave to file an

amended complaint. *See* ECF No. 1-5 through 1-7. The state court has not ruled on the

sufficiency of any of plaintiff's complaints. The parties also conducted discovery during this

period. *See* ECF No. 1-5 thru 1-7.

### B. The First Federal Case

On December 8, 2020, Smart Mortgage filed a one-count complaint in this federal court

against the same defendants named in the Will County case. Compl., *Smart Mortg. Ctrs., Inc. v.*

*Noe, et al. [First Federal Case]*, No. 20-cv-7248, ECF No. 1 (N.D. Ill.) (Feinerman, J.). The

factual allegations of the complaint largely tracked the allegations in Smart Mortgage's state

court complaints. *See id.* at 2–5. On February 8, 2021, before an answer was filed,

Judge Feinerman ordered Smart Mortgage to "show cause in writing why this case should not be

stayed pursuant to the *Colorado River* doctrine in light of the pending proceedings in" the Will

---

1. A letter from the lawyer representing Noe, Pruitt and NEXA states that they complied with the
temporary restraining order. *See* Letter, ECF No. 1-5 at PageID No. 408 (Mar. 11, 2020).

2   The state court set a briefing schedule on an anticipated motion to dismiss the fifth amended
complaint, ECF No. 1-7 at PageID No. 1264, but as far as appears from this record (which does not
contain the state court docket sheet), Smart Mortgage moved for leave to file its sixth amended
complaint before a motion was filed.

County action. Min. entry, *First Federal Case*, ECF No. 11; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Smart Mortgage filed its response on February 22, 2022. It also amended its complaint to add a second count. *See* Am. Compl., *First Federal Case*, ECF No. 13 (Feb. 18, 2021). The two counts of the amended complaint asserted, respectively, a DTSA claim and a CFAA claim. *Id.* at 8, 18.

After receiving a response brief from defendants, *First Federal Case*, ECF No. 24 (Mar. 11, 2021), Judge Feinerman issued a memorandum opinion and order on June 4, 2021, staying the case pending resolution of the Will County action. *First Federal Case*, 2021 WL 2291073, at *6 (N.D. Ill. June 4, 2021) (in this record at ECF No. 30-1). In describing the case's background, Judge Feinerman noted that the complaint in the federal case before him had been filed on the day before a state court mediation session. *Id.* at *1 (citing *First Federal Case*, ECF No. 24 at 2).

Judge Feinerman explained that the *Colorado River* analysis proceeds in two steps. *Id.* at *2. The court asks whether the pending suits in federal and state court are parallel at step one. *Id.* (citing *Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014)). Second, the court weighs ten factors to determine whether abstention from exercising federal jurisdiction is warranted. *Id.* (citing same source).

Judge Feinerman first determined that there was "complete overlap" between the parties and factual allegations in the two suits, and the "only difference" was that "the claims in the state court suit arise under state law while the claims in this suit arise under federal law." *Id.* "But the gravamen of both suits [was] the same: Smart Mortgage alleges that Noe and Pruitt misappropriated its proprietary client information and are unlawfully using that information to

4

compete against it while employed at NEXA, and it seeks damages (to account for past misuse)

and an injunction (to prevent future misuse)." *Id.* Thus, Judge Feinerman concluded that the two

suits were parallel under *Colorado River. Id.*

Judge Feinerman then weighed the ten non-exclusive *Colorado River* factors and found

that each factor either favored abstention or was neutral. *See id.* at *3–5. Regarding the tenth

factor, the vexatious or contrived nature of the federal claims, the opinion states:

> This factor strongly favors abstention. Smart Mortgage's conduct as relates to this
> suit has been suspicious, to put it mildly. First, Smart Mortgage filed this suit the
> day before a settlement conference in the state court suit, which strongly suggests
> that its primary motivation was to gain leverage in the state court negotiations. That
> is an improper use of the federal judicial system.
>
> Next, there is no reason why Smart Mortgage could not have asserted its federal
> claims in the state court suit. . . .
>
> Finally, the CFAA claim in this suit—which has no analog in the state court suit
> and upon which Smart Mortgage bases its argument that a stay would be improper,
> was asserted only *after* the court raised the suggestion of *Colorado River*
> abstention. Again, Smart Mortgage's timing strongly suggests that injecting the
> CFAA claim into this case was just another tactic—this one to forestall abstention
> and a stay—rather than a good-faith assertion of a federal right.

*First Federal Case*, 2021 WL 2291073, at *5 (internal citations omitted).

The following language appears near the end of the *Colorado River* analysis: "Smart

Mortgage would be well advised to dismiss this suit in short order, lest it exacerbate its existing

exposure to possible sanctions." *Id.*

### C. Dismissal of the First Federal Case, Removal, and Pending Motions

Smart Mortgage voluntarily dismissed the first federal case without prejudice

approximately two weeks (June 16, 2021) after Judge Feinerman issued his opinion staying the

case. *First Federal Case*, ECF No. 31. Citing Judge Feinerman's opinion, Smart Mortgage then

sought and obtained leave in the Will County action to amend its complaint to add its DTSA and

CFAA claims in that court. *See* Mot. for Leave to File Sixth Am. Compl. ¶ 3, ECF No. 1-7 at

5

PageID Nos. 1265–66. After the sixth amended complaint was on file in state court, defendants

removed the case to this court based on what is commonly called the federal question statute,

28 U.S.C. § 1331, and the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Notice of

Removal ¶¶ 5–6, ECF No. 1.

The parties then filed the pending motions. Based on Judge Feinerman's opinion, Smart

Mortgage moves to remand the case to the state court and for an award of its costs and attorneys'

fees. ECF No. 29. Defendants have filed two separate Federal Rule of Civil Procedure 12(b)(6)

motions to dismiss the sixth amended complaint for failure to state a claim upon which relief can

be granted–one motion to dismiss by Secured Mortgage, ECF No. 20, and one by defendants

Noe, Pruitt, and NEXA, ECF No. 24.

## II. Motion to Remand

Smart Mortgage contends that the case must be remanded "because there is no subject

matter jurisdiction and the Defendants should be collaterally estopped from moving for

removal." Mem. Supp. Mot. to Remand 1, ECF No. 30. The general federal removal statute

provides, "Except as otherwise expressly provided by Act of Congress, any civil action brought

in a State court of which the district courts of the United States have original jurisdiction, may be

removed by the defendant or the defendants, to the district court of the United States for the

district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The case must be remanded "[i]f at any time before final judgment it appears that the district

court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). As the parties invoking this court's

subject matter jurisdiction, defendants bear "the burden of showing the existence of federal

jurisdiction." *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (citing *Appert v.

Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012)).

6

In their notice of removal, defendants contend that this court has original jurisdiction over Smart Mortgage's federal law claims under 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over suits "arising under" federal law. ECF No. 1 ¶ 5. "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].' " *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (brackets in original) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also id.* (contrasting a well-pleaded claim with a counterclaim and an "anticipated defense"). Smart Mortgage expressly relies on the DTSA and CFAA as the basis for recovery in counts XIV and XV. *See* SAC 47, 56. Both claims therefore satisfy the well-pleaded complaint rule.

The first thirteen counts of the sixth amended complaint do not facially arise under federal law. They instead rely on Illinois law. *See id.* at 28–47. Defendants assert that this court has supplemental jurisdiction over these state law claims. Notice of Removal ¶ 6. If a court has original jurisdiction over at least one claim, it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597 (2018). As Judge Feinerman explained his *Colorado River* analysis, all of Smart Mortgage's state law and federal law claims completely overlap with regard to the facts and parties. *First Federal Case*, 2021 WL 2291073, at *2. Smart Mortgage does not argue otherwise here. After reviewing the allegations of counts I–XIII, this court concludes that that they arise out of the same case or controversy as Smart Mortgage's federal law claims.

7

Smart Mortgage does not contest the foregoing jurisdictional analysis of its sixth amended complaint. It contends, however, that Judge Feinerman's opinion applying the *Colorado River* doctrine requires remand for lack of subject matter jurisdiction. Per Smart Mortgage's reading of Judge Feinerman's opinion, the parties "had a full and fair opportunity to litigate subject matter jurisdiction," and "subject matter jurisdiction was already decided." Mem. Supp. Mot to Remand 4, 6. Though Smart Mortgage cites various cases setting out the black letter law of issue preclusion (a.k.a. collateral estoppel), it cites no case supporting the key premise of its argument, *i.e.*, that a decision to stay a case under *Colorado River* necessarily implies that the court issuing the stay lacks subject matter jurisdiction.

That premise conflicts with the *Colorado River* opinion itself, which says that it is concerned with "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817. Thus, the abstention doctrine announced in *Colorado River* is framed as an exception to the rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The qualifier "having jurisdiction" clarifies that subject matter jurisdiction is a separate issue, for only when a federal district court possesses "concurrent jurisdiction" may it consider whether to abstain "for reasons of wise judicial administration." [3] *Id.* at 817, 818; *see also, e.g., Grdinich v. Plan Comm'n for Town of Hebron Ind.*, 2020 WL 3868704, at *2 (N.D. Ind. July 9, 2020) ("[A]n argument that a case should be dismissed or stayed under *Colorado River* is not an argument for a finding that there is no subject matter jurisdiction"). Thus, Judge Feinerman's *Colorado River*

---

3   Also, the Seventh Circuit has held that a party may waive the *Colorado River* doctrine, *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996), which is at odds with it being a non-waivable jurisdictional rule. *See Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL 641770, at *2 (N.D. Ill. Feb. 13, 2015)).

