Lance R. Broberg
Nicholas A. Beatty
**TIFFANY & BOSCO, PA**
2525 E Camelback Rd., 7th Fl.
Ste. 700
Phoenix, AZ 80516-9239
Tel: (602) 255-0103
lrb@tblaw.com
nab@tblaw.com

Attorneys for Plaintiff NEXA Mortgage, LLC

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NEXA MORTGAGE, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SMART MORTGAGE CENTERS, INC., an Illinois for-profit corporation; and WILTON A. PERSON,<br><br>Defendants. | Case No. 2:23-cv-00410-SPL<br><br>**AMENDED COMPLAINT** |

Plaintiff NEXA Mortgage, LLC ("NEXA") files this Complaint against Defendants Smart Mortgage Centers, Inc. ("Smart Mortgage") and Wilton A. Person ("Person") (collectively, "Defendants"). NEXA alleges the following against Defendants:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff NEXA is an Arizona limited liability company and full-service mortgage company headquartered in Chandler, Arizona which is located in Maricopa County, Arizona.

2. Defendant Smart Mortgage is an Illinois for-profit corporation providing mortgage banking services and has a mortgage broker license in Arizona, #1032665, that authorizes Smart Mortgage to conduct business in Arizona.

1

3. Upon information and belief, Defendant Person is an Illinois resident that is admitted to practice law in the State of Illinois and representing Smart Mortgage in multiple various civil suits against NEXA and a number of NEXA's employees.

4. Upon information and belief, a further economic relationship exists between the Defendants beyond the attorney and client relationship, which includes but is not limited to office rent/lease agreements and the provision of free legal services in exchange therefor. Together, the Defendants have contributed to causing NEXA's damages.

5. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the citizenship of all Defendants is diverse from that of the Plaintiff.

6. Defendants have over the past two years targeted NEXA, its CEO, the CEO's wife's company, Secured Mortgage Processing ("SMP") – all Arizona residents/citizens – for the purpose of interfering with NEXA's business. And, Defendants have engaged in this activity with full knowledge that it would harm NEXA, which Defendants know is a citizen of the State of Arizona.

7. Upon information and belief, Defendants have served NEXA and/or its Arizona-based principals, agents, and associates, including SMP, with legal process that was not calculated to remedy any actual injury suffered by Defendants, but rather was calculated to annoy, harm, and interfere with the business endeavors of NEXA and its associates.

8. In connection with these legal proceedings, Defendants admit to having directed – and upon information and belief, Defendants have indeed directed – various correspondence and communications to NEXA, SMP, and their Arizona-based principals, in the State of Arizona.

9. In connection with these legal proceedings, Defendants also admit to having directed various communications to NEXA's customers. Upon information and belief, such action was taken for the sole purpose of harming NEXA's reputation and business operations.

10. Defendants' actions are specifically, consciously, and continuously targeted at

Arizona residents. As such, it is foreseeable that Defendants would be hauled into Court to address their tortious acts intended to cause harm in the State of Arizona. As such, the exercise of jurisdiction over Defendants is consistent with that provided under Arizona law and the United States Constitution.

11. The amount of NEXA's damages qualifies this matter as a Tier 3 case in accordance with Rule 8(b)(2) and Rule 26.2(c)(3) of the Arizona Rules of Civil Procedure.

## GENERAL ALLEGATIONS

12. NEXA is a mortgage company headquartered in Chandler, Arizona, offering mortgage programs and services.

13. Smart Mortgage is a corporation that provides mortgage products and services to its customers.

14. Smart Mortgage holds mortgage broker licenses in Arizona, Florida, Iowa and Wisconsin; a mortgage company registration in Colorado; a residential mortgage license in Illinois; a loan broker license in Indiana; and a broker license in Virginia.

15. Smart Mortgage purposefully applied for a mortgage broker license in Arizona. Smart Mortgage was first issued its Arizona Mortgage Broker License on January 11, 2022. This license authorizes Smart Mortgage to conduct business in Arizona.

