Lance R. Broberg (SBN 024103)
Nicholas A. Beatty (SBN 036230)
**TB TIFFANY & BOSCO**
P.A.
SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
T: (602) 255-6000 | F: (602) 255-0103
E: lrb@tblaw.com | nab@tblaw.com
*Attorneys for Plaintiff NEXA Mortgage, LLC*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NEXA Mortgage, LLC,<br><br>         Plaintiff,<br>vs.<br>Smart Mortgage Centers, Inc,<br><br>         Defendant. | Case No.: 2:23-cv-00410-SPL<br><br>**PLAINTIFF NEXA MORTGAGE LLC'S RULE 55(B)(2) MOTION FOR ENTRY OF DEFAULT JUDGMENT** |

## INTRODUCTION

Plaintiff NEXA Mortgage, LLC ("NEXA" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 55(b)(2), respectfully requests that the Clerk of Court enter judgment by default in favor of NEXA and against Defendant Smart Mortgage Centers, Inc. ("Smart" or "Defendant") in the amount of $5 million, representing NEXA's lost revenue, plus taxable costs in the amount of $1,577.59, and post-judgment interest at the statutory rate provided in 28 U.S.C. § 1961 per annum until paid in full.

NEXA initiated this action in response to Smart's years-long campaign of harassment through frivolous and vexatious litigation. *See* NEXA Mortgage LLC's Second Amended Complaint ("SAC"), Dkt. 75. Smart wholly abandoned its defense in this litigation following the withdrawal of its prior counsel in February 2025, Dkt. 74 at 2–3. Despite multiple warnings from the Court that its continued failure to appear, and

defend would result in default and default judgment, Smart failed to act. Dkts. 61, 69. Only after default was entered – six months –after the Court's warnings began did counsel appear on behalf of Smart.

Despite this recent appearance, there is no just reason for this case to proceed further. As a result of Smart's failure to engage in discovery or defend itself, the Court has already deemed admitted as a matter of law all of NEXA's Second Set of Requests for Admission ("RFAs"),[1] as well as all the facts contained in NEXA's Statement of Facts ("SOF") filed in support of its motion for summary judgment.[2] Dkt. 74 at 1-2, n. 1. These admissions constitute unrebutted evidence, conclusively establish each element of NEXA's sole cause of action—tortious interference with business expectancy—and demonstrate NEXA's entitlement to the full amount of its claimed damages.

This Motion is supported by the following memorandum of points and authorities as well as Plaintiff's Affidavit in Support of Motion for Default Judgment attached hereto as **Exhibit 1**, and Plaintiff's Bill of Costs attached hereto as **Exhibit 2**.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   FACTUAL BACKGROUND

NEXA is a full-service mortgage company headquartered in Arizona and is one of the largest mortgage brokers in the nation. SAC ¶¶ 11, 75, SOF ¶ 22, RFA No. 3. At the

---

[1] NEXA's RFAs were filed in connection with its Motion for Summary Judgment. Dkt. 65-3.
[2] NEXA's SOF was filed in connection with its Motion for Summary Judgment. Dkt. 67.

PLAINTIFF NEXA MORTGAGE LLC'S RULE 55(B)(2) MOTION FOR ENTRY OF DEFAULT JUDGMENT
- 2 -

time of the relevant events, NEXA was licensed in over 60 jurisdictions across the United States and had never previously had a licensing application denied. *See* SOF ¶¶ 22, 23, 34.

