**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Nexa Mortgage, LLC,

              Plaintiff,

vs.

Smart Mortgage Centers Incorporated, et al.,

              Defendants.

No.  CV-23-00410-PHX-SPL

**ORDER**

There are three pending Motions before the Court: (1) Defendant Smart Mortgage Centers Incorporated's Motion to Set Aside Entry of Default (Doc. 82); (2) Plaintiff Nexa Mortgage LLC's Motion for Default Judgment (Doc. 86); and (3) Defendant's Motion to Withdraw Deemed Admissions to Plaintiff's Second Set of Requests for Admission (Doc. 89). Having considered the parties' briefing (Docs. 82–84), the Court now rules as follows.[1]

## I.    BACKGROUND

This action arises from a series of lawsuits between Plaintiff, Defendant, and Defendant's former employees. (Doc. 75). Plaintiff is a full-service mortgage company that offers mortgage programs and services, and Defendant is a corporation that provides mortgage banking services. (*Id.* at 1–3, ¶¶ 1–2, 11–12). Before the events giving rise to this

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

action took place, three of Defendant's employees (the "Employees") left Defendant and joined Plaintiff.[2] (*Id.* at 3–4, 9, ¶¶ 19, 52). Defendant filed the first lawsuit against Plaintiff and two of the Employees in 2020, alleging Plaintiff aided and abetted the Employees in "taking the names of certain customers [the Employees] worked with when [the Employees] terminated their employment with [Defendant]." (*Id.*). Between 2020 and 2021, Defendant filed a total of four lawsuits against Plaintiff. (*Id.* at 3–4, 8–9, ¶¶ 19, 22, 43, 49; *see* Doc. 75-1 at 2–16).

In the midst of those proceedings, Plaintiff sought licensure in Massachusetts in an effort to expand its mortgage banking services. (Doc 75at 12–13, ¶¶ 75–77). Plaintiff alleges that the Massachusetts Department of Banking, however, was "unwilling" to issue Plaintiff a broker license given the number of pending lawsuits against Plaintiff and the Employees. (*Id.* at 12–13, ¶ 77). To avoid their licensure application being formally denied, which would require Plaintiff to report the denial to other jurisdictions and preclude Plaintiff from reapplying, Plaintiff withdrew the application. (*Id.*). Plaintiff alleges the withdrawal of its application has prevented Plaintiff from initiating operations in Massachusetts and "hiring multiple loan officers who have indicated an interest in joining [Plaintiff]." (*Id.* at ¶ 81). Plaintiff alleges "that it has lost at least $5 million in revenue due to the inability to obtain its license in Massachusetts." (*Id.* at ¶ 82).

Plaintiff filed a complaint against Defendant in Maricopa County Superior Court for tortious interference with business expectancy. (Doc. 1-6 at 2–16). Defendant subsequently removed the case to this Court. (Doc. 1). On January 14, 2025, Defendant's counsel moved to withdraw. (Doc. 58). The Court granted the motion to withdraw, advising Defendant that, as an entity, it could not appear *pro se* and would be subject to default if it did not obtain new counsel. (Doc. 61 at 1).

---

[2] Other than their names, the only information Plaintiff provides about the Employees is that they previously worked for Defendant. (Doc. 75 at 3–4, ¶ 19).

2

On April 4, 2025, Plaintiff filed a Motion for Summary Judgment. (Doc. 66). In response, Defendant, via Defendant's President Richard Birk's son, Brian Birk, filed a Motion for Extension of Time to Respond "in anticipation of retaining legal counsel." (Doc. 69 at 1). The Court struck Defendant's motion and reminded Defendant that it could not file documents or appear *pro se*. (Doc. 69 at 1–2). Nonetheless, the Court granted Defendant an additional thirty days to obtain counsel and respond to Plaintiff's Motion for Summary Judgment. (*Id.* at 2).

On May 19, 2025, Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (Doc. 72). Defendant did not respond to the motion for summary judgment or the motion for leave to file. The Court granted the motion for leave to file but declined to rule on the merits of the motion for summary judgment given Defendant's absence. (Doc. 74 at 1–2). To address Defendant's continued nonappearance, the Court directed Plaintiff "to either file an Application for Entry of Default . . . or file a status report apprising this Court of how it intends to proceed with this matter." (*Id.* at 2–3).[3]

On July 23, 2025, Plaintiff filed the SAC. (Doc. 75). Pursuant to the Court's Order, Plaintiff also filed an Application for Entry of Default against Defendant. (Doc. 78). The Clerk of Court entered default against Defendant on July 30, 2025. (Doc. 79). On July 31, 2025, Defendant's counsel filed a notice of appearance. (Doc. 80). Two weeks later, on August 14, 2025, Defendant filed a Motion to Set Aside Entry of Default. (Doc. 82). On September 4, 2025, Plaintiff filed a Motion for Default Judgment. (Doc. 86). Defendant filed an answer to the SAC the same day. (Doc. 85). Defendant later filed a Motion to Withdraw Deemed Admissions to Plaintiff's Second Set of Requests for Admission. (Doc. 89).