8

abstention analysis presupposed the existence of subject matter jurisdiction in this court, and his

decision to stay did not reject this court's original subject matter jurisdiction. *See Admin.*

*Comm. v. Gauf*, 188 F.3d 767, 770–72 (7th Cir. 1999). Because this court has original

jurisdiction over Smart Mortgage's federal law claims and supplemental jurisdiction over its

state law claims, the case was properly removed, and the motion to remand is denied.

## III. Motions to Dismiss

A Rule 12(b)(6) motion tests the complaint's sufficiency rather than the merits of the

case. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). To satisfy

federal notice pleading standards, "a plaintiff's complaint need only provide a 'short and plain

statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the

defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074,

1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). The complaint must contain sufficient allegations based on more than

speculation to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555

(citation omitted).

On a Rule 12(b)(6) motion, a district court must "accept all well-pleaded facts from the

[complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St.*

*Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing

*White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). This principle "is inapplicable

to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 555).

The parties rely on exhibits attached to the sixth amended complaint in their briefing, and

Smart Mortgage submits an affidavit, ECF No. 34-1, in response to Secured Mortgage's motion

9

to dismiss. The SAC's exhibits may be considered without converting defendants' motions to summary judgment motions because a defendant's Rule 12(b)(6) motion can be based "on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.' " *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *see also* Fed. R. Civ. P. 10(c).

Smart Mortgage states in its response to Secured Mortgage's motion to dismiss that it intends the accompanying affidavit to supplement the complaint without converting the motion to one for summary judgment. ECF No. 34 at 8. Unlike a defendant, a plaintiff "opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675 F.3d at 745 n.1 (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)) (other citations omitted). Secured Mortgage does not object to the court considering the affidavit, *see* Reply, ECF No. 40, and it will be considered.

### A.  *Federal Defend Trade Secrets Act Claim (Count XIV)*

The Defend Trade Secrets Act creates a private cause of action for trade secret misappropriation: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also id.* § 1836(c) (vesting federal courts with original jurisdiction over DTSA claims). To state a DTSA claim, plaintiff must plausibly allege: (1) ownership of a trade secret; and (2) actionable misappropriation as defined in the DTSA. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573 (N.D. Ill. 2019) (citations omitted). Noe, Pruitt, and NEXA maintain that the SAC does not adequately allege both elements; Secured Mortgage challenges the misappropriation allegations

10

against it. *See* ECF No. 25 at 16–21 (Noe, Pruitt, and NEXA); ECF No. 21 at 4–7 (Secured

Mortgage).

    *1. The SAC plausibly alleges ownership of a trade secret.*

The DTSA defines a trade secret as:

[A]ll forms and types of financial, business, scientific, technical, economic, or
engineering information, including patterns, plans, compilations, program devices,
formulas, designs, prototypes, methods, techniques, processes, procedures,
programs, or codes, whether tangible or intangible, and whether or how stored,
compiled, or memorialized physically, electronically, graphically, photographically,
or in writing if—

    (A) the owner thereof has taken reasonable measures to keep such information
    secret; and

    (B) the information derives independent economic value, actual or potential,
    from not being generally known to, and not being readily ascertainable through
    proper means by, another person who can obtain economic value from the
    disclosure or use of the information.

18 U.S.C. § 1839(3). The definition of trade secret in the Illinois Trade Secrets Act "is

materially identical." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021)

(citing 765 Ill. Comp. Stat § 1065/2(d)). "Under both statutes, whether information qualifies as a

trade secret is a question of fact that 'requires an ad hoc evaluation of all the surrounding

circumstances.' " *Id.* (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714,

723 (7th Cir. 2003)).

    As Noe, Pruitt, and NEXA acknowledge, *see* Mem. Supp. Mot. to Dismiss 16–17, ECF

No. 25, the complaint "need only describe the information [subject to trade secret protection] and

efforts to maintain the confidentiality of the information in general terms." *In re Dealer Mgmt.*

*Sys.*, 362 F. Supp. 3d at 573 (citing *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, 2015 WL

4945240, at *3 (N.D. Ill. Aug. 19, 2015). "[T]rade secrets 'need not be disclosed in detail in a

complaint alleging misappropriation for the simple reason that such a requirement would result

11

in public disclosure of the purported trade secrets.' " *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (quoting *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014)). Nonetheless, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). Noe, Pruitt, and NEXA argue that, by defining the protected information as Smart Mortgage's entire customer database, the SAC defines the trade secret too broadly. *See* Mem. Supp. Mot. to Dismiss 17–18, ECF No. 25.

In response, Smart Mortgage points to numerous paragraphs of the SAC it contends contain "detailed allegations on this subject." Resp. 15–16, ECF No. 33 (citing SAC ¶¶ 28–51, 55–56, 71–73, 92–93, 110–11, 115, 125–27, 146–47, 162–76, 181–82, 192–93). The cited paragraphs describe how and what information Smart Mortgage gathers and stores in its client database, but they do not narrow the scope of what Smart Mortgage considers protected.

It is apparent that Smart Mortgage considers everything in its customer database to be subject to trade secret protection. *See* SAC ¶¶ 28–51, 55–56, 71–73, 92–93, 110–11, 115, 125–27, 146–47, 162–76, 181–82, 192–193. There is nothing inherently improper about designating an entire customer database as subject to trade secret protection, so long as the proponent of trade secret protection adequately alleges a basis for doing so. *See, e.g.*, *Am. Fam. Mut. Ins. Co. v. Roth*, 485 F.3d 930, 933–34 (7th Cir. 2007). If pleading that all of the "source code" for a piece of software is a trade secret satisfies federal pleading requirements, *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001), then the SAC's more detailed allegations concerning the steps Smart Mortgage took to protect its customer database and why it considers

12

that information proprietary do as well.[4] *See id.*; *Mission Measurement*, 216 F. Supp. 3d at 921;
*Cent. Chem. & Servs. Corp. v. Mueller*, 2008 WL 11517573, at \*4 (N.D. Ill. Jan. 2, 2008)
(Gottschall, J.).

### 2. Plaintiff has not plausibly alleged misappropriation.

Noe, Pruitt, and NEXA argue that the SAC fails to raise a plausible inference of
misappropriation. *See* Mem. Supp. Mot. to Dismiss 18–21, ECF No. 25.  Smart Mortgage cites
no legal authority in responding to this argument. *See* ECF No. 36 at 16.  Smart Mortgage's
entire argument consists of two sentences–one defining the issue raised and another asserting that
"plaintiff alleged numerous and specific factual allegations on the subject"—followed by a string
of citations to the SAC. *See id.*  Smart Mortgage essentially leaves it to the court to piece
together its theory of how the misappropriation requirement is satisfied from the SAC. *See id.*
Smart Mortgage's failure to develop a legal argument in response to Noe, Pruitt, and NEXA's
arguments on this point constitutes waiver. *See, e.g.*, *Refined Metals Corp. v. NL Indus. Inc.*,
937 F.3d 928, 935 (7th Cir. 2019) (finding plaintiff waived argument in the district court because
its "response to [defendant's] motion to dismiss did not so much as mention this argument, let
alone develop it. . . .  [C]iting a few cases that might (or might not) implicate a separate line of
argument is not good enough."); *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318
(7th Cir. 2016) ("The investors did not argue conversion in their second amended counterclaim

---

4    Noe, Pruitt, and NEXA contend that customer names and addresses in the database may not be
     protectable because they can be gathered from public records. *See* Mem. Supp. Mot. to Dismiss 17,
     ECF No. 25; *see also Roth*, 485 F.3d at 934 (stating that information in customer lists may not be
     protected as a trade secret if it "was known outside the [employer's] business and the list could be
     readily reproduced [and] the information was available to all the employees of the firm" (alterations
     in original) (citation omitted)).  These defendants argue that a justification for protecting customer
     names must be pleaded, or no inference that they are confidential can be drawn.  The court cannot
     accept this argument because it draws an impermissible inference from the SAC's allegations in
     defendants' favor rather than in Smart Mortgage's.

13

or in their response to UCB's motion to dismiss; thus, the argument is waived." (citing *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994)).

On the other hand, Smart Mortgage develops an argument in response to Secured Mortgage's motion to dismiss its trade secret misappropriation claim. *See* ECF No. 34. As alleged in the SAC, Smart Mortgage bases its DTSA claim against Secured Mortgage on its allegations that information derived from Smart Mortgage's customer database was uploaded to Secure Mortgage's online customer relationship management ("CRM") software. *See* SAC ¶¶ 207–09, 217–19. Further, Smart Mortgage clarifies its scienter theory: "Plaintiff's Complaint does not allege mere 'routine mortgage processing' business practice as a basis for liability." ECF No. 34 at 9. Instead, Smart Mortgage bases its misappropriation claim on the conduct of Michael Kortas ("Kortas"), who is alleged in the SAC to be, upon information and belief, Secured Mortgage's "undisclosed principal." SAC ¶ 216; *see also* SAC ¶¶ 211--15. Kortas is also listed as one of NEXA's members. *See* SAC ¶ 203. Smart Mortgage sent NEXA a cease and desist letter regarding Noe on January 20, 2020. SAC ¶ 224. Based on that letter Smart Mortgage alleges, upon information and belief, that "Kortas knew or should have known that Smart Mortgage Center's client database was being misappropriated by Secured Mortgage Processing because he was made aware that Noe misappropriated Smart's confidential client data." SAC ¶ 217. According to the SAC and the affidavit attached to Smart Mortgage's response brief, Kortas requires all customer information be uploaded to his personal account in the Secured Mortgage CRM system rather than the individual loan officer's account. *See* ECF No. 34-1 ¶ 12; SAC ¶¶ 207–10.