16. According to its own website, Smart Mortgage serves Arizona and has a license #1032665.

17. As a mortgage broker, Smart Mortgage and its counsel are very familiar with the fact that a mortgage broker must be licensed in a state and that both the loan broker and its loan officers must get licensed and recertified on an annual basis.

18. Defendants are familiar with and are necessarily aware of the fact that this recertification typically will involve a review of and considers any pending litigation against an institution.

19. Beginning in February 2020, Defendants began a concerted effort to interfere with

NEXA's business by filing an array of lawsuits and legal actions simply to interfere with NEXA and its loan officers' licensure in various states.

### The Original Will County Action

20. On February 20, 2020, Smart Mortgage, working through Mr. Person, filed an initial verified complaint for temporary restraining order ("TRO"), preliminary and permanent injunctive and other relief against NEXA and two of NEXA's employees, captioned *Smart Mortgage Centers, Inc. v. Brian Noe, Eileen Pruitt, and NEXA*, Case No. 20CH292 in Will County, Illinois ("First Verified Complaint"), alleging that NEXA aided and abetted former Smart Mortgage employees, Brian Noe and Eileen Pruitt, in allegedly taking the names of certain customers they worked with when they terminated their employment with Smart Mortgage ("Original Will County Action").

21. NEXA and the employee defendants in the Original Will County Action filed a Motion to Dismiss Smart Mortgage's First Verified Complaint on March 25, 2020. Smart Mortgage did not respond to the Motion to Dismiss, but instead filed an Amended Complaint on June 30, 2020.

22. NEXA and the employee defendants filed a Motion to Dismiss Smart Mortgage's First Amended Complaint on September 14, 2020. Defendants did not respond to the Motion to Dismiss the Amended Complaint, but instead filed a Motion for Leave to File a Second Amended Complaint on October 22, 2020.

23. On or about December 8, 2020, Smart Mortgage, working through Mr. Person, filed a parallel lawsuit against NEXA and Noe captioned *Smart Mortgage Centers, Inc. v. Brian Noe and NEXA Mortgage, LLC*, Case No. 20-cv-07248 ("Parallel Federal Action") in the United States District Court for the Northern District of Illinois, asserting essentially the same allegations as its state court Complaint in the Original Will County Action and adding a claim under the federal Defend Trade Secrets Act and Computer Fraud and Abuse Act. (*See* Complaint in Parallel Federal Action, attached as **Exhibit A**).

24. Defendants did not respond to NEXA's Motion to Dismiss the Second Amended Complaint in the Original Will County Action, but instead filed a Third Amended Complaint on January 26, 2021.

25. The Third Amended Complaint filed by Defendants added claims against a new party, SMP, a business entity owned by the wife of NEXA's CEO, claiming that SMP was a viable co-defendant.

26. On February 18, 2021, Defendants filed an Amended Complaint in the Parallel Federal Action, adding Eileen Pruitt and SMP as defendants. (Amended Complaint in Parallel Federal Action, attached as **Exhibit B**).

27. When NEXA moved to dismiss the Third Amended Complaint in the Original Will County Action, Smart Mortgage filed a Fourth Amended Complaint on April 13, 2021.

28. Defendants did not respond to NEXA's Motion to Dismiss the Fourth Amended Complaint in the Original Will County Action, but instead filed a Fifth Amended Complaint on May 11, 2021.

29. On June 4, 2021, the Northern District of Illinois stayed Defendants' Parallel Federal Action against all defendants, including NEXA because the claims were parallel to those Defendant alleged against the defendants in the Original Will County Action and thus were required to be stayed under the *Colorado River* doctrine. (*See* Order Staying Case in Parallel Federal Action, attached as **Exhibit C**).