In 2021, NEXA sought to expand its operations into Massachusetts, prompted by interest from loan officers who were eager to join NEXA in the state. *See* SOF ¶ 24, RFA No. 4, 7. NEXA's Massachusetts application was held up due to concerns raised by the Massachusetts Department of Banking. SOF ¶ 25, RFA Nos. 9, 19, 22. Specifically, the Department expressed apprehension about the volume and nature of litigation filed by Smart against NEXA. SOF ¶¶ 25-29. Smart launched a coordinated campaign to weaponize the judicial system against NEXA and its employees without legal justification. SOF ¶¶ 1-7, 16, 19-21, 37, 40-59; RFA Nos. 1-2, 9-15, 18-21, 28-31. Smart knew that NEXA applied for a mortgage broker license in Massachusetts in 2021, and that the licensing authority would review pending litigation involving NEXA before making a licensing decision. RFA Nos. 7, 8. To defeat NEXA's expansion, Smart filed 4 different lawsuits spanning 18 different complaints against NEXA. SOF ¶¶ 1-2; RFA Nos. 24-26. Smart filed these lawsuits despite knowing that its claims lacked any legal or factual basis. RFA No. 28. Courts have either found or expressed concern that Smart's litigation was filed for an improper purpose or in bad faith. SOF ¶¶ 12, 17; RFA Nos. 25, 29.

NEXA was ultimately informed by the Chief Director of Licensing in Massachusetts that its application would be formally denied unless voluntarily withdrawn. SOF ¶¶ 28, 29. NEXA was also advised that a formal denial would negatively impact its ability to obtain licenses in other jurisdictions due to mandatory reporting requirements. SOF ¶ 28. Heeding this advice, NEXA voluntarily withdrew its applications after more

than six months in processing. SOF ¶ 29. Because some of the underlying litigations are still on-going due to persistent delay tactics by Smart, NEXA has been unable to re-apply for a license in Massachusetts. SOF ¶ 30. Smart's misuse of the legal process directly prevented NEXA from being able to secure a mortgage broker license in Massachusetts, resulting in financial harm. SOF ¶¶ 25-33, 38-40, 53-55; RFA Nos. 22-23.

NEXA initiated this action to hold Smart accountable and to clear its name. As discovery began to ramp up, Smart's counsel withdrew, and Smart failed to comply with multiple court orders or participate in discovery. On February 4, 2025, the Court granted Defense counsel's motion to withdraw and expressly warned Smart that "if it does not obtain new counsel [] it will be subject to having default and default judgment entered against it." Dkt. 61 at 1. When no new counsel appeared, the Court reiterated this warning on April 10, 2025. Dkt. 69 at 2. On July 22, 2025, the Court directed NEXA to file an application for entry of default, and default was entered on July 30, 2025. Dkt. 74 at 3; Dkt. 79. The Court determined that Smart had "abandoned" the litigation. Dkt. 74.

As a direct consequence of Smart's inaction, the Court has held that Smart admitted all of the facts in NEXA's RFAs as well as the material facts submitted in connection with NEXA's Motion for Summary Judgment. Dkt. 74 at 1-2, n. 1. These admissions conclusively establish NEXA's claims, including its entitlement to damages.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 55(b)(2) provides:

> If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the

application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977).

In addition, given the Court's prior ruling that NEXA's SOF and RFAs are conclusively deemed admitted in this case, the Court need not only rely on the Complaint, but may also properly rely on the admitted facts in this case. Dkt. 74 at 1-2, n. 1; *Oakley, Inc. v. Moda Collection, LLC*, No. 8:16-CV-160-JLS-JCGX, 2016 WL 7495837, at *2 (C.D. Cal. Sept. 28, 2016) (considering unanswered requests for admission in evaluating motion for default judgment); *Wright v. E-Sys.*, LLC, No. 3:12-CV-4715-K-BK, 2016 WL 7802996, at *3 (N.D. Tex. Dec. 20, 2016) (same).

### III.   LEGAL ANALYSIS

The Ninth Circuit has identified the following seven factors that can be considered by courts in deciding whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021). Each of these factors weigh heavily in favor of granting default judgment in favor of NEXA.

### A. Factor 1: NEXA Will be Prejudiced if Judgment is Not Granted.

NEXA will be prejudiced if judgment is not granted because it would be denied the right to judicial resolution and there is no other recourse to obtain relief from Smart's conduct. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). If the Court denies judgment, NEXA will be unable to clear its name to Massachusetts and other regulators of the illegitimate and frivolous litigations, which Smart cannot refute. RFA No. 19 (lawsuits were "initiated for the sole purpose of interfering with NEXA's ongoing business endeavors[.]"). It is unsurprising that as soon as NEXA obtained default, Smart—the very next day—awoke from its 6-month hiatus to prevent final judgment.