---

[3] In this Order, the Court also acknowledged that Defendant failed to respond to Plaintiff's RFAs and explained that the facts (the "Admissions") would be considered admitted as a matter of law. (Doc. 74 at 1–2, n.1).

3

## II.   DISCUSSION

The Court will begin by addressing Defendant's Motion to Set Aside Entry of Default because, if that motion were granted, Plaintiff's Motion for Default Judgment would fail. *See, e.g.*, *Troy-CSL Lighting, Inc. v. Bath Kitchen Decor, LLC*, No. CV 13-8834 GAF (VBKx), 2014 WL 12911165, at *5 (C.D. Cal. Aug. 28, 2014) ("In light of the Court's decision to set aside the entry of default against Defendants, Plaintiff's application for default judgment must be denied. . . . Plaintiff can no longer meet Rule 55(b)'s procedural requirements for default judgment.").

### A.  Motion to Set Aside Entry of Default

#### i.   Legal Standard

Rule 55(c) of the Federal Rules of Civil Procedure ("FRCP") states "[t]he court may set aside an entry of default for good cause." In determining whether good cause exists, courts in the Ninth Circuit consider the three *Falk* factors: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has no meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also Apache Nitrogen Prods., Inc. v. Harbor Ins. Co.*, 145 F.R.D. 674, 681 (D. Ariz. 1993) (alternatively stating the third factor as "whether good cause exists for the party's default."); *Amazon.com Inc. v. Elly Infotech, LLC*, 2024 WL 961233, 2024 WL 961233, at *1 (D. Ariz. Mar. 6, 2024) (applying the *Falk* factors to a motion to set aside default). If any one of these factors is true, the court has sufficient reason to refuse to set aside the default. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*"). However, the court's discretion under Rule 55(c) is "especially broad," and any doubt should be resolved "in favor of setting aside the entry of default and deciding the case on its merits." *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (citation omitted). "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463. "The movant 'bears the burden of proving the existence of a justification' to set aside the default." *Echols v. SafeRent Sols. LLC*, No. CV-22-00788-

PHX-DWL, 2022 WL 4970312, at *2 (D. Ariz. Oct. 4, 2022) (quoting *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988)).

### ii. Analysis

Defendant argues the *Falk* factors support its Motion because Plaintiff will not suffer any prejudice if the Court sets aside the default, (Doc. 82 at 4), and its conduct does not indicate an intent to take advantage of Plaintiff, manipulate the legal process, or otherwise interfere with judicial decision-making. (*Id.* at 5–6). Defendant also asserts it has several meritorious defenses. (*Id.* at 6–7). Plaintiff, on the other hand, argues the *Falk* factors weigh against setting aside the entry of default as Defendant's "Motion is more focused on justifying Defendant['s] [conduct] than it is on meaningfully addressing why default should be set aside." (Doc. 83 at 7 (citation omitted)). The Court will address each of the *Falk* factors in turn.

### a. Prejudice

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[A] plaintiff is prejudiced if his ability to pursue his claim has been 'hindered' due to delay resulting in such tangible harms as the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Echols*, 2022 WL 4970312, at *3 (citing *TCI Grp. Life Ins. Plan*, 244 F.3d at 701).

Here, vacating the default will not burden Plaintiff in its ability to pursue its claims. Plaintiff argues reopening discovery after a six-month delay would "reward" Defendant, (Doc. 83 at 16), but "merely being forced to litigate on the merits cannot be considered prejudicial" because "vacating the default judgment merely restores the parties to an even footing in the litigation," *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. Likewise, the Court is unconvinced that setting aside the default will enable Defendant to "dissipate assets and evade enforcement of judgment." (Doc. 83 at 16). Plaintiff's allegations are speculatory, and Plaintiff has not presented sufficient facts or evidence to support the assertion that

Defendant's failure to pay the outstanding judgments is in furtherance of fraudulent or collusive activity. There is no reason to believe that litigating this case on the merits will result in any loss of evidence, increased difficulties of discovery, or any other tangible harm to Plaintiff. *See Echols*, 2022 WL 4970312, at \*3. Therefore, Plaintiff will not be prejudiced if the entry of default is set aside by the Court.