Secured Mortgage's motion to dismiss focuses on the state of mind required for DTSA trade secret misappropriation. Plaintiff must plausibly allege that Secured Mortgage knew or had

14

"reason to know that the trade secret was acquired by improper means" when it acquired the

alleged trade secret (customer information). 18 U.S.C. § 1839(5)(A). Alternatively, if (and this

is not clear to the court from Smart Mortgage's response brief) Smart Mortgage bases its DTSA

claim on Secured Mortgage's use of its proprietary information, then Secured Mortgage similarly

must have known "or had reason to know that the knowledge of the trade secret was . . . derived

from or through a person who had used improper means to acquire the trade secret" when it used

or disclosed the alleged trade secret. 18 U.S.C. § 1839(5)(B)(ii)(I). Either way, the actual or

constructive knowledge, or reason to know, must be present when the trade secret is acquired,

used, or disclosed. *See* 18 U.S.C. §§ 1839(5)(A), (B).

Seen in the light most favorable to plaintiff, the SAC does not specify when, if ever,

Smart Mortgage's confidential information was uploaded to Secured Mortgage's CRM system or

when, if ever, Secured Mortgage used or disclosed that information. *See* SAC ¶¶ 218–19. That

is, the SAC does not plausibly allege that Secured Mortgage used, disclosed, or acquired a trade

secret by improper means on or after January 20, 2020, the date Kortas received a cease and

desist letter and was allegedly chargeable with knowledge of Noe's misappropriation. *See ibid.*

Hence the SAC fails to state a plausible DTSA misappropriation of trade secrets claim against

Secured Mortgage.[5] *See Growgenix Sols. LLC v. Roberts Int'l Agric. Dev., LLC*, 428 F. Supp. 3d

1236, 1243 (D. Utah 2019); *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp.

3d 1037, 1043–54 (D. Minn. 2019).

---

5   Additionally, while various theories can be imagined, Smart Mortgage neither pleads nor argues a
    legal theory by which Kortas's alleged knowledge can be imputed to Secured Mortgage. *See* ECF
    No. 34 at 6–7.

### B. Computer Fraud and Abuse Act Claim (Count XV)

The Computer Fraud and Abuse Act is primarily a "criminal anti-hacking statute," but it also contains a civil enforcement provision, 18 U.S.C. § 1030(g). *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016). The CFAA's civil enforcement provision provides, subject to certain qualifications: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief." § 1030(g). Defendants Noe, Pruitt, and NEXA argue that the SAC's allegations of damage or loss fail as a matter of law. *See* Mem. Supp. Mot. to Dismiss 23–25, ECF No. 25.

Smart Mortgage pleads that Noe and Pruitt violated the CFAA by "[w]ithout authorization or by exceeding authorized access . . . (a) obtaining certain information from [their] Smart Mortgage-authorized computing devices and/or the Smart Mortgage network; (b) obtaining copies of certain documents and files of value from the Smart Mortgage- issued computing devices and/or the Smart Mortgage network; (c) and deleting electronic files from the Smart Mortgage-issued computing devices and/or the Smart Mortgage network." SAC ¶ 467. The SAC then alleges damage or loss as follows:

> 469.    Defendants Brian Noe and Eileen Pruitt intentionally and recklessly caused damage and loss . . . because their conduct impaired the integrity of Smart Mortgage's protected computers and required Smart Mortgage to expend resources . . . to investigate the foregoing misconduct, conduct forensic examination of the devices to ascertain the scope of Brian Noe and Eileen Pruitt's misconduct, and perform certain remedial measures required as a result of such misconduct.
>
> 470.    As a further direct and proximate cause of the foregoing misconduct, Smart Mortgage has been damaged and suffered loss in an amount in excess of $5,000 to the extent the Brian Noe and Eileen Pruitt accessed, deleted, destroyed and copied electronic files containing Confidential Information and Trade Secrets belonging to Smart Mortgage for their personal use and/or that of Nexa Mortgage, LLC.

SAC ¶¶ 469–70.

16

The CFAA separately defines the terms "damage" and "loss." The "term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The "term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Noe, Pruitt, and NEXA rely on several cases interpreting the CFAA's damage or loss requirement on a motion to dismiss for failure to state a claim. *See* Mem. Supp. Mot. to Dismiss 23–25, ECF No. 25. For instance, in *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 769 (N.D. Ill. 2009), the court dismissed a CFAA claim because "[t]he only harm Motorola has alleged is the disclosure to a competitor of its trade secrets and other confidential information." "The plain language of the statutory definition" of damages, the court reasoned, "refers to situations in which data is lost or impaired because it was erased or because (for example) a defendant smashed a hard drive with a hammer." *Id.* (citing *Patrick Patterson Custom Homes v. Bach*, 586 F. Supp. 2d 1026, 1035 (N.D. Ill. 2008)); *see also Farmers Ins. Exch. v. Auto Club Group,* 823 F. Supp. 2d 847, 852 (N.D. Ill/ 2011).

Noe, Pruitt, and NEXA also cite *SBS Worldwide, Inc. v. Potts*, 2014 WL 499001, at \*9 (N.D. Ill. Feb. 7, 2014). There, the court dismissed a CFAA claim for failure to plead a loss under § 1030(g). The court reasoned, "To be sure, assessing the extent of information illegally copied by an employee is a prudent business decision. But the cost of such an investigation is not 'reasonably incurred in responding to an alleged CFAA offense,' because the disclosure of

17

trade secrets, unlike destruction of data, is not a CFAA offense." *Ibid.* (citing *Farmers Ins. Exch.*, 823 F. Supp. 2d at 854).

Smart Mortgage cites no legal authority interpreting the CFAA's damage or loss requirement in its response. Nor does Smart Mortgage attempt to analyze the CFAA's text, structure, or history; cite any case construing the CFAA's damage or loss provision; or develop a legal argument for distinguishing the cases cited by Noe, Pruitt, and NEXA. *See* ECF No. 36 at 17–18. Indeed, Smart Mortgage's argument against dismissal of its CFAA claim is as skeletal and underdeveloped as its waived argument on its DTSA claims. *See id.* The court therefore finds that Smart Mortgage has waived its opposition to dismissal of its CFAA claim as well. *See Refined Metals*, 937 F.3d at 935; *United Cent. Bank*, 815 F.3d at 318. In the absence of any argument to the contrary, the court finds the cases discussed in the prior paragraph to be persuasive and adopts their reasoning as the basis for dismissing Smart Mortgage's CFAA claim.

## IV. Supplemental Jurisdiction Relinquished

Part II of this opinion concludes that this court had original jurisdiction over Smart Mortgage's federal law claims when this case was removed and supplemental jurisdiction over its state law claims. The dismissal of Smart Mortgage's federal law claims requires the court to revisit supplemental jurisdiction as a discretionary matter.

The supplemental jurisdiction statute states, "Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Under § 1367(c), a court "may decline to exercise supplemental jurisdiction over a claim" in four circumstances, including where, as here, "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

18

As the statute's use of the word "may" suggests, whether to decline supplemental jurisdiction is a discretionary decision. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, the Seventh Circuit has adopted "the sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); *accord Refined Metals,* 937 F.3d at 935–36. This presumption can be rebutted "when it is absolutely clear how the pendent claims can be decided." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

For more than a year and a half before removal, this case was primarily pleaded and litigated under Illinois law in state court. As Judge Feinerman observed, Smart Mortgage injected claims under federal law into the case for what appear to be strategic reasons related to the litigation in state court. *See First Federal Case*, 2021 WL 2291073, at *1, 5. The record indicates that the state court is familiar with the parties and issues. *See* ECF No. 1-5 through 1-7. Among other things, the state judge issued a temporary restraining order denying some of the relief Smart Mortgage requested, presided over discovery disputes, and resolved several motions for leave to amend Smart Mortgage's complaints. *See, e.g.*, ECF No. 1-5 at PageID No. 350; ECF No. 1-6 at PageID Nos. 1049, 1168; ECF No. 1-7 at PageID No. 1264. In these circumstances, the presumption in favor of relinquishing supplemental jurisdiction is strong.

19

Accordingly, the court relinquishes jurisdiction over Smart Mortgage's state law claims and
remands them to the state court from which they were removed.

### V. Conclusion

For the reasons stated, Smart Mortgage's motion to remand is denied because the court
possessed original jurisdiction over this case when it was removed. Defendants' motions to
dismiss the sixth amended complaint are granted in part. The federal law claims in counts XIV
and XV are dismissed. In the exercise of its discretion, the court relinquishes supplemental
jurisdiction over plaintiff's state law claims in accordance with 28 U.S.C. § 1367(c)(3) and
remands this case to the Circuit Court of Will County, Illinois. *See Carnegie-Mellon Univ. v.
Cohill*, 484 U.S. 343, 351–55 (1988).

Dated: March 21, 2022                         _____/s/_____

                                             Joan B. Gottschall
                                             United States District Judge

# EXHIBIT F

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2020CH000292
Filed Date: 5/23/2022 4:56 PM
Envelope: 18012134
Clerk: AHD

**IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS**
**TWELFTH JUDICIAL CIRCUIT**

Smart Mortgage Centers, Inc.
       **PLAINTIFF**

          v.