30. The federal court, reviewing whether the claims in the Parallel Federal Action were of a "vexatious or contrived nature" as part of the *Colorado River* analysis found:

> Smart Mortgage's conduct as relates to this suit has been suspicious, to put it mildly.  First, Smart Mortgage filed this suit the day before a settlement conference in the state court suit, which strongly suggests that its primary motivation was to gain leverage in the state court negotiations.  That is an improper use of the federal judicial system.  Next, there is no reason why Smart Mortgage could not have asserted its federal claims in the state court suit....

> Finally, the CFAA claim in this suit—which has no analog in the state court suit and upon which Smart Mortgage bases its argument that a stay would be improper, was asserted only after the court raised the suggestion of *Colorado River* abstention. Again, Smart Mortgage's timing strongly suggests that injecting the CFAA claim into this case was just another tactic—this one to forestall abstention and a stay—rather than a good-faith assertion of a federal right.

(*Id*. at pp. 10-11).

31. The federal court further opined that "Smart Mortgage would be well advised to dismiss this suit in short order, lest it exacerbate its existing exposure to possible sanctions." (*Id*. at p. 12).

32. Hearing the warning shots, the Parallel Federal Action was then withdrawn by Defendants on June 16, 2022, and the notice of dismissal informed the federal court that Defendants reasserted the federal causes of action via amending their complaint and filing a Sixth Amended Complaint in Will County on June 10, 2021. (*See* Smart Mortgage's Notice of Dismissal in Parallel Federal Action, attached as **Exhibit D**).

33. After such conduct, NEXA and the employee defendants in the Original Will County Action removed the action to federal court in the Northern District of Illinois on July 7, 2021, Case No. 1:21-cv-03606, now that Smart Mortgage had alleged federal claims.

34. Defendants are aware that their lawsuit lacks merit. Indeed, on March 21, 2022, the Northern District of Illinois, which had occasion to consider Smart Mortgage's Sixth Amended Complaint after it was removed to federal court, dismissed each and every allegation premised on federal law. (*See* Order Dismissing and Remanding Case in the Original Will County Action, attached as **Exhibit E**). Although the state and federal laws are nearly identical, the state causes of action were remanded because the Court relinquished supplemental jurisdiction of the state causes of action. (*Id*.).

35. The Original Will County Action was reinstated in Will County on May 17, 2022.

36. Once remanded, NEXA filed another Motion to Dismiss on May 6, 2022.

37. Defendants continued their strategy of delay tactics: Smart Mortgage filed a Motion for Limited Discovery in the Original Will County Action on May 23, 2022, simultaneously alleging that "Smart Mortgage undoubtedly has alleged the minimum level involving the unauthorized removal of confidential information and trade secrets and related claims" but that Smart Mortgage also needed discovery to "fully develop facts to support NEXA's response to Defendants' [] Motion to Dismiss." (*See* Smart Mortgage's Motion for Limited Discovery in the Original Will County Action, at pp. 2-3, attached as **Exhibit F**).

38. Smart Mortgage's Motion for Limited Discovery is yet another example of its pattern of delay and avoidance when faced with dismissal. Twenty-seven (27) months had passed since Smart Mortgage filed its initial complaint. During this time, Smart Mortgage filed six amended complaints to avoid responding to NEXA's four earlier motions to dismiss. Moreover, Smart Mortgage had already responded to the motions to dismiss briefed in the removed federal case nine months prior without any suggestion that discovery was needed.

39. Smart Mortgage's Motion for Limited Discovery was granted, and NEXA and the employee defendants tendered their responses. However, instead of using the information to respond to the Motion to Dismiss, as it had promised, it sought to file another, Seventh Amended Complaint.

40. Smart Mortgage amended their Complaint a seventh time even though their claims have no more chance to succeed at the state level than they do at the federal level. Defendants' Seventh Amended Complaint, filed on August 22, 2022, is now pending.

41. At all relevant times, Defendants have been well aware that the allegations in the various cases it initiated were categorically false, meritless, and incapable of being substantiated through discovery. Yet despite this knowledge, Defendants have persisted in serving legal process on NEXA and/or its associates, agents, employees, and principals, for the sole purpose of causing NEXA to suffer economic and reputational harm.