In addition, the monetary recourse available to NEXA is another form of prejudice. In one of the cases Smart initiated without proof—*Smart v. Klaic, et al.* (filed in DuPage County, Illinois)—Smart has already failed to satisfy a modest $9,450 award due August 18, 2025.[3] Moreover, Smart represented to a federal court that it could not pay a $6,816 fee award because its "bank account is overdrawn."[4] NEXA will be severely prejudiced if Smart is able to purposefully drain down its bank account to avoid paying any judgment.

---

[3] The order awarding fees is located at Dkt. 83-4.
[4] Smart made this representation in Case No. 1:21−cv−01668, pending in the Northern District of Illinois, on May 9, 2025. A copy of the order was already filed in this case. Dkt. 83-2.

Prejudice is also present when a defendant fails to retain counsel and to properly defend itself in the matter. *PHL Variable Ins. Co. v. Crescent Fin. & Ins. Agency, Inc.*, No 216CV01307CASAJWX, 2018 WL 1577709, at *3 (C.D. Cal. Mar. 26, 2018); *Giumarra Bros. Fruit Co. v. United Distribs.*, No. CV1105438SJORZX, 2015 WL 13916270, at *3 (C.D. Cal. June 30, 2015). Smart failed to retain counsel from February 4, 2025, until July 31, 2025—nearly 6 months. Smart's failure to obtain counsel was not innocent; Smart was reminded on February 4, April 10, and July 25, 2025, of the consequences, including specifically default and/or default judgment, of failing to obtain counsel. Smart's post-default retention of counsel cannot cure the prejudice. NEXA has been unable to prosecute this action for 6 months, and Smart has failed to respond to Interrogatories, Requests for Production, or sit for a 30(b)(6) deposition. The multiple forms of tangible prejudice to NEXA cannot be undone.

**B. Factors 2 and 3: The Most Important Factors Weigh in Favor of Default Judgment. NEXA Has Stated a Meritorious Claim for Relief and the Undisputed Evidence Establishes NEXA's Claim.**

"The Ninth Circuit has suggested that [these] two *Eitel* factor[s]—involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint—'require that plaintiff's allegations state a claim on which they may recover.'" *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001) (citations omitted); *PepsiCo*, 238 F. Supp. 2d at 1175. Courts often consider the second and third factors to be the most important. *Joe Hand Promotions Inc. v. Sand Bar Enters. LLC*, No. CV-24-00436-PHX-SPL, 2024 WL 4769777, at *3 (D. Ariz. Nov. 12, 2024).

NEXA asserts a single claim for tortious interference with business expectancy under Arizona law. *See* SAC. NEXA must prove: (a) the existence of a valid business expectancy; (b) the defendant's knowledge of the expectancy; (c) the defendant's intentional and improper interference with that expectancy; and (d) resultant damage to the plaintiff. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 (Ariz. 2002); *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012). Here, NEXA's Complaint sufficiently pleads all four elements, and the factual record—now deemed admitted by the Court—conclusively establishes each element. Smart's misuse of litigation directly interfered with NEXA's valid business expectancy in obtaining licensure in Massachusetts, an expectancy Smart knew of and intentionally sought to derail. As a result, NEXA suffered quantifiable financial harm. Accordingly, these critical *Eitel* factors weigh strongly in favor of entering default judgment.

    1. *NEXA Had a Valid Business Expectancy in Obtaining a Massachusetts Mortgage Broker License.*

At the time of Smart's interference, NEXA had already been granted licenses in over 60 jurisdictions across the United States and had a reasonable and valid business expectancy of receiving such licenses in Massachusetts as it had done in all other states it sought licensing in. SAC ¶¶ 77, 88; SOF ¶¶ 22, 23, 34. In and around 2020-2021, NEXA pursued expansion of its operations into Massachusetts by applying for a license there, based on inquiries from loan officers in Massachusetts who were interested in joining

NEXA and company expectations that it would be a profitable area for expansion. SAC ¶¶ 75, 77; SOF ¶ 24; RFA Nos. 4, 7.