### b. Meritorious Defenses

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *Mesle*, 615 F.3d at 1094 (citation omitted). The burden is not extraordinarily heavy. *Id.* All Defendant must do is "allege sufficient facts that, if true, would constitute a defense—the truth of those facts is the subject of the later litigation." *Echols*, 2022 WL 4970312, at \*3 (internal quotation marks omitted) (citing *Mesle*, 615 F.3d at 1094).

Defendant asserts that it did not intentionally attempt to interfere with Plaintiff's business because it did not know that Plaintiff intended to seek a broker license in Massachusetts. (Doc. 82 at 7–8). Defendant further argues that it was trying to protect its business and employees as it believed that Plaintiff was engaged in wrongful conduct. (*Id.* at 8). If true, Defendant alleges sufficient facts to constitute a defense.[4] The Court finds these assertions sufficient to meet Defendant's minimal burden for this factor.

---

[4] To the extent Plaintiff argues Defendant's asserted defenses are contradicted by the Admissions, (Doc. 83 at 12–15), the Court only considers whether the allegations in the Motion assert a meritorious defense. *See Worldwide Assocs., Inc. v. Golden Mark Maint. Ltd.*, No. CIV.A. 99-5889, 2000 WL 795894, at \*2 n.3 (E.D. Pa. June 9, 2000) ("Where the defendant has not answered the complaint, the allegations of its motion to vacate the default judgment determine whether defendant has asserted a meritorious defense."); *Sosa v. Bridge Store, Inc.*, Nos. 1:10–cv–01494–OWW–SKO, 1:10–cv–01577–OWW–SKO, 2011 WL 1332049, at \*3 (E.D. Cal. Apr. 6, 2011) (stating a defendant does not have "to prove their contentions to establish a meritorious defense," but simply must show "that a meritorious defense [is] presented in [their] motion to set aside."); *see also Beitman v. Correct Clear Sols.*, No. CV-17-03829-PHX-JAT (BSB), 2018 WL 11280509, at \*2 (D. Ariz. Nov. 30, 2018) (concluding the meritorious defense factor was satisfied because the motion to set aside asserted "numerous affirmative defenses, which [we]re accompanied by sufficient, specific facts."); *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2017 WL

### c.  Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (alteration in original) (citation omitted). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer." *Id.* Rather, "the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (internal quotation marks and citation omitted). A defendant is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.*

Despite the Court's repeated warnings, Defendant failed to retain counsel for nearly six months. Defendant admits it failed to timely comply with the Court's orders but insists its conduct was excusable because its corporate representative Brian Birk was unfamiliar with the legal process. (Doc. 82 at 5–6). Defendant likens its situation to that of the defendants in *TCI Group* and *Falk*. (Doc. 84 at 3–4). In *TCI Group*, the court determined the defendant's conduct was excusable given the defendant's mental state and her averment that she "did not understand the legal significance of the legal papers." *TCI Grp. Life Ins. Plan*, 244 F.3d at 699, n.7. In *Falk*, the defendant's conduct was excusable because the defendant did not learn of the judgment against her until after she returned from Korea, and she had difficulty obtaining assistance from the local legal aid office. *Falk*, 739 F.2d at 464.

---

11440760, at *2 (D. Ariz. Aug. 7, 2017) (finding that prior proceedings did not impact whether the defendants "presented specific allegations that could constitute a defense" in their motion to set aside entry of default).

Here, however, it is evident that Defendant and its corporate representative understood the legal process. Two months after Defendant's counsel withdrew, Mr. Birk filed a motion *pro se* "in an effort to advise the Court of the current status of matters." (Doc. 84 at 4; *see also* Doc. 83 at 9–10; Doc. 69 at 1). The Court is unconvinced that Defendant's conduct was excusable as it seems unlikely that a party who is unfamiliar with the legal process would understand how to file a motion with the Court or adhere to other legal requirements. *See Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986) (affirming the district court's finding that the defendants' failure to answer was culpable because the defendants' motions to extend time to answer indicated they understood the legal process and their obligations). But that is neither here nor there as Mr. Birk's lack of legal knowledge is not determinative of culpability. *TCI Grp. Life Ins. Plan*, 244 F.3d at 699, n.6 ("We have not held, however, nor do we hold here, that legal sophistication or lack thereof is determinative of whether the culpability standard is met.").