Case No. 20 CH 292

Brian Noe, Eileen Pruitt, Nexa Mortgage, LLC,
and Secured Mortgage Processing, LLC

       **DEFENDANTS**

## MOTION FOR LIMITED DISCOVERY

Plaintiff, Smart Mortgage Centers, Inc., hereafter "Smart Mortgage", by and through its attorney, Wilton A. Person, requests that this court allow Smart Mortgage to conduct narrowly tailored discovery limited to a 206(a)(1) corporative representative deposition, the deposition of Brian Noe, hereafter "Noe" and the deposition of Eileen Pruitt, "Pruitt" and the attached 214 Request to Produce to respond to Defendants' 2-615 Motion to Dismiss. See Exhibit A and Exhibit B.

## ARGUMENT

At issue is whether a plaintiff should be allowed full disclosure pertaining to its trade secret and related claims to respond to Defendants' 2-615 Motion to Dismiss when the facts are solely within the Defendant's control and when their disclosure would allow a plaintiff to resist a motion to dismiss.

A plaintiff must possess a minimum level of information indicating defendant is liable to

him before he commences litigation and forces defendant to undergo discovery. *Computer Teaching Corp. v. Courseware Applications, Inc.,* 199 Ill.App.3d 154, 157, (1990). Still, the fact that some discovery is necessary before a complaint may be filed, or before a complaint may survive a motion to dismiss, does not establish that the complaint is improper. *Yuretich v. Sole*, 259 Ill.App.3d 311, (Ill. App. 1994). Supreme Court Rule 201(b)(1) allows a party to obtain by discovery full disclosure regarding any relevant matter, even where the discovery "relates to the claim or defense of the party seeking disclosure." (134 Ill.2d R. 201(b)(1).) Discovery may be initiated after all defendants have appeared or are required to appear, or earlier with leave of court. (134 Ill.2d R. 201(d).) Still, the trial court may deny or limit discovery "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (134 Ill.2d R. 201(c)(1).) However, a trial court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the party resisting the motion. *Yuretich v. Sole*, 259 Ill.App.3d 311, (Ill. App. 1994). Especially where the facts are exclusively within the knowledge of the opponent, it may be error to deny discovery before ruling on a motion to dismiss. *Id*.

In the present case, Smart Mortgage undoubtedly has alleged the minimum level involving the unauthorized removal of confidential information and trade secrets and related claims against former Smart Mortgage employees, Noe and Pruitt. Specifically, Smart Mortgage has alleged in its Sixth Amended Complaint in part that Noe created files titled emails.zip and noe.zip at or near the time that he resigned from Smart Mortgage, that at least 80% of his disclosed closings with his new employer, Defendant Nexa Mortgage, LLC from December 26, 2019 to August 7, 2020 are from clients contained within Smart Mortgage's client

database, and other factual allegations supporting Smart Mortgage's claims against Noe. See ¶¶ 143 through 154 of Plaintiff's Sixth Amended Complaint. Of these disclosed closings, it is undisputed that some of the Smart Mortgage clients were individuals that Noe never worked with as a Smart Mortgage employee and that Noe should have no legitimate reason to have their contact information in his possession. In that same vein, Pruitt has conceded that she removed an excel spreadsheet document and/or excel file from Smart Mortgage. This document was modified prior to being tendered to Smart Mortgage on March 11, 2020 pursuant to the Court's March 4, 2020 Court Order and a subsequent responsive document was tendered on May 13, 2021 by Defendants' Counsel that also supports Smart Mortgage's allegations against Pruitt as noted in Smart Mortgage's Sixth Amended Complaint.

   Despite Smart Mortgage possessing more than a minimum level of information indicating that Noe, Pruitt, and Nexa Mortgage are liable to Smart Mortgage, Smart Mortgage seeks additional facts in an abundance of caution to respond to Defendants 2-615 Motion that it could not respond to without the aid of discovery because Defendants are in exclusive possession of these material facts. Specifically, Defendants asserts in their 2-615 Motion to Dismiss on multiple occasions that Smart Mortgage provides no additional factual support for assertions relating to its trade secret and related claims when these facts are undoubtedly in possession of the Defendants. The basis of the motion is to fully develop facts to support Plaintiff's response to Defendants' 2-615 Motion to Dismiss. In further support of its motion, Smart Mortgage's request for limited discovery is reasonable, supported by good cause, and is narrowly tailored.

**A. Plaintiffs' Narrow Request for Limited Discovery is Reasonable and Supported by**

**Good Cause**

Smart Mortgage's request for limited discovery is reasonable and would provide Smart Mortgage an opportunity to obtain additional facts directly relevant to the alleged deficiencies raised by Defendants' Motion to Dismiss to allow the Court to consider these facts to the extent that the Court finds additional facts are required to resist Defendants' 2-615 Motion to Dismiss.

**B. Plaintiffs' Request is Narrowly Tailored.**

The attached 214 Request to Produce discovery requested by Plaintiffs is reasonable in scope and directly related to the alleged factual deficiencies raised by Defendants' Motion to Dismiss. See Exhibit A. The discovery Plaintiff is seeking should not be burdensome to Defendants because the documents should be readily available to the Defendants.  The 206(a)(1) corporate representative deposition will be limited to the narrowly tailored examination topics referenced on the proposed 206(a)(1) Notice of Deposition. See Exhibit B.

## CONCLUSION

For the foregoing reasons, Plaintiff Smart Mortgage respectfully requests that the Court grant its Motion to Conduct Limited Discovery to assist Smart Mortgage in obtaining additional material facts to respond to the Defendants' 2-615 Motion to Dismiss.

Wherefore, Plaintiff prays that the Court enter an Order, granting the following relief:

A. Granting its Motion to Conduct Limited Discovery;

B. Granting such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Wilton A. Person

By:  Wilton A. Person

ARDC # 6290441
Wilton A. Person
Attorney for Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
815-254-2467
wperson@personlaw.com

**IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS**
**TWELFTH JUDICIAL CIRCUIT**

Smart Mortgage Centers, Inc.
      **PLAINTIFF**

           v.              Case No. 20 CH 292

Brian Noe, Eileen Pruitt, Nexa Mortgage, LLC,
and Secured Mortgage Processing, LLC

      **DEFENDANTS**

## NOTICE TO PRODUCE PURSUANT TO
## SUPREME COURT RULE 214

Now comes the Plaintiff Smart Mortgage and pursuant to Illinois SCR 214 propounds the

following requests to produce the following documents and information for inspection and to be

copied and reproduced by Defendant Nexa Mortgage, LLC within 28 days.

### Definitions and Instructions

Unless the context indicates otherwise, the following definitions apply to these

Requests for Production:

A. The term "document" or "documents" shall mean and include, without limiting the generality

of its meaning, originals in each instance (and all nonduplicate copies and all drafts), text

messages, faxes, e-mails and all writings (including handwritten, electronic mail, typed, printed,

xeroxed, or otherwise reproduced in any manner), papers or graphic matters in the possession,

custody or control of the party or party's counsel, which record or relate to any act or occurrence,

event or communication connected with or relating to the activity of the party including, but not

limited to: letters, correspondence, memoranda, minutes, notes, summaries, reports, proposals,

books, messages, transcripts, contracts, agreements, memoranda of telephone conversations or

face to face conversations, microfilm, telegrams, bulletins, pamphlets, drawings,

statements, notices, reports, partnership agreements and amendments, articles of association or incorporation, bylaws, rules, regulations, directives, teletype messages, minutes of meetings, inter-office communications, balance sheets, operating budgets, accounting work sheets and paper audit reports, financial statements, ledgers, journals, books of accounts, bills, vouchers, bank checks, proposals, prospective, offers, orders, receipts, desk calendars, appointment books, diaries, time sheets, logs, telephone messages, notebooks, evaluations and/or recommendations, annual reports, confirmations, leases, analyses, feasibility studies, disbursement requests or orders, indices, projections, data sheets, personal interviews (in any form whether transcribed or not), summaries or paraphrases of any of the foregoing, however denominated by the parties, and further including all electronic and computer documents, electronic mail, attachments to email, data-processing discs, hard-drives or computer produced interpretations, thereof; computer data in all forms (on disk, tape media, and printouts therefrom), tape and disc recordings.

B. As used herein, the word "statement' includes, but is not limited to, any report of fact, observation and/or opinion of any person regarding any issue herein, whether signed or unsigned, verbatim or in a summarized manner, or set forth on audio and/or videotape of any type of reproduction, notes or summaries of any statements, whether signed or unsigned, or held in any other medium, including, but not limited to, information in computer storage

C. As used herein, the word "witness" means any person who has knowledge of, claims to have knowledge of, or that you believe may have knowledge of the occurrence, the injuries, the damage alleged, or any other matter at issue in this case.

D. Defendants are Nexa Mortgage, LLC, Brian Noe, and Eileen Pruitt.

E. With respect to any information and/or document that the responding party withholds, does not disclose, or exerts a claim of privilege of nondisclosure, a statement shall be provided by the respondent's counsel that indicates the following:

       i.    a description of the nature of the documents, communication, or things claimed to

           be privileged: and

       ii.   the exact privilege that is being claimed

F.  The term "relate to", "evidence", "pertain to", or any similar phrase shall
mean refer to, reflect on, concern or be in any way logically or factually connected with the
matter discussed.

G. "And" as well as "or" shall be construed either disjunctively and conjunctively as necessary to
bring within the scope of the particular request for production of documents any document which
might otherwise be construed to be outside the scope of the request. Whenever and wherever
appropriate, the singular form of a word should also be interpreted in the plural.