42. Moreover, as alleged in Defendants' Seventh Amended Complaint, by

Defendants' own admission, they directed various correspondence and communications toward NEXA and NEXA's customers, with the malicious intent to cause harm to NEXA's business, its principals, its employees, and its associates, and to interfere with NEXA's customer relationships. (*See, e.g.*, Smart Mortgage's Seventh Amended Complaint in the Original Will County Action, at ¶¶ 222-23, attached as **Exhibit I**).

### The Defamation Case Against NEXA Employee Brian Noe

43. Of course, Defendants did not stop with the Original Will County Action. On November 2, 2021, Defendant Smart Mortgage, working through Mr. Person, filed another case captioned *Smart Mortgage Centers, Inc. v. Brian Noe,* Case No. 2021L000847, against one of NEXA's employees, Brian Noe, alleging defamation and violation of the Illinois Deceptive Trade Practices Act in Will County, Illinois ("Noe Case"). That lawsuit claimed Mr. Noe should be liable for $50,000 in damages based partially on Noe comparing Smart Mortgage to a character in the movie *Shawshank Redemption* in a private conversation with a former colleague at Smart Mortgage.

44. True to form, on April 21, 2022, Smart Mortgage amended their complaint rather than respond to Mr. Noe's Motion to Dismiss.

45. Mr. Noe's Motion to Dismiss the Amended Complaint was granted without prejudice on July 19, 2022, disposing of the entirety of the case.

46. On August 11, 2022, Defendants filed a Second Amended Complaint against Mr. Noe shifting away from the statements concerning *Shawshank Redemption* comparisons and relying now on the assertion that in a private conversation, Mr. Noe allegedly made the statement to a singular individual that Smart Mortgage had no money and was going to be investigated by the Consumer Financial Protection Bureau.

47. These latest allegations are knowingly false. Mr. Person is personally aware that the conversation he bases these latest defamatory statements upon did not actually happen. Indeed, the former employee with whom Mr. Noe had the subject discussion was asked by Mr.

Person about the conversation with Mr. Noe. Based upon this affidavit, it is apparent Mr. Person knew Mr. Noe did not make the statements alleged in the defamation lawsuit. As such, Mr. Person has intentionally misrepresented the conversation to support a baseless defamation claim.

48. Thus, Mr. Person and Smart Mortgage filed a lawsuit with full knowledge that the premise of the lawsuit was false. Further, even if such a lawsuit was not premised on false statements, who would file a lawsuit based on the fact that one former employee told another that their employer had "no money." Even if such a statement could theoretically support the basis of a theoretical claim, the obvious lack of any injury demonstrates that this is merely a lawsuit filed in order to harass NEXA and its employees, particularly in light of Defendants' other litigious activities.

**Case Against NEXA Employee Ryan Klaic**

49. Defendants filed yet another lawsuit against one of NEXA's employees, Ryan Klaic, in DuPage County Illinois, on December 14, 2021, captioned *Smart Mortgage Centers, Inc. v Ryan Klaic*, Case No. 2021CH000475 ("Klaic Action").

50. The Complaint in the Klaic Action was similarly fashioned to the Complaint in the Original Will County Action – it was Verified and included a demand again for a TRO.

51. On December 16, 2021, a Motion for a TRO was filed by Defendants.

52. The hearing on the TRO was requested during the Christmas holiday, even though Mr. Klaic had left Smart Mortgage to join NEXA nearly four months prior, on or about August 6, 2021.

53. The Klaic Action was removed to federal court on December 21, 2021, and then remanded on January 25, 2022, by agreement of the parties.

54. From December 21, 2021, to January 25, 2022, Smart Mortgage made no attempt to obtain a ruling on its Motion for a TRO.

55. On January 31, 2022, the Klaic Action was reopened in DuPage County.

56. Shortly after the Klaic Action was remanded to DuPage County, Smart Mortgage

immediately filed a Motion for a TRO.