2. *Smart Had Actual Knowledge of NEXA's Licensing Efforts.*

Smart was well aware of NEXA's operations, expansion efforts, and licensing applications, including specifically its application in Massachusetts. SAC ¶¶ 75, 88; RFA Nos. 4, 7. Smart has specifically admitted that the lawsuits "were initiated for the sole purpose of interfering with NEXA's ongoing business endeavors including, but not limited to, obtaining mortgage broker licensure in Massachusetts." *See* SAC ¶¶ 8, 40; RFA Nos. 18-19. Smart knew that NEXA applied for a mortgage broker license in Massachusetts and that the licensing authority would review pending litigation involving NEXA before making a licensing decision. RFA Nos. 7, 8.

3. *Smart Intentionally and Improperly Interfered with NEXA's Expectancy.*

Since February 2020, Smart purposefully filed a total of 4 lawsuits, 18 total complaints and amendments, and 3 requests for pre-filing discovery in lawsuits that allege no meaningful damages and have no merit. SAC ¶ 90; SOF ¶ 1, RFA Nos. 24-27. These lawsuits have included NEXA, its employees, the CEO personally, and the CEO's wife's company. *Id*. Smart has engaged in blatant misuse of the Court system by filing meritless claims, and amending ad nauseum, after delaying each amendment. SAC. ¶ 91.

Since 2020, Smart admits it engaged in activity directed at NEXA, with the specific purpose of harming and interfering with NEXA's business. SOF ¶ 20; RFA No. 1. It also admits that it filed lawsuits against NEXA knowing that such litigation could negatively impact its ability to obtain or retain mortgage broker licenses. SOF ¶¶ 21, 54, 55; RFA

Nos. 1, 2, 9, 21. Most egregiously, Smart admits the lawsuits were not filed to remedy any actual injury and instead, were filed solely to interfere with NEXA's ongoing business, including its license in Massachusetts. SOF ¶ 52; RFA No.18-19. Smart was conscious of the impact its baseless lawsuits would have on NEXA and its licensing efforts, yet it continued to pursue them. SAC. ¶ 83; SOF ¶¶ 21, 54, 55, RFA Nos. 1, 2, 9, 21. Smart was aware that regulators, including Massachusetts, consider pending litigation in evaluating license applications and renewals. SAC. ¶ 76; SOF ¶¶ 36, 39; RFA Nos. 7, 8.

    *4. Smart's Interference Directly Caused NEXA Economic Harm.*

As a direct result of Smart's conduct, NEXA was unable to obtain a Massachusetts mortgage broker license. NEXA was ultimately forced to withdraw its application to avoid a formal denial—an outcome prompted by the Massachusetts Department of Banking's concerns about Smart's longstanding and baseless litigation campaign. SAC ¶ 96; SOF ¶¶ 28, 29. This effectively barred NEXA from conducting any business in Massachusetts. *See* SOF ¶ 33. NEXA was also prevented from hiring multiple loan officers who indicated an interest in joining NEXA and from opening in Massachusetts. SAC ¶¶ 81, 97; SOF ¶ 32. In the Complaint, NEXA alleged that it suffered $5 million in lost revenue. SAC ¶¶ 81, 97. That figure was later confirmed by Smart, who admits that NEXA incurred $5 million in damages "as a direct result" of Smart's conduct. RFA Nos. 22-23; SOF ¶ 33.

Accordingly, NEXA states a meritorious claim for tortious interference with business expectancy. The SAC sufficiently states NEXA's claim, the facts underlying those claims and NEXA's measure of damages. *Eitel* factors two and three are therefore satisfied and weigh in favor of granting NEXA's judgment by default.