Defendant's repeated failure to comply with the Court's orders, however, is determinative of culpability. "The Ninth Circuit has characterized repeated disregard for court orders as bad faith." *Doe v. Oesterblad*, No. CV-13-01300-PHX-SRB, 2014 WL 12641950, at *2 (D. Ariz. Oct. 15, 2014); *see Estrada v. Speno & Cohen*, 244 F.3d 1050, 1060 (9th Cir. 2001) ("Parties may not wilfully, repeatedly, and persistently disobey court orders . . . ."). The Court explicitly and repeatedly warned Defendant that it could not participate in this litigation without counsel. (Doc. 61 at 1; Doc. 69 at 2; Doc. 74 at 1–2). Defendant knew it needed to obtain counsel as evidenced by its stricken motion for continuance. (*See* Doc. 69 at 1–2). And yet, it was not until after the Clerk of Court entered default against Defendant, almost six months after the initial warning, that Defendant's new counsel appeared.[5] (Doc. 80).

---

[5] It further appears that Defendant's former counsel notified Defendant of the requirement to obtain counsel as early as December 13, 2024, almost two months *before* the Court's initial warning. (Doc. 58 at 2, ¶ 5).

8

It does not matter that Defendant's failure to comply was not willful or deliberate. (Doc. 84 at 4–5); *see Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997) ("Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting default."). Defendant was required to obtain counsel by a specific deadline and failed to do so—its conduct was well within its control. *See Emp. Painters' Tr. v. Ethan Enters.*, 480 F.3d 993, 1000 (9th Cir. 2007) (stating the defendant's "failure to secure replacement counsel, as required by the local rules, certainly cannot be described as 'excusable neglect' given clear notice to [the defendant] of the need to obtain counsel and [the defendant's] unexplained delay in doing so.").

Accordingly, the Court finds Defendant's repeated failure to retain counsel, coupled with its failure to explain this behavior, to be culpable conduct. *See Ariz. Digestive Health Ins. Co. v. Jawahar*, No. CV-20-01046-PHX-SRB, 2021 WL 12300303, at \*5 (D. Ariz. Nov. 8, 2021) (finding the defendants' conduct culpable where the defendants provided no credible explanation as to why they repeatedly failed to comply with the court's orders). Even though setting aside default will not prejudice Plaintiff, and Defendant has provided meritorious defenses, Defendant's culpability is sufficient to justify a denial of the Motion. *See Mesle*, 615 F.3d at 1091. As such, the Court will not set aside the entry of default. Defendant's Motion is therefore denied.[6]

---

[6] Defaulted parties may not otherwise appear or file motions until the default is set aside. *See* Fed. R. Civ. P. 55(c); *Ruby Mountain Heli-Ski Guides, Inc. v. SledNV, Inc.*, No. 2:23-cv-01068-JAD-DJA, 2023 WL 8716845, at \*1 (D. Nev. Dec. 15, 2023) ("Once a defendant has been defaulted, '[t]he only procedure available to [him] is to file a motion to set aside the default under FRCP 55(c).'" (alterations in original) (citation omitted)); *Wallace v. Fortune Hi-Tech Mktg., Inc.*, Civ. No. 5:11-127-GFVT, 2015 WL 12977342, at \*5 (E.D. Ky. Mar. 26, 2015) (stating only if the motion to set aside is granted "can the [moving] party seek leave to file other motions."); *see also Jules Jordan Video, Inc. v. 144942 Can. Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) ("A defaulted defendant cannot answer the complaint unless and until the default is vacated."). Because the Court will not set aside the default against Defendant, the Motion to Withdraw Deemed Admissions (Doc. 89) is denied as moot.

### B. Motion for Default Judgment

Having denied Defendant's Motion to Set Aside Default, the Court will turn to Plaintiff's Motion for Default Judgment. Plaintiff argues the Court should grant its Motion for Default Judgment because the *Eitel* factors weigh heavily in Plaintiff's favor. (Doc. 86 at 6).