H. As provided by Supreme Court Rule 214, the documents shall be produced as they are kept
in the ordinary course of business or organized and labeled to correspond with the categories
requested.

I.  If a document has been prepared in several copies, or additional copies have been made, and
the copies are not identical (or by reason of subsequent modifications, are no longer identical)
each non-identical copy is hereby deemed a separate "document" and must be produced).

J.  All retrievable information in computer storage shall be kept in native file or program format.
The retrievable information in computer storage shall be identified, and produced in its native
format in a manner which allows recipient to open and examine, and may require production of
related programs and drive data, through mirroring, copying or other means of duplication, all of
which should be identified, and made the topic of discovery discussions in production and
coordination herewith. These same documents should also be produced in paper

printed form within the time frame. Printing the documents does not relieve the production of the electronic data and materials.

K. This request is to be considered continuing, and in the event you become aware of any additional documents responsive to this request after the date production is specified hereinabove, you are requested to furnish such documents to the undersigned counsel, as provided for in this Request for Production.

L. With respect to the production of any documents which are claimed to be privileged, a statement

shall be provided by the attorneys for the Defendant setting forth as to each document:

i.    The name(s) of the custodian(s) of the document;

ii.   The name(s) of the person(s), if any, to whom copies were sent;

iii.  The date of the document;

iv.   A brief description of the nature and the subject matter of the document;

v.    The statute, rule or decision which is claimed to give rise to privilege;

vi.   The last known custodian of the document and the present location of
      the document;

vii.  Attachments to the document;

viii. The number of pages comprising the document;

ix.   Whether the documents is handwritten, typewritten or otherwise prepared;

x.    The paragraph to which the document is otherwise responsive.

You are requested to furnish an affidavit stating whether the production is complete in accordance with the request.

1.  Defendant Brian Noe's *emails.doc* file created on December 20, 2019.

2.  The original document tendered to Eileen Pruitt's counsel pursuant to the Court's March 4, 2020 Court Order.

3.  Any and all documents in Defendant Brian Noe possession received at bwnoe@yahoo.com or any other personal email address and originating from bnoe@smartmortgage.com or other email address from November 1, 2019 to December 20, 2019 defined in Plaintiff's 214 Notice to Produce *Definitions and Instructions* section.

4.  Any and all documents in Defendant Eileen Pruitt's possession received via eileenyourmortgageexpert@gmail.com or any other personal email address and originating from epruitt@smartmortgage.com from December 1, 2019 to February 2, 2020 defined in Plaintiff's 214 Notice to Produce *Definitions and Instructions* section.

5.  Any and all documents in Defendant Eileen Pruitt's possession received from Brian Noe from December 1, 2019 to February 2, 2020 as defined in Plaintiff's 214 Notice to Produce *Definitions and Instructions* section.

6.  Defendant Eileen Pruitt's original Smart Mtg Pipeline Report.xlsx file.

7.  Any and all documents sent by Defendant Nexa Mortgage or its agents or recruiters to Defendant Eileen Pruitt or Defendant Brian Noe at any time while Defendants were employees with Plaintiff.

It is further requested that each party and/or their attorney in compliance with this request for production shall furnish an Affidavit stating whether the production is complete in accordance with this request and provided in Illinois Supreme Court Rule 214.

Respectfully submitted,

By Wilton A Person
Attorney for Plaintiff

ARDC# 6290441
Wilton A. Person
Attorney for Plaintiff
24330 Leski Lane
Plainfield, Illinois 60585
815-254-2467
wperson@personlaw.com

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
## TWELFTH JUDICIAL CIRCUIT

Smart Mortgage Centers, Inc.
       **PLAINTIFF**

v.

Case No. 20 CH 292

Brian Noe, Eileen Pruitt, Nexa Mortgage, LLC,
and Secured Mortgage Processing, LLC

       **DEFENDANTS**

## NOTICE OF DEPOSITION (REPRESENTATIVE DEPONENT)
## PURSUANT TO SCR 206(a)(1)

TO: Mr. Nathan Hall
    Mr. Stephan Hoffman
    Christensen Hsu Sipes LLP    Mr. Ari Karen/Ms. Arielle Stephenson
    224 South Michigan, Suite 1300    1120 20th Street NW, Suite 725
    Chicago, Illinois 60603    Washington, D.C. 20036

       PLEASE TAKE NOTICE that, pursuant to Rules 206(a)(1),

Plaintiff, Smart Mortgage, Inc., by its attorney, Wilton A. Person, will take the

deposition upon oral examination, as recorded by stenographic means, of Nexa

Mortgage, LLC at George E. Rydman & Associates, Ltd. located at 15 W.

Jefferson St. Suite 210, Joliet, IL 60432 or virtually via remote Zoom

proceedings, on _____ before a Notary Public or other officer authorized

by law to administer oaths.

       Pursuant to Rule 206(a)(1) of the Supreme Court Rules, Nexa

Mortgage, LLC shall designate one or more officers, directors, or managing

agents

Exhibit B

or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify with respect to each of the matters set forth in Schedule A attached hereto. You are invited to attend and cross-examine if you so desire.

Respectfully submitted,


By: Wilton A. Person

ARDC NO. 6290441
Wilton A. Person
Attorney for the Plaintiff
24330 Leski Lane
Plainfield, Illinois 60585
(815) 254-2467
wperson@personlaw.com

## SCHEDULE A

## I. DEFINITIONS

As used herein, the following terms have the following definitions:

1.      "Defendants" shall mean Nexa Mortgage, LLC, an Arizona limited liability corporation, and any predecessor, parent, subsidiary, or affiliated company and each of their respective shareholders, members, directors, officers, employees, representatives, and agents, Eileen Pruitt, and Brian Noe.

2.      "Plaintiff" shall mean Smart Mortgage Centers, Inc.

3.      The term "document" is used in its customary broad sense and includes,

4.      without being limited thereto, the following items, whether printed, recorded, filmed, or

5.      reproduced by any other process, or written or produced by hand, and whether or not claimed to be privileged against discovery on any ground, and including all originals, masters, and copies, namely: memoranda, handwritten or other notes, contracts, agreements, records, audio reproductions, tape recordings, correspondence, communications, studies, summaries, surveys, statistical compilations, minutes, charts, manuals, brochures, schedules, price lists, telegrams, software (whether in disk form or any other form or manner in which software is embodied, including source code or object code); and any other information in electronic form, or containing paper, writing, or a physical thing.

6.      Words of gender shall be construed as including all genders, without limitations.

7.      The connectives "and/or", "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.      The terms "all" and "each" shall be construed as all and each.

9.     The use of the singular form of any word includes the plural and vice versa.

10.    The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

## II. MATTERS ON WHICH EXAMINATION IS REQUESTED:

1.    Examination as to its knowledge of Defendants Brian Noe and Eileen Pruitt's client referral source and development of independent solutions to solicit residential mortgage customers.

2.    Examination as to its recruitment of Defendants Brian Noe and Eileen Pruitt prior to both becoming employees of Nexa Mortgage, LLC.

3.    Examination as to any and all documents pertaining to Defendants Brian Noe and Eileen Pruitt's employment with Plaintiff including but not limited to emails, text messages, and other documents as defined in Plaintiff s 214 Notice to Produce *Definitions and Instructions* section.

4.    Examination as to Defendant Nexa Mortgage's closed loans, denied loans, and pending loans originated by Defendant Brian Noe with respect to Smart Mortgage's client database.

# EXHIBIT G

**IN THE CIRCUIT COURT OF DUPAGE COUNTY, ILLINOIS**
**EIGHTEENTH JUDICIAL CIRCUIT**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 18518907
2021CH000475
FILEDATE: 7/1/2022 10:29 AM
Date Submitted: 7/1/2022 10:29 AM
Date Accepted: 7/1/2022 11:48 AM
ER

Smart Mortgage Centers, Inc.
   **PLAINTIFF/COUNTER-DEFENDANT**

v.

Ryan Klaic at al.

   **DEFENDANTS/COUNTER-PLAINTIFF**

Case No. 2021CH475

### MOTION FOR LIMITED DISCOVERY

Plaintiff, Smart Mortgage Centers, Inc., hereafter "Smart Mortgage", by and through its

attorney, Wilton A. Person, requests that this court allow Smart Mortgage to conduct narrowly

tailored discovery limited to a 206(a)(1) corporative representative deposition of Nexa Mortgage,

LLC, the deposition of Ryan Klaic, hereafter "Klaic", the deposition of Brian Noe, the deposition

of Margaret Truesdale, and the attached 214 Request to Produce to respond to Defendants' 2-615

Motion to Dismiss. See Exhibit A and Exhibit B.

### ARGUMENT

At issue is whether a plaintiff should be allowed full disclosure pertaining to its trade secret

and related claims to respond to Defendants' 2-615 Motion to Dismiss when the facts are

solely within the Defendant's control and when their disclosure would allow a plaintiff to

resist a motion to dismiss.