57. A hearing on the Motion for a TRO was held on February 8, 2022. Smart Mortgage's TRO request was denied for several reasons, including, but not limited to:

   a. The time delay between Smart Mortgage uncovering Klaic's alleged conduct and filing this lawsuit;

   b. Smart Mortgage's complaint was verified, but the verified allegations were conclusory and lacking in specific facts to support a TRO;

   c. Smart Mortgage's TRO motion lacked an affidavit or other factual support above and beyond the conclusory allegations in the complaint;

   d. Smart Mortgage references a 2020 contract with Klaic, but only attached a 2018 contract and wants the court to enforce a 2018 contract without showing what is in the 2020 contract.

58. Smart Mortgage, through their attorney Mr. Person, then asked for expedited discovery and an evidentiary hearing for a preliminary injunction. Those requests were denied at that time.

59. Defendants filed an Amended Complaint in the Klaic Action on April 5, 2022.

60. On April 13, 2022, Defendants moved to compel depositions in the Klaic Action.

61. On April 19, 2022, Mr. Klaic case filed a Motion to Stay Discovery until after his Motion to Dismiss was decided and opposed Smart Mortgage's Motion to Compel Depositions.

62. On May 4, 2022, Mr. Klaic's Motion to Stay Discovery was granted and Smart Mortgage's Motion to Compel Depositions was denied. On the same date, Mr. Klaic's pending Motion to Dismiss was entered and continued for further handling because Smart Mortgage sought to amend its Complaint, again.

63. On May 16, 2022, Defendants filed a Second Amended Complaint in the Klaic Action, this time adding NEXA and NEXA employee Mr. Noe.

64. On June 30, 2022, NEXA and the employee defendants in the Klaic Action filed a Motion to Dismiss the Second Amended Complaint.

65. One day later, on July 1, 2022, Defendants—who allegedly had sufficient

information to support an injunction on essentially Christmas Eve of 2021—then sought leave to obtain pleading stage discovery. Smart Mortgage again contradicted itself, by admitting that discovery was unnecessary at this stage by asserting that it had "undoubtedly" alleged sufficient factual allegations supporting its claims but is nonetheless "seek[ing] additional facts in an abundance of caution to respond to Defendants' [Motion to Dismiss] [.]" (*See* Smart Mortgage's Motion for Limited Discovery in Klaic Action, at pp. 2-3, attached as **Exhibit G**). In fact, Smart Mortgage even admitted that it already "possess[es] more than a minimum level of information indicating that [Defendants] are liable to Smart Mortgage [.]" *Id*.

66. On August 16, 2022, Smart Mortgage's Motion for Limited Discovery was denied after a hearing the same day. The Court determined that the Motion for Limited Discovery was overbroad, citing concerns that the request resembled a potential fishing expedition. (*See* Transcript of August 16, 2022, hearing Transcript, at p. 7, attached as **Exhibit H**) ("You have to articulate what counts, because otherwise this is a fishing expedition [.]")

67. After denial, Defendants sought permission to re-file their Motion for Limited Discovery. Defendants filed such motion again on August 23, 2022.

68. After hearing on September 28, 2022, the Motion for Limited Discovery was denied again.

69. In true fashion, Defendants then requested leave to file a Third Amended Complaint in the Klaic Action to name Mike Kortas, the CEO of NEXA, as a party on October 18, 2022. On November 14, 2022, Defendants filed their Third Amended Complaint over objection, due to the liberal nature of pleadings permitted in Illinois. Defendants' targeting of Mr. Kortas in his personal capacity, based on his role as NEXA's CEO, was intended for no purpose other than to increase NEXA's costs, to cause NEXA and Mr. Kortas reputational harm, and to interfere with NEXA's business operations.