### C. Factor 4: The Monetary Judgment Requested by NEXA is Reasonable.

"The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at * 6 (D. Ariz. Nov. 27, 2019) (citations omitted). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier Inc.*, No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). Once it has been established that "the fact of lost profits was reasonably certain" a "reasonable basis for determining the amount of the probable profits lost is acceptable." *True Freight Logistics LLC v. Glob. Tranz Enters. Inc.*, No. CV-18-01472-PHX-JGZ, 2020 WL 8839728, at *2 (D. Ariz. Apr. 30, 2020).

A "reasonable basis" for determining lost profits exists when Plaintiff provides evidence supporting their losses. *See id.* (granting a default judgment and awarding plaintiff lost profits in the amount of $1,016,637.88 because their damages calculation was supported by evidence); *Gilmore v. Cohen*, 386 P.2d 81, 82 (1963) (the plaintiff's evidence in lost profits cases need only provide "some basis for estimating his loss."). "Evidence" is not a rigid standard, but rather "[t]he Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *ICU Indus. Inc. v. Copper State Glass & Screen LLC*, No. CV-23-00298-TUC-AMM, 2024 WL 2892331, at *6 (D. Ariz. May 7, 2024) (citations omitted). Evidence includes unanswered requests for admission which have been deemed admitted when deciding an award for damages. *Oakley*, 2016 WL 7495837, at *2 (awarding

damages in motion for default based on statements in unanswered request for admissions); *Wright*, 2016 WL 7802996, at *3 (allowing the use of unanswered requests for admission as a basis for the entry of a default judgment on the issue of damages).

NEXA's requested monetary judgment arises out of the lost revenue incurred as a result of Smart's interference. NEXA has already shown its "entitlement to lost profits" because Smart directly admitted that the lawsuits it filed prevented NEXA from obtaining licensure to broker mortgage loans in Massachusetts. RFA No. 22. *See True Freight Logistics LLC*, 2020 WL 8839728, at *2. On the issue of damages, Smart has admitted NEXA incurred damages of $5 million as a direct result of not being able to obtain licensure to broker mortgage loans in Massachusetts. RFA No. 23. NEXA's figures are derived from the following facts (1) NEXA was unable to open any operations in Massachusetts and (2) NEXA was prevented from hiring multiple loan officers who indicated an interest in joining NEXA. SAC ¶¶ 81-82; SOF ¶ 32. Therefore, NEXA has lost all of the associated revenue associated with operations in an additional state, including the revenue of loan officers who already expressed interest in joining NEXA.

Smart's admissions as to causation and the amount of damages alone are dispositive of this factor. Indeed, once an RFA has been deemed admitted, "even by default, the court may not consider evidence that is inconsistent with the admission." *Am. Gen. Life & Accident Ins. Co. v. Findley*, No. CV 12–01753 MMM (PSWx), 2013 WL 1120662, at *2 (C.D. Cal. Mar. 15, 2013); *see also 999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded."); *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465

F.3d 1102, 1112 (9th Cir. 2006) (The court and "parties are bound by" admitted RFAs "which cannot be ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."). Numerous cases have held that a failure to respond to requests for admission conclusively establishes damages—even in the millions of dollars—at summary judgment and at trial. *Thompson v. Inman*, No. 6:22-cv-01665-MTK, 2024 WL 5112099, at *2-3 (D. Or. Dec. 13, 2024) (unanswered RFAs conclusively established plaintiff suffered $2.2 million in damages at summary judgment and court entered judgment for that amount); *Kaminska v. Lai*, No. CV 19-1577-MCS (JEM), 2021 WL 536511, at *10-11 (C.D. Cal. Jan. 19, 2021) (unanswered RFAs conclusively established no damages). Thus, any objections to the amount, the basis for calculation, or contrary evidence would be properly excluded by the Court. Accordingly, factor four weighs in favor of default.

**D. Factor 5: There Is No Possibility of Any Dispute Regarding Material Facts.**

Default has been entered against Smart and, as a result, all factual allegations averred in NEXA's Complaint are deemed admitted and true. *See* Dkt. 79; *Geddes*, 559 F.2d at 560 ("[T]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citations omitted). In addition, Smart has admitted all of the material facts set forth in NEXA's SOF and contained in NEXA's RFAs. These admissions conclusively establish each and every element of NEXA's tortious interference claim. *See* Section III(B) *supra*.