### i. Subject Matter Jurisdiction, Personal Jurisdiction, and Service

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at \*3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (alteration in original) (quoting *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

The Court has subject matter jurisdiction. Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists in civil matters that are between citizens of different states and include an amount in controversy that exceeds $75,000. *See Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1112 (9th Cir. 2016) ("[A] federal court may exercise diversity jurisdiction only if there is no plaintiff and no defendant who are citizens of the same State." (internal quotation marks and citation omitted)). Here, Plaintiff and Defendant are citizens of different states. Plaintiff is an Arizona limited liability company with two members, both of whom were citizens of Arizona at the time Plaintiff filed the Complaint. (Doc. 22 at 1–2; Doc. 75 at 1, ¶ 1); *see Johnson v. Columbia Props. Anchorage, LP*, 437

F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens."). Defendant is an Illinois corporation with its principal place of business in Illinois. (Doc. 1 at 2, ¶ 10; Doc. 75 at 1, ¶ 2); *see Johnson*, 437 F.3d at 899 ("[A] corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated."). Moreover, Plaintiff alleges the amount in controversy is at least $5,000,000.00. (Doc. 75 at 15, ¶ 97). The Court is therefore satisfied it has subject-matter jurisdiction over Plaintiff's claim.

The Court also has personal jurisdiction over Defendant because Defendant does business in Arizona, the alleged conduct occurred in Arizona, and Defendant was properly served. *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) ("[E]very State possesses exclusive jurisdiction and sovereignty over persons and property within its territory."); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (recognizing that a federal court lacks personal jurisdiction over a defendant unless the defendant is properly served); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (Where "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."). According to the Complaint, Defendant is a corporation authorized to do business in Arizona. (Doc. 75 at 1–2, ¶¶ 2, 11–16). Moreover, Defendant was properly served on May 4, 2023. (Doc. 16); Fed. R. Civ. P. 4(e)(1), 4(h); 805 ILCS § 5/5.25. Having found that jurisdiction and service are proper,[7] the Court now turns to whether default judgment is appropriate.

### ii.  Default Judgment Analysis: *Eitel* Factors

"A defendant's default does not automatically entitle a plaintiff to a default judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB,

---

[7] The Court further notes that Defendant did not previously raise any objections to jurisdiction in its Answer to the original (Doc. 18) or First Amended Complaint (Doc. 30). *See Benny*, 799 F.2d at 492 ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction.").

2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered, the district court has discretion to grant a default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### a.  First, Fifth, Sixth, and Seventh *Eitel* Factors

The first factor—the possibility of prejudice to Plaintiff—weighs in favor of granting default judgment. If Plaintiff's Motion is denied, Plaintiff will likely "be without other recourse for recovery." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

The fifth and sixth factors—the possibility of a dispute concerning material facts and whether default was due to excusable neglect—weigh in favor of granting default judgment. Although Defendant did not respond to the SAC, Defendant actively litigated this case until its former counsel withdrew. Given Defendant's early participation, and their failure to abide by Court Orders, the Court has already found Defendant's failure to participate was culpable conduct and not the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Additionally, because the Court accepts all well-pleaded allegations in the SAC as true upon entry of default, except for those relating to damages, "no genuine dispute of material facts would preclude granting Plaintiff['s] motion." *Id.*; *see also Braunlich v. Ariz. Rd. Trip Auto LLC*, No. CV-19-05906-PHX-DWL, 2020 WL 4921971, at *2 (D. Ariz. Aug. 21, 2020) ("Due to Defendants' failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.").

The seventh factor—the policy favoring a decision on the merits—generally weighs against default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But "the mere existence of [FRCP] 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Thus, the Court is not prohibited from entering default judgment against Defendant. *See Zekelman*, 2020 WL 1495210, at *4 ("[T]he default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." (citation omitted)). Accordingly, the first, fifth, sixth, and seventh *Eitel* factors either weigh in favor of, or do not preclude default judgment.

### b. Second and Third *Eitel* Factors

The second and third factors—the merits of the claims and the sufficiency of the Complaint—weigh against default judgment. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman*, 2020 WL 1495210, at *5 ("[C]ourts often consider the second and third [*Eitel*] factors to be the most important." (citation omitted)). "[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). When the complaint sufficiently states a claim for relief, these factors favor a default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978); *Mosley v. Boston Mkt. Corp.*, No. CV-19-05890-PHX-SPL, 2020 WL 4464396, at *1 (D. Ariz. Aug. 4, 2020).

Plaintiff asserts a claim for tortious interference with business expectancy against Defendant. (Doc. 75 at 14–15). Under Arizona law, Plaintiff must show:

> (1) The existence of valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship

or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 637 P.2d 733, 740 (Ariz. 1981). As to the first factor, "there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007) (citation omitted). A plaintiff's "speculative hope of a business expectancy is not enough." *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012).