A plaintiff must possess a minimum level of information indicating defendant is liable to

him before he commences litigation and forces defendant to undergo discovery. *Computer Teaching Corp. v. Courseware Applications, Inc.,* 199 Ill.App.3d 154, 157, (1990). Still, the fact that some discovery is necessary before a complaint may be filed, or before a complaint may survive a motion to dismiss, does not establish that the complaint is improper. *Yuretich v. Sole*, 259 Ill.App.3d 311, (Ill. App. 1994). Supreme Court Rule 201(b)(1) allows a party to obtain by discovery full disclosure regarding any relevant matter, even where the discovery "relates to the claim or defense of the party seeking disclosure." (134 Ill.2d R. 201(b)(1).) Discovery may be initiated after all defendants have appeared or are required to appear, or earlier with leave of court. (134 Ill.2d R. 201(d).) Still, the trial court may deny or limit discovery "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (134 Ill.2d R. 201(c)(1).) However, a trial court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the party resisting the motion. *Yuretich v. Sole*, 259 Ill.App.3d 311, (Ill. App. 1994). Especially where the facts are exclusively within the knowledge of the opponent, it may be error to deny discovery before ruling on a motion to dismiss. *Id.*

In the present case, Smart Mortgage undoubtedly has alleged the minimum level involving the unauthorized removal of confidential information and trade secrets and related claims against former Smart Mortgage employee, Klaic. Specifically, Smart Mortgage has alleged in its Second Amended Complaint in part that R.K. and M.T. completed their loan application at Smart Mortgage on June 29, 2021, that R.K. and M.T.'s mortgage loan was in processing at the time that Klaic resigned on August 6, 2021, that on August 11, 2021, Smart Mortgage was alerted to Klaic's steering R.K. and M.T to his new employer Nexa Mortgage, LLC when an

individual named Maureen Sullivan copied an email to Klaic to his ryan@smartmtgs.net that

he utilized at Smart Mortgage, that Smart Mortgage offered R.K. and M.T. an interest rate of

2.25% for their mortgage loan, and that R.K. and M.T. closed their mortgage loan with Nexa

Mortgage, LLC with an interest rate of 2.99% on September 22, 2021.See ¶¶ 209 through 213

of Plaintiff's Second Amended Complaint.  Despite Smart Mortgage possessing more than a

minimum level of information indicating that Klaic, Noe, and Nexa Mortgage are liable to

Smart Mortgage, Smart Mortgage seeks additional facts in an abundance of caution to respond

to Defendants 2-615 Motion that it could not respond to without the aid of discovery because

Defendants are in exclusive possession of these material facts. Specifically, Defendants

asserts in their 2-615 Motion to Dismiss on multiple occasions that Smart Mortgage provides

no additional factual support for allegations relating to Klaic's misappropriation of Smart

Mortgage trade secrets and confidential information and related claims when these facts are

undoubtedly in possession of the Defendants.  The basis of the motion is to fully develop facts

to support Plaintiff's response to Defendants' 2-615 Motion to Dismiss. In further support of

its motion, Smart Mortgage's request for limited discovery is reasonable, supported by good

cause, and is narrowly tailored.

## A. Plaintiffs' Narrow Request for Limited Discovery is Reasonable and Supported by Good Cause

Smart Mortgage's request for limited discovery is reasonable and would provide Smart

Mortgage an opportunity to obtain additional facts directly relevant to the alleged deficiencies

raised by Defendants' Motion to Dismiss to allow the Court to consider these facts to the extent

that the Court finds additional facts are required to resist Defendants' 2-615 Motion to Dismiss.

**B. Plaintiffs' Request is Narrowly Tailored.**

The attached 214 Request to Produce discovery requested by Plaintiffs is reasonable in scope and directly related to the alleged factual deficiencies raised by Defendants' Motion to Dismiss. See Exhibit A. The discovery Plaintiff is seeking should not be burdensome to Defendants because the documents should be readily available to the Defendants.  The 206(a)(1) corporate representative deposition will be limited to the narrowly tailored examination topics referenced on the proposed 206(a)(1) Notice of Deposition. See Exhibit B.

CONCLUSION

For the foregoing reasons, Plaintiff Smart Mortgage respectfully requests that the Court grant its Motion to Conduct Limited Discovery to assist Smart Mortgage in obtaining additional material facts to respond to the Defendants' 2-615 Motion to Dismiss.

Wherefore, Plaintiff prays that the Court enter an Order, granting the following relief:

A. Granting its Motion to Conduct Limited Discovery;

B. Granting such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Wilton A. Person

By:  Wilton A. Person

DuPage County ID # 222371
Wilton A. Person
Attorney for Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
815-254-2467
wperson@personlaw.com

## IN THE CIRCUIT COURT OF DUPAGE COUNTY, ILLINOIS
### EIGHTEENTH JUDICIAL CIRCUIT

Smart Mortgage Centers, Inc.
**PLAINTIFF/COUNTER-DEFENDANT**

v.

Case No. 2021CH475

Ryan Klaic at al.

**DEFENDANTS/COUNTER-PLAINTIFF**

## NOTICE TO PRODUCE PURSUANT TO
### SUPREME COURT RULE 214

Now comes the Plaintiff Smart Mortgage and pursuant to Illinois SCR 214 propounds the following requests to produce the following documents and information for inspection and to be copied and reproduced by Defendant Nexa Mortgage, LLC within 28 days.

### Definitions and Instructions

Unless the context indicates otherwise, the following definitions apply to these

Requests for Production:

A. The term "document" or "documents" shall mean and include, without limiting the generality of its meaning, originals in each instance (and all nonduplicate copies and all drafts), text messages, faxes, e-mails and all writings (including handwritten, electronic mail, typed, printed, xeroxed, or otherwise reproduced in any manner), papers or graphic matters in the possession, custody or control of the party or party's counsel, which record or relate to any act or occurrence, event or communication connected with or relating to the activity of the party including, but not limited to: letters, correspondence, memoranda, minutes, notes, summaries, reports, proposals, books, messages, transcripts, contracts, agreements, memoranda of telephone conversations or face to face conversations, microfilm, telegrams, bulletins, pamphlets, drawings,

Exhibit A

statements, notices, reports, partnership agreements and amendments, articles of association or

incorporation, bylaws, rules, regulations, directives, teletype messages, minutes of meetings, inter-

office communications, balance sheets, operating budgets, accounting work sheets and paper audit

reports, financial statements, ledgers, journals, books of accounts, bills, vouchers, bank checks,

proposals, prospective, offers, orders, receipts, desk calendars, appointment books, diaries, time

sheets, logs, telephone messages, notebooks, evaluations and/or recommendations, annual reports,

confirmations, leases, analyses, feasibility studies, disbursement requests or orders, indices,

projections, data sheets, personal interviews (in any form whether transcribed or not), summaries

or paraphrases of any of the foregoing, however denominated by the parties, and further including

all electronic and computer documents, electronic mail, attachments to email, data-processing

discs, hard-drives or computer produced interpretations, thereof; computer data in all forms (on

disk, tape media, and printouts therefrom), tape and disc recordings.

B. As used herein, the word "statement' includes, but is not limited to, any report of fact,

observation and/or opinion of any person regarding any issue herein, whether signed or

unsigned, verbatim or in a summarized manner, or set forth on audio and/or videotape of any

type of reproduction, notes or summaries of any statements, whether signed or unsigned, or

held in any other medium, including, but not limited to, information in computer storage

C. As used herein, the word "witness" means any person who has knowledge of, claims to

have knowledge of, or that you believe may have knowledge of the occurrence, the injuries,

the damage alleged, or any other matter at issue in this case.

D. Defendants are Ryan Klaic, Brian Noe, and Nexa Mortgage, LLC.

E. With respect to any information and/or document that the responding party withholds,

does not disclose, or exerts a claim of privilege of nondisclosure, a statement shall be

provided by the respondent's counsel that indicates the following:

    i.    a description of the nature of the documents, communication, or things claimed to

        be privileged: and

    ii.   the exact privilege that is being claimed

F.  The term "relate to", "evidence", "pertain to", or any similar phrase shall

mean refer to, reflect on, concern or be in any way logically or factually connected with the

matter discussed.

G. "And" as well as "or" shall be construed either disjunctively and conjunctively as necessary to

bring within the scope of the particular request for production of documents any document which

might otherwise be construed to be outside the scope of the request. Whenever and wherever

appropriate, the singular form of a word should also be interpreted in the plural.

H. As provided by Supreme Court Rule 214, the documents shall be produced as they are kept

in the ordinary course of business or organized and labeled to correspond with the categories

requested.

I.  If a document has been prepared in several copies, or additional copies have been made, and

the copies are not identical (or by reason of subsequent modifications, are no longer identical)

each non-identical copy is hereby deemed a separate "document" and must be produced).

J.  All retrievable information in computer storage shall be kept in native file or program format.

The retrievable information in computer storage shall be identified, and produced in its native

format in a manner which allows recipient to open and examine, and may require production of

related programs and drive data, through mirroring, copying or other means of duplication, all of

which should be identified, and made the topic of discovery discussions in production and

coordination herewith. These same documents should also be produced in paper

printed form within the time frame. Printing the documents does not relieve the production of the electronic data and materials.

K. This request is to be considered continuing, and in the event you become aware of any additional documents responsive to this request after the date production is specified hereinabove, you are requested to furnish such documents to the undersigned counsel, as provided for in this Request for Production.

L. With respect to the production of any documents which are claimed to be privileged, a statement

shall be provided by the attorneys for the Defendant setting forth as to each document:

i.     The name(s) of the custodian(s) of the document;

ii.    The name(s) of the person(s), if any, to whom copies were sent;

iii.   The date of the document;

iv.    A brief description of the nature and the subject matter of the document;

v.     The statute, rule or decision which is claimed to give rise to privilege;

vi.    The last known custodian of the document and the present location of the document;

vii.   Attachments to the document;

viii.  The number of pages comprising the document;

ix.    Whether the documents is handwritten, typewritten or otherwise prepared;

x.     The paragraph to which the document is otherwise responsive.

You are requested to furnish an affidavit stating whether the production is complete in accordance with the request.