70. Defendants then attempted to serve Mr. Kortas at his home in Arizona several times.

71. Defendants have successfully accomplished their goal of running up legal fees, and embroiling NEXA and its employees in litigation—the defendants in the Klaic Action had filed a Motion to Dismiss in May 2022, and Defendants' tactics of unnecessary pleading discovery had their intended effect: the decision on NEXA's motion to dismiss was substantially delayed for a period of approximately five (5) months.

72. Indeed, after the Court dismissed all the claims contained in the Third Amended Complaint against NEXA and Noe in the matter on May 12, 2023, Defendants filed a Fourth Amended Complaint on June 6, 2023, which Defendants must now respond to for the fifth time in this litigation.

73. Defendants initiated the Klaic Action despite being fully aware that its claims are baseless and its damages are nil. Defendants' conduct in connection with the Klaic Action has included attempting to serve legal process on NEXA's CEO in the State of Arizona.

74. Upon information and belief, Defendants employed at least two different process servers to attempt in-person service at least *six* times on Mr. Kortas, both at NEXA's Maricopa County, AZ office, and Mr. Kortas's Gilbert, AZ home. Through these agents, Defendants subjected NEXA, its principals, its employees (including a receptionist at NEXA's office who was forced to interact with the process server at least three times), and members of Mr. Kortas's family, to harassment, annoyance, embarrassment, and psychological and reputational harm.

**Impact On NEXA And Its Employees' Licenses**

75. Since 2020, NEXA has been in the process of expanding into additional states. It is public knowledge that in the broker community, NEXA is one of the largest mortgage brokers in the nation and has rapidly expanded over the last several years.

76. Smart Mortgage and Mr. Person are aware that as a part of the annual recertification of State Mortgage Broker licenses and in connection with applying for new state licenses—a necessary step for a growing nationwide Mortgage Broker—the broker's litigation will be reviewed by every state before a license is granted or recertified.

77. One of the states in which NEXA was seeking licensure as a Mortgage Broker was Massachusetts. However, the Massachusetts Department of Banking was deeply concerned about the number of lawsuits pending in state and federal court against NEXA and its employees and the level of activity of those lawsuits. Based primarily on the existence of these lawsuits initiated by Smart Mortgage, the amount of time the lawsuits had been pending, and the number of amendments, Massachusetts refused to issue NEXA a license to broker loans in the State.

78. Further, due to the lawsuits, Mr. Noe—who continues to work for NEXA—was denied a mortgage broker license in Texas.

79. Other NEXA employees, including Eileen Pruitt and Mr. Klaic, have also faced challenges having their license recertified.

80. Mr. Person has specifically been advised multiple times of the impacts these lawsuits have had on NEXA and its employees.

81. The denial of licenses—particularly the Massachusetts license—has prevented NEXA from hiring multiple loan officers who have indicated an interest in joining NEXA. This has blocked NEXA from hiring these loan officers and prevented NEXA from initiating operations in Massachusetts.

82. NEXA estimates that it has lost at least $5 million in revenue due to the denial of its license application in Massachusetts – a denial caused directly by the continued pendency of these obviously frivolous lawsuits.

83. At all times relevant herein, Defendants have known the impact that these baseless lawsuits would have on NEXA and its licenses, and yet continued to file these lawsuits taking advantage of the permissive nature of amendments at the pleading stage in Illinois.

84. Further, Smart Mortgage has suffered no ascertainable damages even though they have filed eighteen (18) complaints. On the face of these lawsuits, it is apparent that Smart Mortgage has suffered no legitimate damages. This was confirmed by the denials of several Motions for TROs filed by Smart Mortgage in this set of cases; Smart Mortgage could not prove

any immediate injury, or likelihood of success on the merits.

85. Indeed, the allegations in these lawsuits are devoid of any mention of damages that would justify the litigation. Mr. Person has been asked numerous times for any proof of any damages Smart Mortgage has incurred. Not once has Mr. Person provided any such proof or rational explanation of damages. Despite filing eighteen (18) complaints, Smart Mortgage has failed to point to any financial concrete injury it has experienced that would warrant its litigation rampage.