Moreover, as discussed in Section III(C) above, facts admitted through RFAs are binding, and the Court is prohibited from considering any evidence "that is inconsistent

with the admission." *Findley*, 2013 WL 1120662, at *2; *see 999*, 776 F.2d at 869-70 (9th Cir. 1985). Given the procedural posture of the case, there is no possibility of any genuine dispute as to any material fact. *Bd. of Trs. of the Plumbers & Pipefitters Union Loc. 525 Health & Welfare Tr. & Plan v. Sec. Plumbing & Air Conditioning*, No. 214CV01027APGPAL, 2017 WL 923913, at *2 (D. Nev. Mar. 8, 2017) ("There is no possibility of disputed facts because the defaulting defendants failed to respond to the requests for admissions and thus the admissions were deemed admitted as a matter of law. Additionally, the defaulting defendants could have responded to the plaintiffs' summary judgment motion but did not.") (internal citations omitted). Accordingly, the fifth *Eitel* factor weighs heavily in favor of entering default judgment against Smart.

**E.  Factor 6: Smart's Default Did Not Result from Excusable Neglect.**

Smart's default was the opposite of excusable neglect. It was conscious, deliberate, and spanned nearly six months of inactivity from February to late July 2025. *See Origami Owl, LLC v. Mayo*, No. CV15-00110-PHX-DGC, 2016 WL 1408302, at *2 (D. Ariz. Apr. 11, 2016) (failing to obtain counsel two months after the Court's deadline was "not due to excusable neglect.") (internal quotations omitted). "[T]he court may appropriately enter a default judgment against a defendant entity when it has failed to retain counsel to represent it as directed by the court." *Trs. of Plumbers & Pipefitters Union Loc. 525 Health & Welfare Tr. & Plan v. Now Servs. of Nev., LLC*, No. 217CV01734JADCWH, 2019 WL 2178611, at *2 (D. Nev. May 20, 2019) (finding the sixth *Eitel* factor weighed in favor of granting a default judgment where the Plaintiff failed to retain counsel and participate in the action); *Adobe Sys. Inc. v. Kern*, No. C 09-1076 CW (JL), 2009 WL 5218005, at *6

(N.D. Cal. Nov. 24, 2009) ("Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect.").

Smart had many opportunities to be an active participant in this matter and chose not to do so. Smart's inaction was neither excusable nor negligent—it was conscious and deliberate. Smart's representatives, who were able to access the Court system and file a motion without the assistance of counsel – have received the filings in this case and failed to respond to NEXA's motion for summary judgment, ignored multiple discovery requests (including RFAs), and refused to obtain counsel within the deadlines set by the Court. And Smart was aware of the consequences when the Court provided its initial warning in February 2025. Smart was well aware of that order because it filed an unauthorized motion for continuance shortly thereafter. As such, Smart's default is not excusable neglect.

### F. Factor 7: Public Policy Weighs in Favor of Granting Judgment.

"The seventh *Eitel* factor, generally disfavoring default judgment, considers the policy that cases should be decided on their merits[… h]owever, the mere existence of Rule 55(b) 'indicates that this preference, standing alone, is not dispositive.'" *Frenchans LLC v. Vestige LLC*, No. CV-22-00241-PHX-JZB, 2023 WL 3951172, at *6 (D. Ariz. Apr. 17, 2023). Where "the Court has provided multiple opportunities for Defendants to appear and defend themselves, and Defendants have repeatedly declined those opportunities […] a decision on the merits will not be possible. *Tolano*, 2019 WL 6464748 at *6.

Smart failed to appear, obtain counsel, or participate in the litigation after being explicitly warned and given "multiple opportunities." *Tolano*, 2019 WL 6464748, at *6. Smart's decision to "decline[] those opportunities" makes a decision on the merits

impossible. *Id.* Indeed, Smart's conclusively admitted facts also make a decision on the merits impossible given that the Court cannot accept any evidence contrary to the RFAs. *See* Section III(C) *supra*. Accordingly, this factor weighs in favor of default judgment.