According to the SAC, Defendant's actions forced Plaintiff to withdraw its mortgage broker license application, preventing Plaintiff from initiating operations in Massachusetts and "hiring multiple loan officers who ha[d] indicated an interest in joining [Plaintiff]." (Doc. 75 at 13, 15, ¶¶ 81, 96). However, Plaintiff does not identify who these interested loan officers are, nor does Plaintiff identify any actual business relationship that "in all probability would have been completed" had Defendant not interfered. *Dube*, 167 P.3d at 101 (citation omitted). Generalized assertions that Defendant's conduct disrupted relationships are not enough. *See ThermoLife Int'l, LLC*, 871 F. Supp. at 912 (finding the plaintiff's conclusory allegation that "it would have earned business at the Mr. Olympia Weekend Expo if it had been allowed to exhibit there" to be too speculative to state a claim for tortious interference with business expectancy). Plaintiff's allegations do not rise beyond the "mere hope" of a business expectancy. *See Dube*, 167 P.3d at 99. Accordingly, the second and third *Eitel* factors weigh against default judgment. *See Pilger v. Unknown Party*, No. CV-24-02427-PHX-SPL, 2025 WL 3647980, at *5 (D. Ariz. Dec. 16, 2025) ("Because Plaintiff does not allege sufficient facts to state a claim . . . the Court cannot conclude that the sufficiency of the Complaint and/or merits of the claims weigh in favor of granting default judgment." (internal quotation marks and citation omitted)).

### c. Fourth *Eitel* Factor

Under the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see*

*also Eitel*, 782 F.2d at 1471. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (citation omitted). Plaintiff seeks $5,000,000.00 in lost profit damages, in addition to post-interest judgment and $1,577.59 in taxable costs. (Doc. 86 at 17). Although Plaintiff supports its Motion with an affidavit attesting to its filing fees and a bill of costs, (Doc. 86-1 at 2–4; Doc. 86-2 at 2–3), neither document provides a calculation of Plaintiff's request for damages. The Court thus finds the amount of money at stake to be so substantial as to make default judgment inappropriate. *See Eitel*, 782 F.2d at 1472 (finding that default judgment was inappropriate where the plaintiff sought nearly $3,000,000.00 in damages); *see also Lane v. Wells Fargo Bank, N.A.*, No. 3:12-cv-00015-RCJ-VPC, 2012 WL 4792914, at *5 (D. Nev. Oct. 8, 2012) (finding the fourth *Eitel* factor weighed against default judgment where the amount of money at stake was $1,396,386.37). Therefore, the fourth *Eitel* factor also weighs against granting default judgment.

Ultimately, the Court finds the *Eitel* factors weigh against default judgment. Plaintiff has failed to allege a valid business expectancy as required for a tortious interference claim. Because the second and third *Eitel* factors have not been met, Plaintiff's Motion for Default Judgment is denied. *See GS Holistic, LLC v. Ravens Smoke Shop, Inc.*, No. CV 22-7199-MWF (Ex), 2023 WL 5504964, at *3 (C.D. Cal. July 10, 2023) ("[T]he Court may render judgment based on an assessment of the second and third *Eitel* factors alone.").

**III.    CONCLUSION**

Having considered Defendant's Motion to Set Aside Entry of Default (Doc. 82) and Plaintiff's Motion for Default Judgment (Doc. 86), the Court will deny both Motions. Defendant's Motion to Set Aside Entry of Default fails because Defendant's conduct in failing to retain counsel despite Court orders to do so was culpable. The Court will also deny Plaintiff's Motion for Default Judgment because the SAC does not sufficiently allege a valid business expectancy as required for a tortious interference claim. Because these

Motions will be denied, the Court will deny Defendant's Motion to Withdraw Deemed Admissions (Doc. 89) as moot.

However, district courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Additional facts could cure Plaintiff's tortious interference claim. Therefore, leave to amend is appropriate. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

Accordingly,

**IT IS ORDERED:**

1. That Defendant's Motion to Set Aside Entry of Default (Doc. 82) is **denied**.

2. That Defendant's Motion to Withdraw Deemed Admissions (Doc. 89) is **denied as moot**.

3. That Defendant's Answer (Doc. 85) is **stricken**.

4. That Plaintiff's Motion for Default Judgement (Doc. 86) is **denied**.

5. That the Second Amended Complaint (Doc. 75) is **dismissed without prejudice and with leave to amend**. Plaintiff must file an Amended Complaint by **April 8, 2026**.

Dated this 26th day of March, 2026.

Honorable Steven P. Logan
United States District Judge

16