1.   Any and all documents in Defendant Ryan Klaic's possession received at rklaic@gmail.com, rklaic01@gmail.com, or any other email address affiliated with Ryan Klaic and originating from ryan@smartmortgage.com or other email address from December 20, 2019 to August 6, 2021 defined in Plaintiff's 214 Notice to Produce *Definitions and Instructions* section.

2.   Any and all documents sent by Defendant Nexa Mortgage or its agents or Defendant Nexa Mortgage recruiters to Defendant Ryan Klaic at any time while Defendant Klaic was an employee with Plaintiff.

3.   Any and all documents sent by Defendant Brian Noe to Defendant Ryan Klaic after December 20, 2019 while Defendant Klaic was an employee with Plaintiff.

4.   Any and all documents sent by Nexa Mortgage, LLC's employee Brandon Himlar to Defendant Ryan Klaic at any time while Defendant Klaic was an employee with Plaintiff.

5.   Any and all documents sent by Margaret Truesdale to Defendant Ryan Klaic at any time while Defendant Klaic was an employee with Plaintiff from June 23, 2021 to August 6, 2021.

It is further requested that each party and/or their attorney in compliance with this request for production shall furnish an Affidavit stating whether the production is complete in accordance with this request and provided in Illinois Supreme Court Rule 214.

Respectfully submitted,

By Wilton A Person
Attorney for Plaintiff

DuPage County ID # 222371
Wilton A. Person
Attorney for Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
815-254-2467
wperson@personlaw.com

**IN THE CIRCUIT COURT OF DUPAGE COUNTY, ILLINOIS**
**EIGHTEENTH JUDICIAL CIRCUIT**

Smart Mortgage Centers, Inc.
    **PLAINTIFF/COUNTER-DEFENDANT**

               v.

Ryan Klaic at al.

    **DEFENDANTS/COUNTER-PLAINTIFF**

Case No. 2021CH475

## NOTICE OF DEPOSITION (REPRESENTATIVE DEPONENT)
## PURSUANT TO SCR 206(a)(1)

TO: Mr. Nathan Hall
    Mr. Stephan Hoffman
    Christensen Hsu Sipes LLP    Mr. Ari Karen/Ms. Arielle Stephenson
    224 South Michigan, Suite 1300    1120 20th Street NW, Suite 725
    Chicago, Illinois 60603    Washington, D.C. 20036

        PLEASE TAKE NOTICE that, pursuant to Rules 206(a)(1),

Plaintiff, Smart Mortgage, Inc., by its attorney, Wilton A. Person, will take the

deposition upon oral examination, as recorded by stenographic means, of Nexa

Mortgage, LLC at George E. Rydman & Associates, Ltd. located at 15 W.

Jefferson St. Suite 210, Joliet, IL 60432 or virtually via remote Zoom

proceedings, on _____ before a Notary Public or other officer authorized

by law to administer oaths.

        Pursuant to Rule 206(a)(1) of the Supreme Court Rules, Nexa

Mortgage, LLC shall designate one or more officers, directors, or managing

agents

or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify with respect to each of the matters set forth in Schedule A attached hereto. You are invited to attend and cross-examine if you so desire.

Respectfully submitted,


By: Wilton A. Person


DuPage County ID # 222371
Wilton A. Person
Attorney for Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
815-254-2467
wperson@personlaw.com

## <u>SCHEDULE A</u>

## I. <u>DEFINITIONS</u>

As used herein, the following terms have the following definitions:

1.     "Defendants" shall mean Nexa Mortgage, LLC, an Arizona limited liability corporation, and any predecessor, parent, subsidiary, or affiliated company and each of their respective shareholders, members, directors, officers, employees, representatives, and agents, Ryan Klaic, and Brian Noe.

2.     "Plaintiff" shall mean Smart Mortgage Centers, Inc.

3.     The term "document" is used in its customary broad sense and includes,

4.     without being limited thereto, the following items, whether printed, recorded, filmed, or

5.     reproduced by any other process, or written or produced by hand, and whether or not claimed to be privileged against discovery on any ground, and including all originals, masters, and copies, namely: memoranda, handwritten or other notes, contracts, agreements, records, audio reproductions, tape recordings, correspondence, communications, studies, summaries, surveys, statistical compilations, minutes, charts, manuals, brochures, schedules, price lists, telegrams, software (whether in disk form or any other form or manner in which software is embodied, including source code or object code); and any other information in electronic form, or containing paper, writing, or a physical thing.

6.     Words of gender shall be construed as including all genders, without limitations.

7.     The connectives "and/or", "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.     The terms "all" and "each" shall be construed as all and each.

9. The use of the singular form of any word includes the plural and vice versa.

10. The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

II. MATTERS ON WHICH EXAMINATION IS REQUESTED:

1.  Examination as to its knowledge of Defendant's Ryan Klaic's client referral source and development of independent solutions to solicit residential mortgage customers.

2. Examination as to its recruitment of Defendants Ryan Klaic prior to him becoming an employee of Nexa Mortgage, LLC.

3. Examination as to any and all documents pertaining to Defendant Ryan Klaic's employment with Plaintiff including but not limited to emails, text messages, and other documents as defined in Plaintiff s 214 Notice to Produce Definitions and Instructions section.

4. Examination as to Defendant Nexa Mortgage's closed loans, denied loans, and pending loans originated by Defendant Klaic with respect to Smart Mortgage clients.

# EXHIBIT H

1

```
 1        IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                  DU PAGE COUNTY, ILLINOIS
 2
   SMART MORTGAGE CENTERS, INC.,      )
 3                                     )
                Plaintiff,             )
 4                                     )
             -vs-                      )   2021 CH 475
 5                                     )   HEARING
   RYAN KLAIC, et al.,                 )
 6                                     )
                Defendants.            )
 7

 8

 9                   Proceedings had at the hearing of the

10   above-entitled cause, before the Honorable ANNE T.

11   HAYES, Judge of said Court, recorded on the DuPage

12   County Computer Based Digital Recording System, DuPage

13   County, Illinois, and transcribed by AMY FENNEY,

14   Certified Shorthand Official Court Reporter, commencing

15   on the 16th day of August, 2022.

16

17

18   PRESENT:

19
         MR. WILTON A. PERSON,
20
             appeared on behalf of Plaintiff;
21

22       Mitchell Sandler, LLC, by
         MS. ARIELLE STEPHENSON,
23
             appeared on behalf of Defendants.
24
```

1        THE COURT:  All right.  This is case number

2   21 CH 475, Smart Mortgage Centers vs. Ryan Klaic.  I'll

3   have everyone state their name for the record for me.

4        MR. PERSON:  Wilton Person for the plaintiff,

5   Smart Mortgage.

6        THE COURT:  Okay.

7        MS. STEPHENSON:  And Arielle Stephenson for all

8   the defendants, Ryan Klaic, Brian Noey, and Nexa

9   Mortgage, LLC.

10       THE COURT:  Okay.  And we have a Robert Reilly on

11   the line.

12       UNIDENTIFIED SPEAKER:  Yes.  Your Honor my name is

13   Robert Reilly.  I'm here representing Jake Polowaczik

14   (phonetic) in the name change petition --

15       THE COURT:  In the fee petition?

16       UNIDENTIFIED SPEAKER:  In the name change

17   petition.  It was original --

18       THE COURT:  That was on my 9:00 o'clock court

19   call.  Hold on just a second.  Let me take care of that

20   real quickly, because that was -- that's a 2007.  Just

21   one moment please.

22                      (Whereupon, the Court attended to other

23                       matters on the call, after which the

24                       following proceedings were had herein:)

1          THE COURT:  All right.  So now we're moving to the

2     hearing.  Thank you for your patience with respect to

3     that.  We are here on a motion for limited discovery

4     brought by Mr. Person.  I have reviewed the motion for

5     limited discovery, as well as the response and reply to

6     same and the relative case law.

7               Mr. Person, it's your motion.  Go ahead.

8          MR. PERSON:  Yes, just briefly.  As the Court is

9     aware, the holding in Yuretich vs. Sole clearly states

10    that a trial court may consider allowing limited

11    discovery if that discovery would reasonably assist the

12    plaintiff, in this case Smart Mortgage, in replying to

13    a motion to dismiss.  In this case the defendants have

14    indicated that there's many facts missing from the

15    plaintiff's complaint.  And in response to that, the

16    discovery would assist the plaintiff, Smart Mortgage,

17    in responding to that.

18              And also, along the same lines with the case

19    law is that the parties, especially in a trade secrets

20    and confidential case, the defendants in this matter

21    are the parties that have exclusive control of those

22    additional facts.  So it's not the plaintiff's burden

23    to know or predict what those facts may be.

24              So really the case is very simple, the motion

1    is very simple in the sense that it's only whether the

2    Court believes that this request would reasonably

3    assist Smart Mortgage in responding to the defendant's

4    2-615 complaint.  So in light of that, the -- Smart

5    Mortgage would request that the Court grant its motion

6    for limited discovery.  Thank you.

7        THE COURT:  And it would involve the 214 request.

8    I only saw a notice of dep for one individual, which

9    was the corporate representative for Nexa Mortgage.

10   Who else are you asking to depose pursuant to your

11   limited discovery request?