86. It is apparent that because of the unique relationship between Smart Mortgage and Mr. Person—which upon information and belief permits Smart Mortgage to access and utilize Mr. Person's services for little or no charge—they are able to continue the initiation and maintenance of litigation simply for the purpose of interfering with NEXA's business and causing NEXA and its employees to incur substantial fees and costs defending bogus lawsuits.

## COUNT ONE

**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AND RELATIONS**

**(All Defendants)**

87. NEXA alleges and incorporates by reference all the above allegations contained in Paragraphs 1 through 86 above.

88. NEXA has successfully sought and been granted 60 financial licenses across the United States, District of Columbia, and several territories of the United States, and had a reasonable and valid business expectancy of receiving such licenses in Massachusetts, as it had in almost all other states.

89. Due to Smart Mortgage's own experience in the mortgage brokerage industry, Defendants knew that NEXA, in order to operate as a mortgage broker, would be required to apply for licensure in states where it was not already licensed, and to periodically renew existing licenses.

90. Between February 2020 and the filing date of this Complaint, Defendants have

purposefully filed a total of four (4) lawsuits, eighteen (18) total complaints and amendments, and three (3) requests for pre-filing discovery in lawsuits that allege no meaningful damages, where Defendants know the lawsuits have no merit. These lawsuits have included NEXA, its employees, the CEO personally, and the CEO's wife's company.

91. Defendants have engaged in a blatant misuse of the Court system filing meritless claims and amending ad nauseum, after delaying as long as possible to seek amendment.

92. Defendants have engaged in a conscious plan to file and maintain an active docket of lawsuits against NEXA to disrupt its license applications and renewals as well as the renewals of certain of its loan officers – namely loan officers that previously worked at Smart Mortgage and lawfully left to join NEXA.

93. Defendants' actions are willful and malicious, premised on its resentment that multiple loan officers left Smart Mortgage to lawfully join another company, NEXA. Indeed, it was not until loan officers left Smart Mortgage to join NEXA that these lawsuits were commenced.

94. Judges reviewing Smart Mortgage's actions have found the conduct of Smart Mortgage and its lawyers to be "suspicious, to put it mildly" and noted that Defendants were improperly using the judicial system. A judge further cautioned Defendants that they might exacerbate "existing exposure to sanctions." However, the facts surrounding the several pending cases are not before any single judge, and thus no court has had the opportunity to review Defendants' conduct in totality.

95. In at least one case, NEXA has sworn testimony that demonstrates Smart Mortgage and Mr. Person are pursuing litigation premised on knowingly false information and allegations.

96. Due to Defendants' tortious actions, NEXA was unable to get a license to broker mortgage loans in Massachusetts, preventing it from conducting any business in the State.

97. As a result of Defendants' actions, NEXA has been deprived of over five million dollars ($5,000,000) in revenue.

## **PRAYER FOR RELIEF**

WHEREFORE, NEXA requests that the Court enter the following relief:

      A.    Enter judgment in NEXA's favor and against each Defendant;

      B.    Award NEXA its reasonable attorneys' fees and costs pursuant to all applicable statutes and rules; and

      C.    Award NEXA any other relief that the Court deems just and proper.

Dated July 12, 2023.

**TIFFANY & BOSCO, PA**

/s/ Lance R. Broberg
Lance R. Broberg
Nicholas A. Beatty
2525 E Camelback Rd., 7th Fl.
Ste. 700
Phoenix, AZ 80516-9239
Tel: (602) 255-0103
lrb@tblaw.com
nab@tblaw.com

**MITCHELL SANDLER, LLC**

/s/ Ari Karen
Ari Karen
*Admitted pro hac vice*
1120 20th St., NW
Ste. 725
Washington, DC 20036
Tel: (202) 886-5260
akaren@mitchellsandler.com

*Attorneys for Plaintiff*
*NEXA Mortgage, LLC*