For the foregoing reasons, all seven *Eitel* factors all weigh in favor of granting judgment in favor of NEXA. NEXA therefore requests that this Court grant default judgment and award NEXA its requested damages and costs as set forth below.

## IV. NO HEARING IS NEEDED TO DETERMINE PLAINTIFF'S DAMAGES AND COSTS.

A default judgment is proper without a hearing if the amount claimed "is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). Rule 54(c) limits damages that can be awarded by default judgment to the amount demanded in the pleadings. NEXA requested $5 million dollars in its pleadings, and during the pendency of the litigation, obtained an admission that NEXA indeed suffered that exact amount of damages "as a direct result of not being able to obtain licensure to broker mortgage loans in Massachusetts." RFA No. 23. Additionally, NEXA's damages calculation is based on the anticipated profits from hiring loan officers and establishing operations in Massachusetts—facts which were also already conclusively admitted in response to summary judgment. SOF ¶¶ 6-7, 24-26.

The Court has discretion whether to hold a hearing prior to granting a default judgment. Rule 55(b)(2); *Valenzuela v. Regency Theaters*, No. CV-18-2013-PHX-DGC, 2019 U.S. Dist. LEXIS 107846, at *2 (D. Ariz. June 27, 2019) ("By its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the

district court.") (citations omitted) (alterations in original). However, a hearing is generally not needed when the amount requested is a sum certain or can be made certain by calculation. *See* Rule 55(b); *Davis*, 650 F.2d at 1161.

Here, a hearing is not necessary to enter default judgment because NEXA's damages are for a sum certain that has already been confirmed by Smart and made certain by computation. *Valenzuela*, 2019 U.S. Dist. LEXIS 107846, at *3 ("even in cases without a 'sum certain,' a formal court hearing is not required[.]") (citations omitted) (alterations in original). There is substantial case law finding that unanswered requests for admission conclusively establish the damages in the case. *Thompson*, 2024 WL 5112099, at *2-3 (entering judgment for $2.2 million at summary judgment based on unanswered RFAs); *Kaminska*, 2021 WL 536511, at *10-11 (unanswered RFAs conclusively established no damages). NEXA is requesting a monetary judgment in the amount of $5,000,000.00. Finally, NEXA requests interest at the statutory rate pursuant to 28 U.S.C. § 1961, which is based on the 1-year Treasury constant maturities rate published by the Federal Reserve System, for the calendar week preceding judgment.

Therefore, NEXA requests that judgment be entered without hearing against Smart for lost profit damages in the amount of $5,000,000.00, in addition to taxable costs in the amount of $1,577.59 and post-judgment interest on the amount at the rate provided in 28 U.S.C. § 1961 per annum from the date of judgment until paid in full.

## **CONCLUSION**

For the foregoing reasons, NEXA requests that default judgment be entered against Smart in the form submitted contemporaneous herewith.

RESPECTFULLY SUBMITTED this 4th day of September, 2025.

By: /s/ Alexander Rogosa

Alexander Rogosa (*pro hac vice*)
Ari Karen (*pro hac vice*)
**MITCHELL SANDLER PLLC**
2020 K Street NW, Suite 760
Washington, DC 20006
Telephone: (202) 886-5265
arogosa@mitchellsandler.com
akaren@mitchellsandler.com

Lance R. Broberg (SBN 024103)
Nicholas A. Beatty (SBN 036230)

TB TIFFANY & BOSCO P.A.
SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
T: (602) 255-6000 | F: (602) 255-0103
E: lrb@tblaw.com | nab@tblaw.com

*Attorneys for Plaintiff NEXA Mortgage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registrants.

/s/ Alexander Rogosa

PLAINTIFF NEXA MORTGAGE LLC'S RULE 55(B)(2) MOTION FOR ENTRY OF DEFAULT JUDGMENT
- 19 -