12       MR. PERSON:  It would be Mr. Klaic, Mr. Noey, and

13   then there was another individual, Ms. Truesdale,

14   Maggie Truesdale, who filed the affidavit with the

15   Court related to the temporary restraining order.

16       THE COURT:  Okay.  All right.  Ms. Stephenson?

17       MS. STEPHENSON:  Yes, Your Honor.  Plaintiff's

18   motion for limited discovery should be denied primarily

19   because their request for discovery is in contradiction

20   with other actions and their own motion on page two and

21   three where they claim that they have already

22   undoubtedly alleged the minimum level of facts to

23   support its claims, and that it's only seeking this

24   discovery out of an abundance of caution.

1    I'll also recall that Smart filed a motion

2    for a temporary restraining order in December of 2021,

3    shortly after the case was filed, and sought an

4    evidentiary hearing.  And if Smart has undoubtedly

5    alleged the minimum facts and was prepared for an

6    evidentiary hearing almost eight months ago, ruling on

7    this -- on the motion to dismiss without discovery is

8    absolutely appropriate.  This Court should not grant

9    plaintiff's motion simply to provide it reassurance

10   when its statements and actions indicate discovery

11   isn't necessary.

12    And second, I'll also briefly address some of

13   the claims made by plaintiff; preliminarily that

14   pursuant to the case law, this motion isn't warranted

15   either.  As the seminal case Yuretich says, a discovery

16   request may be properly quashed where the trial court

17   has sufficient information to decide the motion to

18   dismiss, and that's what Judge Rickmon ordered in our

19   last hearing.

20    And moreover, our motion to dismiss is mostly

21   premised on the enforceability of the restrictive

22   covenants that Smart seeks to enforce.  It's not a

23   factual question, it's a legal question.  And so it

24   goes against plaintiff's entire argument that it's

1   needed to find a factual basis for its case, when if

2   there's no trade secrets properly identified, and the

3   contractual provisions are unenforceable, then no facts

4   can save the case, which is why we think that this is

5   premature.

6         They have not alleged a minimally viable

7   claim, and it only seeks to increase costs and the

8   burden on my client by requesting four depositions and

9   requests for production that demand all e-mails, text

10  messages, and other documents for a period exceeding

11  six months when they haven't even passed the motion to

12  dismiss stage.  And for those reasons, we respectfully

13  request the Court deny their motion.

14      THE COURT:  Okay.  Well, there is a lot of case

15  law on this.  And there is a case out of -- there are

16  several cases that the Court found relative to granting

17  that request for limited discovery.  But I think it's

18  important to understand this is a limited discovery

19  request, okay.  You're seeking to depose four

20  individuals, and the 214 request is expansive.  So just

21  facially I don't find it's a limited discovery request.

22        But more significantly, the case that you

23  cited, which is the case -- it's Yuretich vs. -- it's

24  either Sole or Sole, 259 Ill. App. 3d 311.  It's a 1994

1    case.  The holding of that case was they needed -- not

2    as the plaintiffs -- articulated to the Court that the

3    issue or the factual needs were as it relates to the

4    willful wanton conduct of the EMT's.  And it was very

5    narrowly tailored.  It was this is what we need -- this

6    is what we are unable to get, okay.  And this would

7    prevent a dismissal of the complaint on that count,

8    because that evidence of willful and wanton behavior.

9            I went back through your motion, counsel, and

10   your motion says the basis of the motion is to fully

11   develop facts to support plaintiff's response to the

12   defendant's 2-615.  We're requesting it to obtain

13   additional facts directly relevant to the alleged

14   deficiencies.  What alleged deficiencies?  You have to

15   articulate what counts, because otherwise this is a

16   fishing expedition, okay.  Without a nexus between the

17   counts and the discovery that you need to articulate is

18   within the control of the defendants, then by granting

19   a motion for limited discovery, there is -- it's not a

20   motion for limited discovery, it's just discovery.

21           And I went back through.  There's twelve

22   counts in the complaint, okay.  And to counsel's point,

23   the motion to dismiss as it relates to the breach of

24   contract counts is not based on the actions of the

1    defendant, but rather it's an unenforceable restrictive
2    covenant in the employment agreement.  So that is their
3    argument; not necessarily that there was a violation,
4    but that they are per se unenforceable such that
5    they're entitled to a 2-615.
6              So I don't know how facts relative to
7    anyone's behavior really is relevant to that
8    determination whether the restrictive covenant of the
9    employment agreement is enforceable as a matter of law,
10   okay.
11             So, you know, I'm happy to hear argument from
12   you, but the case that you cited I do -- I agree with
13   you.  And there are other cases from surrounding
14   districts that support the idea of a motion for a
15   limited discovery, okay.  I agree with you.  But the
16   one thing that all of these cases have in common is
17   there has to be a clear articulation of what facts you
18   need.  You don't have to plead evidentiary facts, but
19   certainly at a minimum the subject matter, what count
20   those are tied to, and how it is that you -- those are
21   in the possession of the defendant.
22             Because I -- you want me to go -- I don't
23   know what facts you're needing and what counsels are
24   tied to and what theories.  You have to plead with more

1    specificity, okay.  So for those reasons your motion

2    for limited discovery is denied without prejudice.

3            If you want to replead it, I'll give you time

4    to do that.  But you have to -- just like the cases

5    talk about, you have to clearly articulate.  Because

6    then, like I said, then the -- it's -- the line is

7    blurred between a motion for limited discovery and a

8    fishing expedition, okay.  So, you know, you're asking

9    for four deps, and the 214 is very -- like I said

10   before, it's very expansive.

11           So I'm cognizant of the case law and what the

12   Appellate Courts tell me is the right thing to do, but

13   the request presently before the Court, I cannot

14   determine whether or not these are reasonable things

15   necessary to the -- to do the 2-615 because they

16   haven't been pled with specificity.  So if you want a

17   chance to replead your motion prior to setting the

18   motion to dismiss, I'll allow you to do that.  It's an

19   inter -- you know, you can do that.  But if you're

20   going to do that, I'll give you seven days to do that,

21   because otherwise we're going to set the motion to

22   dismiss for hearing, okay.

23       MR. PERSON:  Yes.  And I can certainly replead

24   that.  It's primarily related to, honestly, the trade

1    secrets and confidential information.  But I can

2    replead it to --

3         THE COURT:  Well, and you need to -- but to that

4    point, there's only certain counts that deal with that

5    issue, okay.  So you need to -- because I can't

6    determine whether or not -- I'm not going to go through

7    twelve counts of this complaint and try and ferret

8    out -- because all you've told me is just more facts,

9    okay.  You need to articulate.  You don't have to plead

10   evidentiary facts.  I understand.  You've got to

11   articulate for counts four, five, and six.  Those

12   allege a misappropriation of trade secrets.  These are

13   the facts that we believe are in the defendant's

14   possession, and we would -- okay.

15            Because -- and, you know, arguably what

16   they're arguing is, especially with the fiduciary duty

17   counts, that to the extent that there is no, you

18   know -- I don't even -- sometimes the breach of

19   fiduciary duty counts, it seems like they're arguing if

20   there's no contractual provision, then the fiduciary

21   duty wouldn't arise as a matter of law.  But I suppose

22   that's for another day.

23            But I think you do need to plead it with more

24   specificity, okay.  So I'll give you seven days to do

```
1    that.  I'll have you back here maybe in a week and a
2    half, see if we can do that, because I do want to
3    keep -- I know we're sort of in a little bit of a limbo
4    period here.  I know we've got a motion to dismiss out
5    there that needs to be set for a hearing, so I'm
6    mindful of that, okay.
7              Today's date is the 16th.  So I'll give you
8    until the end of the day on the 23rd to replead your
9    motion for limited discovery.  I can see you back here
10   at the end of that week, the 24th, 25th, 26th if that
11   works?
12        MR. PERSON:  The 26th is fine for my schedule.
13        THE COURT:  All right.  Ms. Stephenson?
14        MS. STEPHENSON:  I'm actually supposed to be
15   taking that week off.  So is there any way we could
16   do --
17        THE COURT:  That's fine.  How about the 29th or
18   the 30th?
19        MS. STEPHENSON:  Yep, those are great for me.
20        MR. PERSON:  The 30th is fine.
21        THE COURT:  All right.  The 30th it is.
22        MS. STEPHENSON:  Okay.
23        MR. PERSON:  At what time?
24        THE COURT:  It's always at 9:00 o'clock.
```

1       MR. PERSON:  Okay.

2       THE COURT:  Okay.  Ms. Stephenson, if you want

3   to -- Mr. Person, it's your motion.  I'll have you do

4   the electronic order for me today.

5       MR. PERSON:  Okay.  Thank you, Your Honor.

6       THE COURT:  Anything else we need to make a record

7   before I let you go?

8       MR. PERSON:  Not at this time.

9       THE COURT:  Very well.  Thanks, everyone.

10      MS. STEPHENSON:  Thank you.

11      MR. PERSON:  Thank you.

12      THE COURT:  Take care.

13                  (Which were all of the proceedings had

14                   in the above-entitled matter.)

15

16

17

18

19

20

21

22

23

24

```
 1              IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

 2                        DU PAGE COUNTY, ILLINOIS

 3

 4

 5              I, AMY FENNEY, hereby certify that I am a

 6      Certified Shorthand Official Court Reporter assigned to

 7      transcribe the computer based digital recording of

 8      proceedings had of the above-entitled cause,

 9      Administrative Order No. 99-12, and Local Rule 1.01(d).

10      I further certify that the foregoing, consisting of

11      Pages 1 to 13, inclusive, is a true and accurate

12      transcript completed to the best of my ability, based

13      upon the quality of the audio recording.

14

15

16      _____

17                 Official Court Reporter
              Eighteenth Judicial Circuit of Illinois
18                    DuPage County

19

20

21

22

23

24
```